UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AKEEM ULMER,

                                Plaintiff,
                                                        9:15-cv-00497
v.
                                                        (DNH/TWD)

SERGEANT BEDORE, et al.,

                                Defendants.
_____

APPEARANCES:                           OF COUNSEL:

AKEEM ULMER
Plaintiff, *pro se*
2171 Madison Avenue 4B
New York, New York 10037

BARBARA D. UNDERWOOD                   CHRISTOPHER J. HUMMEL, ESQ
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.     INTRODUCTION

*Pro se* Plaintiff Akeem Ulmer commenced this civil rights action under 42 U.S.C. § 1983 on April 27, 2015.  Plaintiff's third amended complaint, filed on August 8, 2016, is the operative pleading in the action.  (Dkt. No. 65.)  By Decision and Order of March 16, 2018, Defendants' first motion for summary judgment was granted in part and denied in part, leaving only Plaintiff's claims for excessive force and failure to protect in violation of his rights under the

Eighth Amendment against Corrections Officer ("CO") Dibble and Sergeant Bedore in the lawsuit.[1]  (Dkt. No. 105.)

This Court recommended that Defendant Bedore's first motion for summary judgment on the excessive force and failure to protect claim be denied based on Bedore's failure to submit admissible evidence to challenge Plaintiff's identification of him as the sergeant involved in the laundry room assault on December 29, 2014.  (Dkt. No. 99 at 17-18.[2])  The District Court accepted and adopted this Court's Report-Recommendation on the motion in all respects and granted Plaintiff sixty days to conduct additional discovery regarding the identification of the sergeant in the laundry room and thirty days thereafter for Bedore to file a second motion for summary judgment.  (Dkt. No. 105 at 2-3.)  The Court also granted Defendants' motion requesting leave to raise an exhaustion argument.  (Dkt. Nos. 106, 107.)

Presently before the Court is Defendants Dibble and Bedore's second summary judgment motion seeking judgment on the grounds that: (1) Plaintiff cannot establish Eighth Amendment claims of excessive force and failure to protect against Bedore; and (2) Plaintiff has in any event failed to exhaust his administrative remedies regarding the Eighth Amendment claims against both Defendants.  (Dkt. Nos.  108.)  Plaintiff has failed to respond to the motion.[3]  For reasons

---

[1]  Plaintiff also brought this action against John Does ## 1-5, who allegedly participated in the laundry room assault on December 29, 2014.  (Dkt. No. 65 at 2, 5.)  Defendants argue these unidentified defendants should be dismissed at this time.  (Dkt. No. 108-4 at 3.)  The Court agrees.  The Docket maintained by the Clerk's Office does not reflect the identification of, or service on, any of the Doe defendants during the more than three years the action has been pending.  The Court, therefore, recommends dismissal of the action against the Doe Defendants without prejudice.  *See Pravda v. City of Albany*, 178 F.R.D. 25, 26 (N.D.N.Y. 1998) (dismissing the unidentified "John Doe" and "Jane Doe" defendants after plaintiff had been provided "over two years to identify and serve these individuals, including the full discovery period.").

[2]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docket system maintained by the Clerk.

explained below, the Court recommends that Defendants' second motion for summary judgment

be granted.

## II.    BACKGROUND

Plaintiff, who is no longer incarcerated, was an inmate housed at Franklin Correctional

Facility ("Franklin") during the time relevant to this action.  On December 29, 2014, Plaintiff

was housed in a single cube in the A-1 general population housing unit at Franklin.  (Dkt. No.

89-3 at 11.)  That morning, ten corrections officers and a sergeant came into A-1 yelling on the

count at everyone in the housing unit.  *Id.*  The sergeant called Plaintiff to the desk and told him

to put his hands in his pockets and walk to the laundry room.  *Id.* at 11, 16.  Plaintiff described

this sergeant as mid-forties, bald, about five feet ten inches tall, and as someone who looked like

he worked out.  *Id.* at 15.  It was not until his third amended complaint that Plaintiff identified

Defendant Bedore as the sergeant.  *Id.* at 11.

Plaintiff claims he was escorted to the laundry room by Sergeant Bedore, CO Dibble, and

three other corrections officers at between 9:10 and 9:30am.  (Dkt. Nos. 65 at ¶ 22[4]; 89-3 at 18;

108-1 at 8-9.)  Once in the laundry room, Bedore told Plaintiff to place his hands on the wall.

(Dkt. No. 89-3 at 21.)  The officers closed the laundry room door and Dibble punched Plaintiff

---

[3]  According to Defendants' declaration of service, on June 15, 2018, the motion papers were mailed to Plaintiff at the address he had provided to the Clerk for service, 2717 Madison Avenue 4B, New York, NY 10037.  (Dkt. No. 108-8.)  Notice that the motion had been filed was sent to Plaintiff at the same address by regular mail by the Clerk's Office on June 15, 2018. (Dkt. No. 109.)  On July 9, 2018, after Plaintiff had failed to file papers responding to the summary judgment motion, the Clerk's Office mailed this Court's July 9, 2018, Text Order to Plaintiff giving him additional time to respond to the motion.  (Dkt. No. 110.)  The Text Order was sent by certified mail and returned to the Clerk as undeliverable.  (Dkt. Nos. 111, 112.)

[4] Paragraph references are used where documents identified by CM/ECF docket number contain consecutively numbered paragraphs.

on the right side of his jaw, followed by Bedore punching Plaintiff in the head.  (Dkt. Nos. 65 at ¶ 23; 89-3 at 11-12, 21.)  Plaintiff went down to the ground and was curled up in a fetal position as everyone began hitting, punching, stomping, and kicking him.  (Dkt. No. 89-3 at 23-24.) Dibble held Plaintiff's left arm so that the others could get good punches.  *Id.* at 24.  Plaintiff was punched at least twenty times, kicked a good six times, and stomped twice.  *Id.* at 22-25.  After approximately five minutes, he was told to stand up, and he was taken back to his cube by the same officers who had escorted him to the laundry room.  *Id.* at 27.  When they got back to Plaintiff's housing unit, Bedore announced to the A-1 dormitory that they "were there to take back control."  (Dkt. No. 65 at ¶ 32.)  Plaintiff alleges claims of excessive force and failure to protect against Bedore and Dibble based on the laundry room assault.  (Dkt. No. 65 at 10-11.)

Plaintiff believes he saw medical the next day because he was in pain as a result of an injury to his left arm sustained in the laundry room assault.  (Dkt. No. 89-3 at 30-31.)  He was given Ibuprofen and was examined, had his shoulder x-rayed, and was sent to physical therapy, only after his family interceded and internal affairs came to see him.  *Id.* at 32-33, 37-39. Plaintiff had an MRI of his left shoulder in May of 2015, and learned he had a tear in the glenoid labum of his left shoulder and would need surgery.  *Id.* at 34-35, 39.  Plaintiff wore a sling for approximately six months.  *Id.* at 40.  Although the shoulder pain had decreased as of the time of his deposition in February of 2016, Plaintiff was still unable to engage in his pre-injury activities, including basketball and working out.  *Id.*

## III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see Anderson v. Liberty Lobby, Inc*., 477 U.S.

242, 251-52 (1986).  The party moving for summary judgment bears the initial burden of

showing, through the production of admissible evidence, that no genuine issue of material fact

exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is

"genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467 F.3d

at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the

[plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material

facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986).

"Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue

of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence.  *See

Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining

the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible

evidence.") (citation and internal quotation marks omitted).  A plaintiff's verified complaint is to

be treated as an affidavit.[5]  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified

complaint is to be treated as an affidavit . . . and therefore will be considered in determining

whether material issues of fact exist . . . .") (citations omitted).

In *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit

reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in

---

[5]  The Court finds that Plaintiff's third amended complaint was adequately verified under 28 U.S.C. § 1746 by Plaintiff's declaration under penalty of perjury.  (Dkt. No. 65 at 12.)

support of the plaintiff's position will be insufficient; there must be evidence on which the jury

could *reasonably* find for the plaintiff." "To defeat summary judgment . . . nonmoving parties

may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys*, 426 F.3d at 554

(citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving

party must offer some hard evidence showing that its version of the events is not wholly

fanciful." *Id*. (citation and internal quotation marks omitted). "[T]o satisfy Rule 56(e), affidavits

must be based upon 'concrete particulars,' not conclusory allegations." *Schwapp v. Town of

Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation omitted). "Statements that are devoid of any

specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for

summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all

ambiguities and draw all reasonable inferences against the moving party. *Major League

Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is

proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally,

and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14

F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by

evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93

Civ. 5981 (WHP/JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)[6] (citing *Carey v.

Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

---

[6] Copies of all unpublished decisions cited herein will be provided to Plaintiff in
accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

## V.    PLAINTIFF'S FAILURE TO RESPOND

Plaintiff's failure to oppose Defendants' summary judgment motion does not mean the motion is to be granted automatically. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (citations and internal quotation marks omitted). An unopposed motion for summary judgment may be granted "only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Champion*, 76 F.3d at 486; *see also Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (where "the nonmoving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submissions to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'") (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the L.R. provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion.[7] *Champion*, 76 F.3d at 486. In light of Plaintiff's failure to oppose Defendants' motion, the facts set forth in Defendants' statement of material facts pursuant to L.R. 7.1(a)(3) (Dkt. No. 108-6) that are supported by record evidence and are uncontroverted by nonconclusory allegations in Plaintiff's verified third amended complaint, will be accepted as true. *See McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014

---

[7] A notification of the consequences of failing to respond to a summary judgment motion was annexed to Defendants' notice of motion. (Dkt. No. 108 at 2.)

WL 5475293, at *3 (N.D.N.Y. Oct. 29, 2014) (finding allegations in plaintiff's verified complaint sufficient to controvert facts in statement of material facts on motion for summary judgment); *Douglas v. Perrara*, No. 9:11-CV-1353 (GTS/RFT), 2013 WL 5437617, at *3 (N.D.N.Y. Sept. 27, 2013) ("Because Plaintiff [,who filed no opposition,] has failed to raise any question of material facts, the Court will accept the facts as set forth in Defendants' Statement of Facts Pursuant to Rule 7.1(a)(3) . . . , supplemented by Plaintiff's verified complaint . . ., as true.").

Although this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on a court to conduct a search and independent review of the record to find proof of a factual dispute where a non-movant willfully fails to respond to a properly filed summary judgment motion, *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002), the Second Circuit has ruled that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," including local rules relating to requirements regarding the submission of and response to statements of material facts on summary judgment motions, and to "conduct an assiduous review of the record."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted).  In deference to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record on the Defendant's present motion as well as the record on Defendants' first summary judgment motion in this case.  (Dkt. Nos. 89, 93, 108.)

## IV.    ANALYSIS

### A.    Exhaustion of Administrative Remedies

Defendants Bedore and Dibble seek summary judgment on Plaintiff's excessive force and failure to intervene claims on the grounds that Plaintiff failed to exhaust his administrative

remedies before filing this lawsuit in accordance with the requirements of the New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Program ("IGP").

      1.   <u>Legal Standard for Exhaustion</u>

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, ___ U.S. ___,136 S. Ct. 1850, 1854-55 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly") (internal quotations marks omitted)). In New York State prisons, DOCCS has a well-established three-step IGP. N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. *Id*. § 701.5(a)(1). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to

informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the Central Office Review Committee ("CORC") for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

There are special procedures that may be used when, as in this case, the relevant grievance is code 49 involving staff misconduct. *Id*. § 701.8. A grievance alleging staff misconduct, once it is given a number and recorded, must be sent directly to the superintendent, and the superintendent must issue a decision within twenty-five days. *Id*. § 701.8(f). If the grievant wishes to appeal a decision by the superintendent to CORC, he must file a notice of decision to appeal with the IGP clerk at the bottom of the superintendent's decision within seven days of receipt of the decision. *Id*. § 701.8(h). CORC is required to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.8(i) (incorporating § 701.5).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period.  "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step,'" assuming there is another step in the IGP.  *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance . . . can—and must—be appealed to the next level . . . to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA.  *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (internal quotations marks and citations omitted)).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.  More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotations and citations omitted).  In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of."  *Ross*, 136 S. Ct. at 1859 (quotations and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id*. at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). Plaintiff must then establish that the IGP grievance procedure was unavailable to him under *Ross*. *See Jones*, 549 U.S. at 216.

2.      Plaintiff's Failure to Exhaust the Eighth Amendment Claims

The Court finds Defendants have met their burden of showing that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Records reveal Plaintiff complained of the laundry room assault in Grievance FKN-11404-15, filed on January 7, 2015. (Dkt. No. 108-3 at 11.) The IGRC determined the grievance to be a code 49 grievance and forwarded it to the superintendent. (Dkt. No. 108-3 at ¶ 16.) After the superintendent's office denied the grievance, Plaintiff appealed to CORC on February 4, 2015. *Id.* CORC did not

respond within the thirty day time frame set out in N.Y.C.R.R. § 701.8(i) but issued a denial of Plaintiff's grievance on April 29, 2015.  (Dkt. No. 108-3 at 7.)  However, Plaintiff filed his original complaint in this action on April 27, 2015, two days before CORC issued the denial to his appeal.  (*See* Dkt. No. 1.)

Pursuant to the PLRA, a prisoner must exhaust administrative remedies actually available to him before he files a lawsuit.  *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter*, 534 U.S. 516.  It is well settled that "[r]eceiving a determination from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and that any claim not exhausted prior to commencement of the suit must be dismissed without prejudice."  *Neal,* 267 F.3d at 121-22; *Berkley v. Ware*, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at *5 (N.D.N.Y. July 6, 2018) (plaintiff must exhaust administrative remedies, including receipt of a response from CORC, prior to filing a federal lawsuit.); *Couvertier v. Jackson*, No. 9:12-CV-1282 (DNH/DEP), 2014 WL 2781011, at *4 (N.D.N.Y. June 19, 2014) (dismissing the case because the plaintiff inmate received response from CORC after commencing the suit); *White v. Drake*, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted).

The record evidence shows that CORC failed to respond to Plaintiff's February 4, 2015, appeal until April 29, 2015, just under two months beyond the thirty days required under the IGP, 7 N.Y.C.R.R. § 701.8(i).  Courts in this Circuit have been split as to whether a delay by CORC in responding to an appeal constitutes unavailability that would excuse a plaintiff's failure to exhaust.  *Compare Loccenitt v. Labrake*, No. 14-CV-6703-FPG, 2018 WL 826850, at

*3 (W.D.N.Y. Feb. 12, 2018) (finding that a delay by CORC in rendering a decision on a plaintiff's appeal is not a defense to the exhaustion requirement); *Berkley*, 2018 WL 3736791, at *6 (finding five month delay by CORC in rendering decision on appeal did not excuse Plaintiff from exhaustion requirement); *Couvertier*, 2014 WL 2781011, at *5 (holding that waiting five months for a decision from CORC does not constitute a special circumstance that would justify the plaintiff filing a lawsuit before fully exhausting all available remedies) *with Henderson Annucci*, No. 140CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance, . . . such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA); *Rossi v. Fischer*, No. 13-CV-3167 (PKC) (DF), 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) (where CORC did not decide appeal until more than four months after it was filed, court found administrative remedies were not available to the plaintiff and denied dismissal for failure to exhaust)

In this case, CORC's response was late by just under two months, significantly less than the five month delay found insufficient for a finding of unavailability in *Berkley*, 2018 WL 3736791, at *6, and far less than the two years which resulted in a finding of unavailability in *Henderson*, 2016 WL 3039687, at *1. Furthermore, there is no evidence in the record that Plaintiff contacted the IGRC or CORC inquiring as to the status of his appeal before filing his lawsuit. *See Berkley*, 2018 WL 3736791, at *6. Given the foregoing, the Court finds that the delay by CORC in issuing its response to Plaintiff's appeal did not excuse Plaintiff's failure to fully exhaust before commencing this action.

In his opposition to Defendants' first motion for summary judgment, Plaintiff suggests he has satisfied the IGP exhaustion requirement because his administrative remedies had been

exhausted before he filed his third amended complaint. (Dkt. No. 93 at 1.)  However, courts in

this District have held that post-exhaustion amendment of the complaint cannot cure an

exhaustion defect existing at the time the action was commenced.  *High v. Switz*, No. 9:17-CV-

1067 (LEK/DJS), 2018 WL 3736794, at *3 (N.D.N.Y. July 8, 2018) ("The fact that [plaintiff's]

CORC appeal was decided after the filing of his Complaint is insufficient to cure Plaintiff's

failure to exhaust; filing an Amended Complaint at this time would also not correct this

fundamental deficiency."); *Shepherd v. Lempke*, No. 9:10-CV-1524 (TJM/DEP), 2017 WL

1187859, at *3 (N.D.N.Y. Mar. 30, 2017) (collecting cases).  Therefore, Plaintiff's exhaustion of

administrative remedies before filing his third amended complaint will not excuse his failure to

exhaust before filing his lawsuit.

This Circuit has recognized that failure to exhaust administrative remedies is usually a

"curable, procedural flaw" that can be fixed by exhausting those remedies and then reinstituting

the suit.  *Neal*, 267 F.3d at 123 (quoting *Snider v. Melindez*, 199 F.3d 108, 111–12 (2d

Cir.1999)).  Requiring Plaintiff to initiate a new suit may seem judicially inefficient.  However,

the Second Circuit has specifically stated that allowing this type of suit to move forward

"undermines Congress' directive to pursue administrative remedies prior to filing a complaint in

federal court." *Neal*, 267 F.3d at 123; *see also Rodriguez v. Rosner*, No. 9:12-CV-958

(TJM/ATB), 2012 WL 7160117, at *4-5 (N.D.N.Y. Dec. 5, 2012), *report and recommendation

adopted by*, 2013 WL 614360 (N.D.N.Y. Feb. 19, 2013).

Based upon the foregoing, the Court recommends that Defendants be granted summary

judgment based on Plaintiff's failure to exhaust his administrative remedies with regard to his

Eighth Amendment claim for excessive force and failure to intervene.  The Court notes the

statute of limitations for a section 1983 claim is three years from the time the cause of action

accrued and may have expired.  *See Lopez v. Nassau Cty. Sheriffs Dep't*, No. 17-CV-3722 (DRH/GRB), 2018 WL 3321430, at *4 (E.D.N.Y. July 5, 2018) ("The statute of limitations for claims brought under section 1983 is governed by state law, . . . and New York applies a statute of limitations period of three years to such claims.")  However, the Court nonetheless recommends that the grant of summary judgment be without prejudice "given the possibility that [Plaintiff] could raise equitable tolling issues or other grounds to overcome a statute of limitations problem."  *Toliver v. Fischer*, No. 9:12-CV-77 (MAD/ATB), 2016 WL 3351974, at *7 n.10 (N.D.N.Y. March 22, 2016) (citing *Richardson v. Romano*, No. 00-CV-1076 (LEK/DEP), 2003 WL 1877955, at *2 n.1 (N.D.N.Y. Mar. 31, 2003) (noting New York case law indicating an action dismissed for failure to exhaust administrative remedies may be re-filed within six months of dismissal under N.Y. C.P.L.R. §205(a)).

### B.    Eighth Amendment Excessive Force and Failure to Intervene Claims Against Defendant Bedore

Because the Court is recommending that Defendants be granted summary judgment for failure to exhaust without prejudice, it is necessary for the Court to also consider whether Bedore is entitled to summary judgment as a matter of law on Plaintiff's Eighth Amendment excessive force and failure to intervene claims.

The District Court adopted this Court's recommendation that Bedore's initial motion for summary judgment on Plaintiff's excessive force and failure to protect claims be denied because of Bedore's failure to submit admissible evidence challenging Plaintiff's identification of him as the sergeant involved in the laundry room assault on December 29, 2014, and that Plaintiff be allowed sixty days in which to conduct additional discovery on the identification issue.  (Dkt. Nos. 99 at 17-18; 105 at 2-3.)

Plaintiff initially identified Sergeant Allen as the Sergeant involved in the December 29, 2014, laundry room incident and named him as a Defendant in his original complaint filed on April 27, 2015.  (Dkt. No. 1.)  At his deposition on February 4, 2016, Plaintiff testified that it had not been Allen but another Sergeant whose name began with "A," something like Atkins.  (Dkt. No. 89-3 at 14.)  It was not until Plaintiff filed his third amended complaint on August 8, 2016, that he identified Bedore as the Sergeant involved in the laundry room assault and failure to protect and named him as a Defendant.  (Dkt. No. 65.)  In seeking leave to file his third amended complaint, Plaintiff alleged that Bedore, not Allen, was the culprit who had assaulted him and it had been a resemblance in appearance that had caused Plaintiff to sue the wrong officer.  (Dkt. No. 57 at 2.)

Bedore has submitted a declaration in support of his second summary judgment motion.  (Dkt. No. 108-2.)  According to Bedore, on December 29, 2014, the date on which Plaintiff was allegedly assaulted by Dibble and Bedore in the laundry room in the A-1 dormitory, Bedore was the Main Housing area Sergeant for the 7:00am to 3:00pm shift at Franklin and was responsible for supervising the A-1 dormitory.  *Id.* at ¶¶ 4, 5.  Bedore's rounds began at approximately 7:30am on December 29, 2014, and he signed into the logbook for each dormitory area he entered.  *Id.* at ¶ 6.  Entries from the logbooks for A-1 and A-2 Dormitories reveal that Bedore signed into Dormitory A-1 at 8:55am and Dormitory A-2 at 9:00am.  *Id.* at ¶ 8 and pp. 6, 8.  Bedore claims that he would not have re-entered Dormitory A-1 after leaving without signing in again, and the logbook shows no later entry.  *Id.* at ¶ 10 and p. 6.  Bedore denies escorting Plaintiff to the laundry room, denies assaulting him, and denies observing any correction officer or supervisor assault Plaintiff.  *Id.* at ¶¶ 12-15.  Plaintiff has not submitted papers challenging the facts set forth in Bedore's declaration.

Reviewing the summary judgment record, the Court finds nothing more in support of Plaintiff's claim than his conclusory assertion that Bedore, his third choice, is the proper Defendant in support of his claim. *See Bickerstaff*, 196 F.3d at 452 (conclusory statements, devoid of specifics, are insufficient to defeat a properly supported summary judgment motion). Therefore, the Court accepts as true the statements in Defendants' statement of material facts, which are supported by Bedore's declaration showing his complete lack of involvement in the laundry room incident on December 29, 2014. (Dkt. Nos. 108-2 at ¶¶ 5-15; 108-6 at ¶¶ 4-16.) Based upon the foregoing, the Court recommends that Bedore be granted summary judgment on Plaintiff's Eighth Amendment excessive force and failure to intervene claims.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants Dibble and Bedore's motion for summary judgment (Dkt. No. 108) be **GRANTED** without prejudice as to Plaintiff's failure to exhaust administrative remedies on his Eighth Amendment excessive force and failure to intervene claims; and it is further

**RECOMMENDED** that Defendant Bedore's motion for summary judgment (Dkt. No. 108) on Plaintiff's Eighth Amendment claim for excessive force and failure to intervene be **GRANTED**; and it is further

**RECOMMENDED** that the action be **DISMISSED** without prejudice against all of the Doe Defendants; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with a copy of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 20 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (*citing Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  November 13, 2018
         Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[8]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2018 WL 3736791
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christopher BERKLEY, Plaintiff,

v.

H. WARE, Defendant.

No. 9:16-CV-1326 (LEK/CFH)
|
Signed 07/06/2018

**Attorneys and Law Firms**

Christopher Berkley, 15-R-1631, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, pro se.

Attorney General for the State of New York, OF COUNSEL: HELENA O. PEDERSON, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224, Attorney for Defendant.

## REPORT-RECOMMENDATION AND ORDER [1]

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

*1 Plaintiff pro se Christopher Berkley ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS") brings this action pursuant to 42 U.S.C. § 1983, alleging that corrections officer ("C.O.") Helen Ware—who, at all relevant times, was employed at Franklin Correctional Facility ("Franklin")—violated his constitutional rights under the Eighth Amendment. See Dkt. No. 1 ("Compl."). Presently pending before the Court is defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 21. Plaintiff did not oppose the motion. For the following reasons, it is recommended that defendant's motion be granted.

## I. Background

### A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II.B. infra. Plaintiff contends that on May 20, 2016, he injured his right hand playing basketball. Compl. at 5. The infirmary nurses issued him a hand brace to prevent further injury. Id. On May 25, 2016, plaintiff's vocational teacher informed him that he could not attend the class because he had a hand brace on, and that he could not participate in any activities. Id. The teacher sent plaintiff into the hallway to return to his dorm. Id. On entering the hallway, C.O. Ware questioned plaintiff as to why he was not in class. Id. at 5-6. Plaintiff informed C.O. Ware that he could not participate in class due to his sprained wrist, and C.O. Ware instructed him to return to class. Id. at 6. Plaintiff complied, and the vocational teacher again "kicked [plaintiff] out of the classroom." Id. Once in the hallway, C.O. Ware instructed plaintiff to return to class. Id. Plaintiff informed his teacher that C.O. Ware ordered his return, and that he "didn't want any problems[.]" Id. Plaintiff asked his teacher if he could speak with C.O. Ware, but the teacher told him to leave the classroom. Id.

After plaintiff entered the hallway for the third time, C.O. Ware "threw [him] against the wall" and "bumped [his right] hand against the wall[.]" Compl. at 6. Plaintiff informed C.O. Ware that his hand hurt, and she "grabbed [his] hand and slammed it against the wall," stating, "I said to keep your fucking hands on the wall" and "shut the fuck up." Id. She further stated, "as a matter of fact [sic] give me this fucking brace [sic] there's nothing wrong with your fucking hand." Id. C.O. Ware removed plaintiff's brace and handcuffed him, further injuring his hand. Id. at 7. On June 9, 2016, plaintiff received a hard cast for his right hand. Id. at 7.

### B. Defendant's Recitation of the Facts

In support of this motion, defendant filed a Statement of Material Facts.[2] On May 20, 2016, plaintiff injured his right hand and wrist while playing basketball. Dkt. No. 21-3 ¶ 4. Plaintiff informed the Franklin medical staff that he heard a "popping sound" after he ran into the wall and "rolled" his wrist. Id. ¶ 7. The medical staff noted that plaintiff had limited range of motion and could not make a complete fist. Id. Plaintiff was referred to the Emergency Room at Alice Hyde Memorial Center ("AHMC") for further evaluation. Id. ¶ 8. X-ray results indicated that plaintiff did not sustain a fracture or dislocation to his

hand or wrist, and that he only suffered a sprain. Id. ¶ 10. Plaintiff received a splint, a soft sleeve with a hard insert at the underside of the wrist—also known as a brace—as well as ibuprofen, and was discharged. Id. ¶¶ 11, 12. Plaintiff also received a work release form, which indicated that he would be able to return to programming on May 24, 2016. Id. ¶ 12. A follow-up appointment was recommended with an orthopedist to rule out any hidden fractures or ligamentous injuries to plaintiff's hand and/or wrist. Id. ¶ 13.

**\*2** On his return to Franklin, the medical staff prescribed plaintiff a medical pass excusing him from work. Dkt. No. 21-3 ¶ 14. The pass expired on May 25, 2016. Id. On May 25, 2016, plaintiff went to the commissary before reporting to the Vocational School, which caused him to be late for his Building Maintenance class. Id. ¶ 23. Plaintiff had previously been late for class, and had been given direct orders to be on time in the future. Id. ¶ 24. When he reported to class plaintiff was wearing a brace on his right hand/wrist, but did not have a valid medical excuse pass. Id. ¶ 25. Because he did not have a valid medical excuse pass, C.O. Ware instructed plaintiff that he had to attend class even if he could not participate. Id. ¶ 26. Plaintiff refused to remain in the classroom; instead, he asked to go to the infirmary to renew his medical excuse pass. Id. ¶¶ 27, 28. C.O. Ware called the infirmary regarding plaintiff's medical excuse pass, and the nurse on duty informed her that plaintiff could attend class even though he could not participate. Id. ¶¶ 29, 30. The nurse also stated that because plaintiff only had a sprain, the situation was not an emergency and plaintiff did not need to visit the infirmary. Id. ¶ 30. C.O. Ware relayed this information to plaintiff. Id. ¶ 31.

Later that day, plaintiff's vocational class instructor informed C.O. Ware that plaintiff wanted to go to emergency sick call. Dkt. No. 21-3 ¶ 32. As nothing had changed since the first time plaintiff attempted to leave the classroom, C.O. Ware did not believe that this was an emergency situation. Id. C.O. Ware called the infirmary to explain that plaintiff felt it was an emergency. Id. The nurse stated that because this was not an emergency and did not require urgent care, plaintiff would be written up for abusing emergency sick call if he went just to get a new medical excuse pass. Id. ¶ 33. C.O. Ware reiterated this information to plaintiff, but he insisted on going to the infirmary. Id. ¶¶ 34, 35. Pursuant to DOCCS Directive 4910, C.O. Ware pat-frisked plaintiff before allowing him

to leave the Vocational School. Id. ¶ 36. C.O. Ware pat-frisked plaintiff in the hallway outside of the Building Maintenance classroom. Id. ¶ 37. C.O. Ware directed plaintiff to put his hands against the wall and spread his feet apart. Id. ¶ 38. She patted down his neck, chest, back, arms, and legs on the outside of his clothing. Id. C.O. Ware did not remove plaintiff's brace, nor did she throw plaintiff against the wall or attempt to choke him. Id. ¶¶ 39, 40. C.O. Ware did not "slam" plaintiff's right hand and/or wrist against the wall during the pat-frisk. Id. ¶ 41. C.O. Ware did not yell at plaintiff, threaten him, use racial slurs, or handcuff plaintiff during the pat-frisk. Id. ¶¶ 42, 43. During the pat-frisk, C.O. Ware informed plaintiff that if he went to emergency sick call to ask for a new permit, he would be written up as that did not qualify as an emergency. Id. ¶ 44. C.O. Ware sent plaintiff to the infirmary after the pat-frisk. Id. ¶ 45.

At the infirmary, the medical staff observed that plaintiff only had minimal swelling, and that his splint was still in place. Dkt. No. 21-3 ¶ 46. The medical staff informed plaintiff that there was "nothing wrong" with his hand and/or wrist, and that he could attend class. Id. ¶ 47. As such, the medical staff did not treat plaintiff at that time. Id. ¶ 48. On May 31, 2016, Franklin medical staff examined plaintiff in conjunction with a grievance he filed concerning the alleged May 25, 2016 incident. Id. ¶ 50. Plaintiff reported pain in his right thumb, but the medical staff did not observe swelling or bruising. Id. ¶ 51. Plaintiff did not request pain medication. Id. ¶ 52. On June 9, 2016, plaintiff attended a follow-up appointment with nonparty orthopedist Dr. Macelaru, who confirmed that plaintiff suffered a sprain, and that there were no hidden fractures or torn ligaments. Id. ¶¶ 15, 16. Dr. Cahill, Facility Health Services Director at Franklin, determined that the sprain diagnosed on June 9, 2016 was the same injury as the sprain diagnosed on May 20, 2016 because there were no new injuries to plaintiff's right hand and/or wrist. Id. ¶ 17. As a result of plaintiff's appointment with Dr. Macelaru, plaintiff's right hand and wrist were placed in a hard cast to prevent further injury and allow for quicker healing. Id. ¶¶ 18, 19. Plaintiff's cast was removed on or around July 15, 2016.

## II. Discussion [3]

### A. Failure to Respond

**\*3** Plaintiff failed to oppose defendant's Motion for Summary Judgment. Plaintiff was notified of the consequences of failing to respond to a summary judgment motion. Dkt. No. 23. Given this notice, plaintiff was adequately apprised of the pendency of defendant's motion and the consequences of failing to respond. "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that movant is proceeding *pro se.*" Jackson v. Onondaga Cty., 549 F.Supp.2d 204, 209 (N.D.N.Y. 2008) (footnotes omitted). However, if "the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit." Id. at 210. "[T]o be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must, among other things, not be conclusory." Id. Even if a verified complaint is deemed nonconclusory, "it may be insufficient to create a factual issue where it is (1) largely unsubstantiated by any other direct evidence and (2) so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." Id. Plaintiff's complaint states, "I declare under penalty of perjury that the foregoing is true and correct." Compl. at 9. Therefore, as plaintiff's complaint is verified,[4] the undersigned will accept plaintiff's complaint as an affidavit to the extent that the statements are based on plaintiff's personal knowledge or are supported by the record. See Berry v. Marchinkowski, 137 F.Supp.3d 495, 530 (S.D.N.Y. 2005) (collecting cases to support the proposition that a court may consider an unsworn assertions on a motion for summary judgment where they are based on the plaintiff's personal knowledge and in light of special solicitude).

### B. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. See id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law"....

**\*4** Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### C. Exhaustion

As a threshold matter, defendant argues that plaintiff has failed to exhaust his administrative remedies prior to filing this lawsuit. See Dkt. No. 21-1 ("Def. Mem. of Law") at 9-11. On May 27, 2016, plaintiff filed a grievance (FKN-12752-16) alleging that C.O. Ware assaulted him during the May 25, 2016 pat-frisk and injured his right hand. Dkt. No. 21-3 ¶¶ 49, 64; Dkt. No. 21-5 at 20-21. On June 3, 2016, the Superintendent denied plaintiff's grievance. Id. ¶ 65; Dkt. No. 21-5 at 17. Plaintiff appealed the Superintendent's determination on or about June 8, 2016. Id. ¶ 66; Dkt. No. 21-5 at 7. The Central Office Review Committee ("CORC") mailed the determination of plaintiff's grievance to Franklin on November 2, 2016. Id. ¶ 67. Plaintiff filed the complaint in the underlying action on October 27, 2016. Id. ¶ 68.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532, 122 S.Ct. 983. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524, 122 S.Ct. 983. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).

The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ––– U.S. ––––, 136 S.Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016). [5]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S.Ct. at 1858. Under this exception, courts must determine whether administrative remedies are "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies? [6]

**\*5** It is well-settled that "the PLRA requires that an inmate plaintiff must exhaust his available administrative remedies before commencing a lawsuit in federal court with respect to prison conditions." Peoples v. Beldock, 212 F.Supp.2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted); Couvertier v. Jackson, No. 9:12-CV-1282 (DNH/DEP), 2014 WL 2781011, at *3 (N.D.N.Y. June 19, 2014) ("In the event the defendant establishes that the inmate plaintiff failed to fully complete [ ] the administrative review process prior to commencing the action, the

plaintiff's complaint is subject to dismissal.") (internal citation and quotation marks omitted); White v. Drake, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted).

Here, the record is clear that plaintiff filed this action on October 27, 2016, and at that time CORC had yet to issue a decision on plaintiff's appeal. [7] DOCCS IGP Assistant Director Rachael Seguin declared that based on her review of DOCCS records, CORC mailed their determination on plaintiff's grievance to the Franklin Inmate Grievance Review Committee ("IGRC"), for transmittal to plaintiff, on November 2, 2016—six days after plaintiff commenced this action. Dkt. No. 21-11 ("Seguin Decl.") ¶¶ 15, 16. Moreover, plaintiff's complaint makes clear on two occasions that he was aware he had not fully exhausted his administrative remedies prior to commencing suit: (1) "my grievance was denied by Superintendent D. LaClair and now my appeal to the CORC is pending"; and (2) "[t]hus I am still waiting for a result from the C.O.R.C. in this matter[.]" Compl. at 8. Thus, plaintiff did not fully exhaust his administrative remedies prior to filing this lawsuit because CORC's decision was outstanding. See Peoples, 212 F.Supp.2d at 142; McMillian, 2017 WL 8894737, at *2; Couvertier, 2014 WL 2781011, at *3; White, 2011 WL 4478988, at * 3.

## 2. Availability of Administrative Remedies

Read broadly, plaintiff seems to suggest that the grievance process was unavailable to him because of CORC's "absurd" delay in rendering their final determination. See Dkt. No. 1-1 at 27 (setting forth a memorandum from IGP Director Karen Bellamy regarding receipt of plaintiff's appeal). First, although plaintiff claims that CORC did not receive his appeal until September 14, 2016, the plain text of the memorandum seems to suggest that CORC received the appeal on June 14, 2016; rather, the memorandum sent to plaintiff was dated September 14, 2016. See id. ("Your grievance FNK-12752-16 entitled Assaulted by C.O. was rec'd by CORC on 6/14/2016.").

Second, courts within this Circuit are split as to whether a delay by CORC constitutes unavailability

that would excuse a plaintiff's failure to exhaust his administrative remedies. Compare Casey v. Brockley, No. 9:13-CV-01271 (DNH/TWD), 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015), report-recommendation and order adopted by 2015 WL 7864161 (N.D.N.Y., Dec. 03, 2015) ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust.") and Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (concluding that CORC's six month delay in responding to his appeal did not render the grievance process unavailable) with Rossi v. Fischer, No. 13-CV-3167 (PKC)(DF), 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) ("Because prison officials failed to respond to plaintiff's grievance within the 30 day time limit set by regulation, administrative remedies were not available to the plaintiff and dismissal for failure to exhaust is not appropriate.") and Peoples v. Fischer, No. 11 Civ. 2694(SAS), 2012 WL 1575302, *6 (S.D.N.Y. 2012) on reconsideration in part, 898 F.Supp.2d 618 (S.D.N.Y. 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination").

*6 Here, there is no dispute that plaintiff filed a grievance with the Franklin IGRC on May 27, 2016; received the Superintendent's determination on June 3, 2016; and appealed that determination to CORC on or about June 8, 2016. See Dkt. No. 21-5 at 2-7. CORC received plaintiff's appeal on June 14, 2016; sent him a receipt of that appeal on September 14, 2016; and ultimately issued their determination on November 2, 2016. See id. at 1; Dkt. No. 1-1 at 27. Plaintiff has not proffered evidence that he wrote to the Franklin IGRC or CORC inquiring as to the status of his appeal. The letters plaintiff does provide predate plaintiff's appeal to CORC and do not reference any unavailability in the grievance process. See Dkt. No. 1-1 at 18-26; see also 7 N.Y.C.R.R § 701.5(d)(3)(i) ("If a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."). Thus, the undersigned finds that CORC's approximately five month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement. Cf. Henderson v. Annucci, No.

14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance relating to the October 22, 2013 incident, such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA.").

Thus, as plaintiff failed to exhaust his administrative remedies prior to commencing this action, it is recommended that defendant's motion be granted.[8]

### D. Eighth Amendment

Alternatively, C.O. Ware argues that plaintiff's Eighth Amendment claim must be dismissed "because there is no evidence in the record to suggest that [she] used excessive force against [p]laintiff." Def. Mem. of Law at 11. C.O. Ware also argues that to the extent that any force was used, it was de minimis. See id. "The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015) (quoting Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) ). To state a prima facie claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. See Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element of the excessive force analysis is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm [ ] constitute[s an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9, 112 S.Ct. 995). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10, 112 S.Ct. 995 (internal quotation marks and citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."

Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000) (citation omitted).

**\*7** The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Id. (quoting Hudson, 503 U.S. at 7, 112 S.Ct. 995). In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "[1] the extent of the injury and the mental state of the defendant[;] [2] ... the need for the application of force; [3] the correlation between that need and the amount of force used; [4] the threat reasonably perceived by the defendants; and [5] any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

As to the objective element, plaintiff has failed to demonstrate that the his injury was "sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9, 112 S.Ct. 995 (1992) (internal citations omitted). Plaintiff fails to establish, and there is no indication in the record, that the injury to his right wrist/hand changed or worsened as a result of May 25, 2016 pat-frisk; nor is there any support for his claim that he broke and/or fractured his right hand and/or wrist as a result of the alleged assault. See Compl. at 9; Dkt. No. 1-1 at 10. The record is clear that on May 20, 2016 plaintiff sustained a sprain to his right wrist/hand while playing basketball. See Compl. at 5; Dkt. No. 21-3 ¶ 4. Plaintiff's medical records from May 20, 2016 indicate that there were "[n]o signs of fracture or dislocation," and state that plaintiff suffered a right wrist sprain. Dkt. No. 22 ("Pl. Medical Rec.") at 68-69, 97.[9] Plaintiff contends that on May 25, 2016, C.O. Ware "threw [him] against the wall" and "grabbed [his] hand and slammed it against the wall." Compl. at 6. Affording plaintiff special solicitude, even if the undersigned were to credit plaintiff's allegations,[10] his medical records show that immediately after the pat-frisk, plaintiff exhibited only "minimal swelling" and that his splint was still in place. Pl. Medical Rec. at 63. Non-party Dr. Cahill declared that on May 25, 2016, plaintiff reported "[n]o new injuries" to the medical staff after the alleged assault, and, therefore, it was unnecessary for

the medical staff to provide treatment. Dkt. No. 21-10 ("Cahill Decl.") ¶ 18. Medical staff examined plaintiff again on May 31, 2016 following the filing of his grievance. See Pl. Medical Rec. at 60. Although plaintiff reported pain in his right thumb, the medical records note that there was no swelling or bruising. Id. On June 9, 2016, non-party orthopedist Dr. Macelaru confirmed that plaintiff had sustained a sprain, and that there were no other fractures or torn ligaments. Id. at 59.[11] Dr. Cahill declared that in his professional medical opinion, "the sprain diagnosed on June 9, 2016 was from the same injury as the sprain diagnosed on May 20, 2016 because there were no new injuries to [plaintiff's] right hand and/or wrist between May 20, 2016 and June 9, 2016." Cahill Decl. ¶ 22. Further, Dr. Cahill stated that plaintiff's hand and wrist were placed in a hard cast "to fully immobilize and protect the wrist. Because it is hard and cannot be removed by the wearer, a cast is better than a splint to prevent further injury and allow for quicker healing." Id. ¶ 25. Moreover, plaintiff's medical records reference the May 20, 2016 basketball injury as the source of plaintiff's hand/wrist injury. See Pl. Medical Rec. at 60 (detailing May 31, 2016 appointment: "Inmate has a splint for rt wrist that he received for a wrist sprain on 5/[20] from AHMC."); 95 (detailing June 9, 2016 orthopedic appointment: "Inmate injured [rt] wrist when he fell while playing basketball."). Thus, as defendant has proffered evidence that any injury plaintiff sustained to his right hand/wrist occurred as a result of the May 20, 2016 basketball injury, and plaintiff has not provided evidence to the contrary, the undersigned finds that plaintiff has failed to demonstrate a sufficiently serious injury attributable to C.O. Ware's pat-frisk for the purposes of an Eighth Amendment analysis. See Henry v. Brown, No.14-CV-2828 (LDH)(LB), 2016 WL 3079798, at *2 (E.D.N.Y. May 27, 2016) ("[W]here undisputed medical records directly and irrefutably contradict a plaintiff's descriptions of his injuries attributed to an alleged use of excessive force, no reasonable jury could credit plaintiff's account of the happening.") (internal citation and quotation marks omitted).

**\*8** To the extent that plaintiff's discomfort or swelling can be attributed to the May 25, 2016 pat-frisk, it has been held that a plaintiff's minor injuries or discomfort are de minimis and do not constitute a sufficiently serious injury under the objective element of the analysis. See White v. Williams, No. 9:12-CV-1775 NAM/DJS, 2016 WL 4006461, at *9 (N.D.N.Y. June 22, 2016) ("Reviewing the record as a whole, and drawing all inferences in

favor of Plaintiff, the Court finds that the de minimis use of force alleged by Plaintiff, and the resultant minor injuries or discomfort, are insufficient as a matter of law to satisfy the objective prong of an excessive force claim."); James v. Phillips, No. 05 Civ. 1539(PKC)(KNF), 2008 WL 1700125, at *4 (S.D.N.Y. Apr. 9, 2008) ("True, plaintiff need not show a significant injury but he must come forward with more than a de minimis use of force. In this case, there was nothing more than a shove of an inmate who was not then handcuffed. The swelling to the chin did not amount to much.").

As to the subjective element, there is no indication in the record that C.O. Ware acted "maliciously and sadistically to cause harm." Sims, 230 F.3d at 21 (internal quotation marks and citation omitted). Absent his conclusory allegations, plaintiff has failed to proffer evidence as to C.O. Ware's mental state sufficient to demonstrate that she maliciously or sadistically caused him harm. See id. C.O. Ware declared that she pat-frisked plaintiff pursuant to DOCCS Directive 4910, which allows for an inmate to be pat-frisked when going to and from program areas like the Vocational School. Ware Decl. ¶ 23. C.O. Ware further declared that because plaintiff had repeatedly refused to return to class, she performed the pat-frisk before allowing him to leave the infirmary in an effort to "maintain order and control." Id. ¶ 25.

Thus, in viewing the record in a light most favorable to plaintiff, the lack of evidence with respect to C.O. Ware's conduct, coupled with the absence of any injury attributable to the May 25, 2016 pat-frisk, fails to present a triable issue of fact for a jury to resolve. Accordingly, the undersigned recommends that defendant's Motion for Summary Judgment on this ground be granted. See Applegate v. Annucci, No. 9:02-CV-0276 (LEK/DEP), 2008 WL 2725087, at *18 (N.D.N.Y. July 10, 2008) (awarding summary judgment on excessive force claim where the plaintiff failed to file any response to the defendant's motion and the record lacked any evidence from which a reasonable juror could conclude that the defendant used excessive force).

### E. Qualified Immunity

Defendants argue that, even if plaintiff's Eighth Amendment claim is substantiated, they are entitled to qualified immunity. Def. Mem. of Law at 17-19. Qualified

immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if the plaintiff's allegations are accepted as true, there would be a constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F.Supp.2d 211, 230 (N.D.N.Y. 2002).

**\*9** Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See subsection II.D supra, at 16-21. Because there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation. See Aiken, 236 F.Supp.2d at 230. Accordingly, it is recommended that defendants' motion on this ground be granted.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 21) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED** in its entirety, with prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [12]

### All Citations

Slip Copy, 2018 WL 3736791

---

Footnotes

1   This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

2   Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute.

2018 WL 3736791

      Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

      N.D.N.Y. L.R. 7.1(a)(3).

3    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

4    The fact that plaintiff's complaint is not notarized is immaterial under 28 U.S.C. § 1746. See Hameed v. Pundt, 964 F.Supp. 836, 840-41 (S.D.N.Y. 1997) (deeming an unnotarized document admissible in support of a summary judgment motion so long as that document contains the statement "I declare under penalty of perjury that the foregoing is true and correct.").

5    In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S.Ct. at 1858-59).

6    First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

7    Plaintiff's complaint is considered filed as of the date it was given to the prison official for forwarding. See Johnson v. Coombe, 156 F.Supp.2d 273, 277 (S.D.N.Y. 2001). "Although it is not clear when the plaintiff gave his complaint to prison officials, [a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed it." Id. (internal quotation marks and citation omitted). Because plaintiff signed his complaint on October 27, 2016, the undersigned deems that the date of filing. See Compl.

8    "Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust his administrative remedies and then refile his complaint." Brown v. Napoli, 687 F.Supp.2d 295, 298 (W.D.N.Y. 2009); see also Morales v. Mackalm, 278 F.3d 126, 128 (2d Cir. 2002) (dismissal for failure to exhaust should be without prejudice to refiling following exhaustion). However, because the undersigned recommends that plaintiff's Eighth Amendment claim against defendant be dismissed on the merits, the dismissal is with prejudice. See Ferrer v. Racette, No. 9:14-CV-1370 (GTS/DJS), 2017 WL 6459525, at *13 n.18 (N.D.N.Y. Dec. 18, 2017) ("Because there is an alternative basis for dismissing the claims against these Defendants that cannot be overcome by allowing Plaintiff a chance to exhaust his administrative remedies, the dismissal is with prejudice.").

9    AHMC documents incorrectly note that plaintiff sprained his left wrist. See Pl. Medical Rec. at 97.

10    C.O. Ware maintains that she did not use excessive force during the pat-frisk, nor did she use force maliciously or sadistically to cause plaintiff harm. See Dkt. No. 21-8 ("Ware Decl.") ¶¶ 32, 38.

11    Dr. Cahill declared that, in his professional opinion, it was reasonable to schedule plaintiff's follow-up appointment with the orthopedist for two to three weeks of from the date of the injury, instead of the two to three days recommended on his discharge papers, as "the [AHMC] radiology department indicated that [plaintiff] did not sustain any fractures or tears." Cahill Decl. ¶ 21 n.5.

12    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

---

End of Document        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,

v.

Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone,
New York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York,
New York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

 **\*1** The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary
judgment and dismissing the amended complaint, and
United States Magistrate Judge James C. Francis IV
having issued a report and recommendation, dated
August 20, 1999, recommending that the motion
be granted, and upon review of that report and
recommendation together with plaintiff's letter to this
Court, dated August 28, 1999, stating that plaintiff does
"not contest the dismissal of this action", it is

ORDERED that the attached report and
recommendation of United States Magistrate Judge
James C. Francis IV, dated August 20, 1999, is adopted in
its entirety; and it is further

ORDERED that defendant Pflueger's motion for
summary judgment is granted, and the amended
complaint is dismissed; and it is further

ORDERED that the Clerk of the Court shall enter
judgment accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42
U.S.C. § 1983. Mr. Cole alleges that the defendant
Richard Pflueger, a corrections officer, violated his First
Amendment rights by refusing to allow him to attend
religious services. The defendant now moves for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set forth below, I recommend
that the defendant's motion be granted.

*Background*

During the relevant time period, Mr. Cole was an
inmate in the custody the New York State Department
of Correctional Services ("DOCS"), incarcerated at the
Green Haven Correctional Facility. (First Amended
Complaint ("Am.Compl.") ¶ 3). From June 21, 1993 to
July 15, 1993, the plaintiff was in keeplock because of
an altercation with prison guards. (Am.Compl.¶¶ 17–
25). An inmate in keeplock is confined to his cell for
twenty-three hours a day with one hour for recreation.
(Affidavit of Anthony Annucci dated Dec. 1, 1994 ¶
5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶
3). Permission is granted unless prison officials determine
that the inmate's presence at the service would create
a threat to the safety of employees or other inmates.
(Schneider Aff. ¶ 3). The standard procedure at Green
Haven is for the captain's office to review all requests
by inmates in keeplock to attend religious services.
(Schneider Aff. ¶ 3). Written approval is provided to the
inmate if authorization is granted. (Affidavit of Richard
Pflueger dated April 26, 1999 ("Pflueger Aff.") ¶ 5). The
inmate must then present the appropriate form to the

gate officer before being released to attend the services. (Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request to attend the Muslim services on July 2, 1993. (Request to Attend Scheduled Religious Services by Keep–Locked Inmate dated June 28, 1993 ("Request to Attend Services"), attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *3 (S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se*'s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

B. *Constitutional Claim*
It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent inmates posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

*Conclusion*
For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with

the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

Footnotes

1    In light of this finding, there is no need to consider the defendant's qualified immunity argument.

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2781011
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Eli Pagan COUVERTIER, also
known as Eli Pagan, Plaintiff,
v.
Julie JACKSON, et al., Defendants.

No. 9:12–CV–1282 (DNH/DEP).
|
Signed June 19, 2014.

**Attorneys and Law Firms**

Eli Pagan Couvertier, Brooklyn, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney
General, Christopher W. Hall, Esq., Ass't Attorney
General, of Counsel, Albany, NY, for Defendants.

## DECISION and ORDER

DAVID N. HURD, District Judge.

**\*1** Pro se plaintiff Eli Pagan Couvertier brought this
action pursuant to 42 U.S.C. §§ 1983, 2000cc et seq.,
alleging deprivations of his civil rights. On May 22,
2014, the Honorable David E. Peebles, United States
Magistrate Judge, advised by Report–Recommendation
that defendants' motion for summary judgment be
granted. No objections to the Report–Recommendation
were filed.

Based upon a careful review of the entire file and the
recommendations of the Magistrate Judge, the Report–
Recommendation is accepted in whole. *See* 28 U.S.C. §
636(b)(1).

Therefore, it is

ORDERED that

  1. Defendants' motion for summary judgment is
  GRANTED; and

  2. Plaintiff's complaint is DISMISSED in its entirety.

The Clerk is directed to serve a copy of this Decision and
Order upon plaintiff in accordance with the Local Rules
and close the file.

## REPORT AND RECOMMENDATION

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiff Eli Pagan Couvertier, a former New York
State prison inmate, commenced this action against the
State of New York, as well as individuals employed by
the state's Department of Corrections and Community
Supervision ("DOCCS"), pursuant to 42 U.S.C. §§ 1983,
2000cc et seq., alleging deprivation of his civil rights.
Plaintiff's claims stem from allegations that defendants
denied him the right to practice his chosen religion.

Currently pending before the court is a motion brought
by the defendants requesting the entry of summary
judgment dismissing all or portions of plaintiff's complaint
on three grounds, including for failure to fully exhaust
administrative remedies before filing suit. For the reasons
set forth below, I recommend that the motion be granted.

## I. *BACKGROUND* [1]

Although plaintiff has since been released from prison, at
the time of commencement of this action, on August 9,
2012, he was an inmate in the custody of the DOCCS. Dkt.
No. 1 at 1; Dkt. No. 14. At all times relevant to the events
giving rise to this action Couvertier was confined at the
Watertown Correctional Facility ("Watertown") located
in Watertown, New York. *See generally* Dkt. No. 1.

In his complaint, plaintiff alleges that while he was
incarcerated, defendants deprived him of his right to
practice his chosen religion in violation of the First
Amendment to the United States Constitution and the
Religious Land Use and Institutionalized Persons Act
("RLUIPA"). Dkt. No. 1 at 1, 4–5. Specifically, he
alleges that, although he notified corrections officers,
corrections counselors, and the Chaplain at Watertown
that he practices Taino, a Native American religion,
he was not permitted to participate in any religious
observances before proving his Native American ancestry.
*See generally* Dkt. No. 1. He further alleges that he
was sent to a different prison facility for a mental
health observation in retaliation for complaining about

his religious needs, and additionally that he was verbally harassed by corrections officers. *Id.* at 4–5.

**\*2** On May 22, 2012, in accordance with the DOCCS Inmate Grievance Program ("IGP"), [2] plaintiff filed a grievance regarding his alleged religious deprivations. Dkt. No. 1 at 3; Dkt. No. 47–2 at 4–5. The Inmate Grievance Resolution Committee ("IGRC") at Watertown denied the grievance at the initial stage of the grievance process. Dkt. No. 1 at 3; Dkt. No. 47–2 at 7. Plaintiff appealed that decision to the superintendent of Watertown on or about June 6, 2012. *Id.* Following the superintendent's denial of that appeal, plaintiff sought review by the Central Office Review Committee ("CORC") on June 14, 2012. [3] Dkt. No. 1 at 3; Dkt. No. 47–2 at 9. The CORC issued its decision upholding the superintendent's determination on February 20, 2013. [4] Dkt. No. 47–3 at 6.

## II. *PROCEDURAL HISTORY*
Plaintiff commenced this action with the filing a complaint and accompanying motions to proceed *in forma pauperis* ("IFP") and for a temporary restraining order on or about August 9, 2012. Dkt. Nos. 1, 2, 4. Following an initial review of plaintiff's complaint, District Judge David N. Hurd issued an order on March 8, 2013, *inter alia,* dismissing plaintiff's claims asserted against the State of New York, denying plaintiff's application for a temporary restraining order, and ordering the issuance of summonses for the remaining individual defendants. [5] Dkt. No. 15.

Currently pending before the court is a motion by defendants seeking the entry of summary judgment dismissing plaintiff's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 47. Defendants contend that dismissal is appropriate for several reasons, including because plaintiff failed to exhaust the available administrative remedies prior to filing suit in federal court. Dkt. No. 47–4 at 3– 5. The motion, to which plaintiff has responded, is now fully briefed and ripe for determination, and has been referred to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Summary Judgment Standard*
Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

**\*3** A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n.4; *Sec. Ins. Co.,* 391 F .3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass' n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. *Exhaustion of Available Administrative Remedies*
The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison

Case 9:15-cv-00497-DNH-TWD    Document 113    Filed 11/13/18    Page 35 of 144

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2006) ("Exhaustion is ... mandatory. Prisoners must now exhaust all 'available' remedies[.]"); *Hargrove v. Riley,* No. 04–CV–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). [6] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is an affirmative defense that must be raised by a defendant in response to an inmate suit. [7] *Jones v. Block,* 549 U.S. 199, 212 (2007). In the event the defendant establishes that the inmate plaintiff failed "to fully complete [ ] the administrative review process" prior to commencing the action, the plaintiff's complaint is subject to dismissal. *Pettus v. McCoy,* No. 04–CV0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95; *see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ). [8]

**\*4** In accordance with the PLRA, the DOCCS has made the IGP available to prison inmates. It is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N .Y.C.R.R. § 701.5; *Mingues v. Nelson,* No. 96–CV–5396, 2004 WL 234898, at *4 (S.D.N.Y. Feb. 20, 2004). Embodied in 7 N.Y.C.R.R. § 701, the IGP requires that an inmate first file a complaint with the facility's IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. *Id.* A representative of the facility's IGRC has up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal

resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b) (2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. *Id.* at § 701.5(c). The superintendent must issue a written decision within a certain number of days of receipt of the grievant's appeal. [9] *Id.* at § 701.5(c)(i), (ii).

The third and final step of the IGP involves an appeal to the CORC, which must be taken within seven days after receipt of the superintendent's written decision. *Id.* at § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. *Id.* at § 701.5(d)(2)(i).

Accordingly, at each step of the IGP, a decision must be entered within a specified time period. Significantly, "[a]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC, to complete the grievance process." *Murray v. Palmer,* No. 03–CV–1010, 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31, 2010) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.) (citing, *inter alia,* 7 N.Y.C.R.R. § 701.6(g)(2)). The IGP provides no mechanism for enforcing the requirement that the CORC issue a decision in thirty days. *Torres v. Carry,* 672 F.Supp.2d 338, 345 (S.D.N.Y.2009).

Generally, if a plaintiff fails to follow each of the required three steps of the above-described procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *See Ruggerio v. Cnty. of Orange,* 467 F.3d 170, 176 (2d Cir.2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

In this case, at the time the plaintiff filed this action, on or about August 9, 2012, the CORC had not yet issued its decision denying plaintiff's grievance, and did not do so until February 2013. Dkt. No. 1; Dkt. No. 47– 3 at 6. Thus, plaintiff failed to fully exhaust the available administrative remedies prior to filing this action. *See Partee v. Grood,* No. 06–CV–1552, 2007 WL 2164529, at

*3 (S.D.N.Y.2007) ("[A]n inmate/plaintiff's claim is not exhausted until he appeals to the CORC and receives a final decision regarding his grievance."). The fact that complete exhaustion has now occurred does not cure this defect. *See Burgos v. Craig,* 307 F. App'x 469, 471 (2d Cir.2008) ( "Assuming arguendo that Plaintiff–Appellant subsequently exhausted his administrative remedies [after filing suit], that is not enough to save his suit, because he is required to have properly exhausted before he sues."); *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), *overruled on other grounds, Porter v. Nussle,* 534 U.S. 516 (2002), (holding that "[s]ubsequent exhaustion after suit is filed ... is insufficient" to satisfy the PLRA's exhaustion requirement).

**\*5** Plaintiff's failure to exhaust, however, does not warrant dismissal of his complaint without further inquiry. In a series of decisions rendered since enactment of the PLRA, the Second Circuit has prescribed a threepart test for determining whether dismissal of an inmate-plaintiff's complaint is justified for failure to satisfy the PLRA's exhaustion requirement. *See, e.g., Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004); *see also Macias,* 495 F .3d at 41. Those decisions instruct that, before dismissing an action as a result of a plaintiff's failure to exhaust, a court must first determine whether the administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. In the event of a finding that a remedy existed and was available, the court must next examine whether the defendant has forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through his own actions preventing the exhaustion of plaintiff's remedies, he should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the exhaustion defense survives these first two levels of scrutiny, the court must examine whether the plaintiff has plausibly alleged special circumstances to justify his failure to comply with the applicable administrative procedure requirements. *Id.*

With respect to the first factor, there is no dispute that the IGP was available to plaintiff in light of the fact that he filed a grievance, received responses from the appropriate officials, and filed his appeals. Dkt. No. 1 at 3; Dkt. No. 47–2 at 4–5, 7,9; Dkt. No. 47–3 at 6. In addition, plaintiff does not allege, and there is nothing in the record suggesting that defendants should be estopped from pursuing the defense of failure to exhaust.

Turning to the third factor, liberally construed, plaintiff argues that the court should conclude that special circumstances exist to excuse him from his failure to exhaust. Dkt. No. 50. More specifically, he contends that DOCCS officials did not comply with the time limitations set forth in the IGP and improperly delayed the filing of his appeal to the CORC. *Id.* at 1. In support of this position, plaintiff has submitted an e-mail dated July 17, 2012, from an individual named Julie A. Dennis, identified as IGP Coordinator, in which Dennis indicated to defendant Gascon that the CORC is "at least five months behind" and that plaintiff's grievance had not yet been "entered into the system." *Id.* at 10. An administrative delay in processing or deciding an inmate's appeal of a grievance, however, does not constitute a special circumstance justifying excusal of the exhaustion requirement. *See Ford v. Smith,* No. 12–CV–1109, 2014 WL 652933, at \*3 (N.D.N .Y. Feb. 19, 2014) (McAvoy, J., *adopting report and recommendation by* Dancks, M.J.) ("CORC's failure to act within the time frame set out in the regulations does not constitute special circumstances justifying the failure to exhaust.").

**\*6** In sum, because plaintiff failed to fully exhaust the available administrative remedies prior to filing this action, and there is nothing in the record now before the court to suggest he should be excused from that requirement, I recommend that defendants' motion be granted. [10]

IV. *SUMMARY AND RECOMMENDATION*
Despite being aware of the administrative remedies available to him, plaintiff commenced this action before he had fully exhausted them. Because an administrative delay in reviewing a grievance does not eliminate that requirement, I conclude that plaintiff's failure to exhaust the available administrative remedies prior to filing suit cannot be ignored. Based on the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 47) be GRANTED; and it is further

RECOMMENDED that plaintiff's complaint be DISMISSED, without prejudice, based upon his failure

to fully exhaust available administrative remedies before commencing this action.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Filed May 22, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2781011

### Footnotes

1   In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

2   The IGP will be explained more completely in part III.B. of this report.

3   Plaintiff's appeal was received by the CORC on October 30, 2012. Dkt. No. 47–3 at 2, 4.

4   The denial of plaintiff's request to practice his chosen religion appears to have been based upon his failure to provide documentation reflecting his membership in the Taino Nation. *See, e.g.,* Dkt. No. 47–2. In its decision, while upholding the superintendent's determination, the CORC noted that plaintiff's request to change his religious designation had been approved, and that verification of his lineage had been properly required. Dkt. No. 47–3. Copies of e-mails between DOCCS officials, provided to the court by the plaintiff in support of his opposition to the pending motion, appear to confirm that he was recognized by the DOCCS as a Native American in or around July, 2012. Dkt. No. 50 at 12.

5   The individual defendants named in the complaint include the following: (1) Julie Jackson, the deputy superintendent for programs at Watertown; (2) Michael Bocciolatt, plaintiff's A.S.A.T. counselor at Watertown; (3) Kathryn Gascon, the IGP supervisor; (4) M.P. Geoghegan, the deputy superintendent of security at Watertown; (5) S. Thackston, the deputy superintendent of administration at Watertown; (6) Beth Steria, the acting deputy of programs at Watertown; (7) Diane Kogut, a corrections counselor at Watertown; and (8) Ekpe D. Ekpe, the facility superintendent at Watertown. Dkt. No. 1 at 2–3.

6   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

7   In their answers, defendants have asserted failure to exhaust as a defense. *See* Dkt. Nos. 31 at 2; 34 at 2; 36 at 2; and 40 at 2.

8   While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,* 495 F.3d at 43 (quoting *Johnson v. Testman,* 380 F.3d 691, 697–98 (2d Cir.2004) (emphasis omitted)).

9   Depending on the type of matter complained of by the grievant, the superintendent has either seven or twenty days after receipt of the grievant's appeal to issue a decision. *Id.* at § 701.5(c) (i), (ii).

10   In light of my recommendation that the complaint be dismissed due to plaintiff's failure to exhaust, I have not considered the other grounds for dismissal contained in defendants' motion.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-00497-DNH-TWD    Document 113    Filed 11/13/18    Page 38 of 144
Douglas v. Perrara, Not Reported in F.Supp.2d (2013)
2013 WL 5437617

2013 WL 5437617
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David DOUGLAS, Sr., Plaintiff,
v.
PERRARA, Corrr. Officer, Great Meadow
C.F.; Lawrence, Corr. Officer, Great
Meadow C.F.; Whittier, Corr. Officer, Great
Meadow C.F.; Mulligan, Corr. Officer,
Great Meadow C.F.; Deluca, Corr. Sergeant,
Great Meadow C.F.; and Russel, Deputy
Superintendent, Great Meadow C.F, Defendants.

No. 9:11–CV–1353 (GTS/RFT).
|
Sept. 27, 2013.

**Attorneys and Law Firms**

David Douglas, Sr., Liverpool, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Colleen D. Galligan, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### DECISION and ORDER

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights action filed by David Douglas, Sr., ("Plaintiff") against the six above-captioned New York State correctional employees, are the following: (1) Defendants' motion for partial summary judgment (requesting the dismissal of Plaintiff's claims against Defendant Russell, and his claims against the remaining Defendants in their official capacities); and (2) United States Magistrate Judge Randolph F. Treece's Report–Recommendation recommending that Defendants' motion be granted. (Dkt.Nos.70, 80.) Neither party filed an objection to the Report–Recommendation, and the deadline by which to do so has expired. (*See generally* Docket Sheet.) After carefully reviewing the relevant filings in this action, the Court can find no clear error in the Report–Recommendation: Magistrate Judge Treece employed

the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report–Recommendation for the reasons stated therein. (Dkt. No. 80.)

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Treece's Report–Recommendation (Dkt. No. 80) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. No. 70) is ***GRANTED;*** and it is further

**ORDERED** that the following claims are ***DISMISSED*** from this action: (a) all claims asserted against Defendant Russell, and (b) all claims asserted against Defendants in their official capacities only. The Clerk is directed to terminate Defendant Russell from this action; and it is further

**ORDERED** that the following claims ***REMAIN PENDING*** in this action: (a) Plaintiff's claim that Defendants Whittier, Mulligan, Perrara and/or Lawrence subjected him to inadequate prison conditions by depriving him of meals for approximately five consecutive days in December 2009, in violation of the Eighth Amendment; (b) Plaintiff's claim that Defendants Whittier, Mulligan, Perrara and Lawrence used excessive force against him, and that Defendant Deluca failed to protect him from the use of that excessive force, in violation of the Eighth Amendment and New York State common law; and (c) Plaintiff's claim that Defendant Deluca was deliberately indifferent to Plaintiff's serious medical needs (following the assaults) in violation of the Eighth Amendment; and it is further

**ORDERED** that Pro Bono Counsel be appointed for the Plaintiff for purposes of trial only; any appeal shall remain the responsibility of the plaintiff alone unless a motion for appointment of counsel for an appeal is granted; and it is further

**ORDERED** that upon assignment of Pro Bono Counsel, a final pretrial conference with counsel will be scheduled in this action before the undersigned, at which time the Court will schedule a jury trial for Plaintiff's remaining claims as set forth above against Defendants Whittier, Mulligan, Perrara, Lawrence and DeLuca. Counsel are

directed to appear at the final pretrial conference with settlement authority from the parties.

***REPORT–RECOMMENDATION and ORDER***

**RANDOLPH F. TREECE**, United States Magistrate Judge.

**\*2** *Pro se* Plaintiff David Douglas brought a civil rights Complaint, pursuant to 42 U.S.C. § 1983, asserting that Defendants violated his constitutional rights while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and housed in the Great Meadow Correctional Facility. Specifically, Plaintiff alleges that in early December 2009, he wrote a letter to Defendant Eileen Russell [1] complaining that he had been denied meals for several days. *See* Dkt. No. 1, Compl. at ¶¶ 8, 64, & 66. Plaintiff further alleges that the remaining Defendants violated his constitutional rights when they used excessive force against him on several occasions and denied him medical care in order to treat the injuries he sustained therewith. *See generally id.* And, according to Plaintiff, Defendant Russell's failure to take disciplinary action against these individuals and curtail their "known pattern of physical abuse of inmates" renders her liable for violating his constitutional rights. *Id.* at ¶ 66.

Presently pending is Defendants' Motion for Partial Summary Judgment whereby they seek dismissal of Defendant Russell from this action as well as dismissal of all claims against the remaining Defendants in their official capacities. Dkt. No. 70. A response to that Motion was due on February 22, 2013. To date, the Court has not received a response from Plaintiff.

## I. DISCUSSION

### A. Standard of Review

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with

[ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I. C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ( "Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) and *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)).

**\*3** When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173

Douglas v. Ferrara, Not Reported in F.Supp.2d (2013)

2013 WL 5437617

(2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1991).* Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).*

Pursuant to the Local Rules of Practice for the Northern District of New York, "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file to serve any papers ... shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown." N.D.N.Y.L.R. 7.1(b)(3). "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz, 76 F.3d 483, 486 (2d Cir.1996).* Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id.; FED. R. CIV. P. 56(c).* Because Plaintiff has failed to raise any question of material fact, the Court will accept the facts as set forth in Defendants' Statement Pursuant to Rule 7.1(a)(3) (Dkt. No. 70–2), supplemented by Plaintiffs' verified Complaint (Dkt. No. 1), as true. *See Lopez v. Reynolds, 998 F.Supp. 252, 256 (W.D.N.Y.1997).*

**B. Personal Involvement**

As noted above, Plaintiff brings this civil rights action for alleged violations of his constitutional rights during his incarceration in December 2009 at Great Meadow Correctional Facility. Plaintiff claims that in early December 2009, he was subjected to threats and harassment by other inmates and correctional officers. Compl. at ¶ 1. Plaintiff alleges that beginning on December 11, 2009, he was denied several meals for several consecutive days by unnamed individuals, prompting him to file grievances and write two letters to Defendant Russell. *Id.* at ¶¶ 2–8. [2] Thereafter, on December 16, 2009, Plaintiff's meals were delivered to him and, on the following date, he was moved to protective custody. *Id.* at ¶¶ 9–10. The remainder of Plaintiff's Complaint describes a series of events wherein the remaining Defendants are

accused of using excessive physical force against him and denying him medical attention.

**\*4** With regard to the pending, unopposed Motion, the Court notes that there is a paucity of factual allegations contained in the Complaint concerning Defendant Russell. In fact, the only factual allegation that this Court can point to is that Plaintiff wrote two letters to Defendant Russell complaining about being denied meals. Defendant Russell is not named nor referenced throughout the remainder of the Complaint. Nevertheless, in the section of the Complaint where Plaintiff lists his causes of action, he seemingly seeks to hold Defendant Russell liable for her alleged failure to intervene and take disciplinary action against the Defendants in order to curb their known pattern of physical abuse against inmates. *Id.* at ¶¶ 64 & 66.

According to Defendants' uncontroverted submissions, Defendant Eileen Russell is employed by DOCCS and worked at Great Meadow in 2006 as the Assistant Deputy Superintendent for Special Housing assigned to the Behavioral Health Unit. Dkt. No. 70–3, Eileen Russell Decl., dated Feb. 4, 2013, at ¶¶ 1, 3, & 4. During her tenure in that position, Plaintiff neither worked nor was housed as a patient in the Behavioral Health Unit. Russell Decl. at ¶ 11. Russell did not have any responsibilities related to delivery of meals to inmates nor does she have any recollection of speaking with Plaintiff or seeing any correspondence from him. *Id.* at ¶ 13. Furthermore, at no time was she made aware of any assault against Plaintiff by any DOCCS employee. *Id.* at ¶ 15.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under *§ 1983.*" *Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994)* (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to *section 1983* actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz, 1997 WL 576038, at \*2 (S.D.N.Y. Sept. 15, 1997)* (citing *Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir.1995) & Wright v. Smith, 21 F.3d at 501)* (further citations omitted)). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).*

It appears that Plaintiff seeks to hold Defendant Russell liable due to her employment as a supervisor at Great Meadow. The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if she: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. [3] *Colon v. Coughlin,* 58 F.3d at 873 (citations omitted); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted).

**\*5** Here, the evidence shows that Defendant Russell did not directly participate in any constitutional wrongdoing, she was not aware that Plaintiff had been experiencing any problems with other inmates and staff, in her assignment to the Behavioral Health Unit she did not come into contact with the Plaintiff, and, she was not responsible for creating policies or customs nor for rectifying any of the alleged constitutional infirmities Plaintiff is alleged to have been subjected to. Because Plaintiff failed to respond to Defendants' Motion, he has not created any material issue of fact regarding Russell's non-involvement in any constitutional wrongdoing. Thus, based upon the record before the Court, we find that Defendant Russell was not personally involved in any wrongdoing and should be **dismissed** from this action. *See Wright v. Smith,* 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

### C. Eleventh Amendment

By their Motion, Defendants seek dismissal of claims brought against them in their official capacities. Dkt. No. 70. In making this request, the Defendants note that during the pendency of this action, Plaintiff was released from DOCCS's custody, thereby rendering moot any request he has made for injunctive relief. Dkt. No. 70–4, Defs.' Mem. of Law, at pp. 7–8. After reviewing the Complaint, the Court notes that Plaintiff primarily seeks monetary compensation for both compensatory and punitive damages. *See* Compl. at Relief Requested. In addition, he seeks a declaratory judgment that his rights have been violated, but does not seek other injunctive relief. *Id.*

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana,* 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.' " *Richardson v. New York State Dep'l of Corr. Servs.,* 180 F.3d 426, 447–48 (2d Cir.1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. at 98–101; *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993); *Daisernia v. State of New York,* 582 F.Supp. 792, 796 (N.D.N.Y.1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep'l. of Corr. Servs.,* 915 F.Supp. 525, 539 (N.D.N.Y.1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993)); *see also Mathie v. Fries,* 121 F.3d 808, 818 (2d Cir.1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer ....").

**\*6** However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young,* 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep'l of Corr. Servs.,* 915 F.Supp. at 540. While much of the relief sought herein is compensatory

2013 WL 5437617

and punitive monetary relief, to the extent Plaintiff seeks some form of declaratory relief, such claims against the Defendants in their official capacities could go forward insofar as the Plaintiff seeks prospective relief. However, in light of his release from DOCCS's custody, the Court finds that any request for prospective injunctive relief is moot and the claims against the remaining Defendants in their official capacities should be **dismissed.** *Khalil v. Laird,* 353 F. App'x 620 (2d Cir.2009) (citing *Muhammad v. City of New York Dep't of Corr.,* 126 F.3d 119, 123 (2d Cir.1997)).

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion for Partial Summary Judgment (Dkt. No. 70) be **GRANTED** and all claims against Defendant Russell be **DISMISSED** and claims against the remaining Defendants in their official capacities be **DISMISSED;** and it is further

**RECOMMENDED,** that if the above recommendations are accepted, this case be set down for a final pre-trial conference with the parties to assess whether this matter is trial ready; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

### All Citations

Not Reported in F.Supp.2d, 2013 WL 5437617

---

Footnotes

1    Although Plaintiff spells this Defendant's name as "Russel," it is clear from Defendants' submissions that the correct spelling of this individual's name is "Russell" and the Court will refer to her accordingly. Compl. at ¶ 8; Dkt. Nos. 10 & 70–3.

2    Plaintiff alleges that in addition to filing several grievances he submitted sick call requests and sent letters to the Inspector General, all explaining how his Eighth Amendment rights were being violated. Compl. at ¶¶ 5–8.

3    The Second Circuit has yet to address the impact of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), upon the categories of supervisory liability under *Colon v. Coughlin,* 58 F.3d 865 (2d Cir.1995). *See Grullon v. City of NewHaven,* 720 F.3d 133 (2d Cir.2013) (noting that the Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement," but declining to resolve the issue). Lower courts have struggled with this issue, specifically whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See, e.g., Sash v. United States,* 674 F.Supp.2d 531, 543 (S.D.N.Y.2009). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see, e.g., Bellamy v. Mount Vernon Hosp.,* 2009 WL1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd,* 387 F. App'x 55 (2d Cir.2010), others disagree and conclude that whether any of the five categories apply in any particular cases depends upon the particular violations alleged and the supervisor's participatory role, *see, e.g., D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010). Nevertheless, this Court, until instructed to the contrary, continues to apply the entirety of the five-factor *Colon* test.

---

**End of Document**      © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-00497-DNH-TWD   Document 113   Filed 11/13/18   Page 43 of 144

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrell K. ELEBY, Plaintiff,
v.
G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)
|
Signed January 9, 2016
|
Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing
Correctional Facility, 354 Hunter Street, Ossining, NY
10562, Pro Se.

FOR DEFENDANTS: ERIC T. SCHNEIDERMAN,
New York State Attorney General, OF COUNSEL:
CHRISTOPHER J. HUMMEL, ESQ., Assistant
Attorney General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE
JUDGE

**\*1** This is a civil rights action brought by *pro se*
plaintiff Terrell Eleby against three individuals employed
by the New York State Department of Corrections and
Community Supervision ("DOCCS"), one of whom has
since been dismissed from the action, pursuant to 42
U.S.C. § 1983. In his complaint, plaintiff alleges that two
of the defendants assaulted him in violation of his Eighth
Amendment rights, and the third defendant violated his
Fourteenth Amendment rights by issuing an allegedly
false misbehavior report against him and confining him in
the special housing unit ("SHU") at the prison facility in
which he was housed.

Currently pending before the court is a motion brought
by the remaining two defendants seeking the entry of
summary judgment in their favor based upon plaintiff's
alleged failure to exhaust available administrative

remedies before filing suit. For the reasons set forth below,
I recommend that the defendants' motion be granted.

I. BACKGROUND [1]
Plaintiff is a prison inmate currently held in the custody
of the DOCCS. *See, e.g.,* Dkt. No. 29-2 at 13. Although
plaintiff is now confined elsewhere, at the times relevant
to this action he was housed in the Auburn Correctional
Facility ("Auburn") located in Auburn, New York. *Id.* at
18.

In his complaint, plaintiff alleges that on January 14, 2015,
he was waiting in one of Auburn's hospital dormitory
rooms to be escorted to an outside facility for a medical
examination. Dkt. No. 1 at 4; Dkt. No. 29-2 at 54. At
approximately 10:00AM, defendants Smith and Vevone,
both of whom are corrections officers, arrived at plaintiff's
room to escort him on the medical trip. Dkt. No. 1 at
4. While plaintiff was attempting to remove his clothes
for a mandatory strip search, defendant Smith "violently
and physically attacked [him]." *Id.*; *see also* Dkt. No. 29-2
at 58. According to plaintiff, both defendants Smith and
Vevone "jumped on [his] back," and defendant Smith
punched him repeatedly in the eye, head, neck, back, and
ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five
minutes Sergeant Cudla, who is not a named defendant
in the action, arrived at plaintiff's dorm, physically
intervened, and ordered defendants Smith and Vevone to
cease the assault and leave the room. Dkt. No. 1 at 4-5;
Dkt. No. 29-2 at 58-59, 64. As a result of the alleged
assault, plaintiff suffered various injuries, including a
bloody and swollen eye, swelling and redness to his neck,
and sore ribs. Dkt. No. 1 at 5; Dkt. No. 29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and
Vevone issued plaintiff a misbehavior report accusing
him of violating six prison rules. Dkt. No. 22 at 9; Dkt.
No. 29-2 at 72. Following a superintendent's hearing to
address the charges, plaintiff was found guilty on four
of the six counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at
72. As a result of that finding, plaintiff was sentenced
to serve thirty days of disciplinary SHU confinement,
with a corresponding loss of commissary, package, and
telephone privileges. Dkt. No. 22 at 13; Dkt. No. 29-2 at
73-72.

II. PROCEDURAL HISTORY

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

Case 9:15-cv-00497-DNH-TWD  Document 113  Filed 11/13/18  Page 44 of 144

**\*2** Plaintiff commenced this action on or about March 12, 2015, with the filing of a complaint and accompanied by an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On May 12, 2015, Senior District Judge Thomas J. McAvoy issued a decision and order granting plaintiff's IFP application and accepting his complaint for filing, with the exception of one cause of action. [2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Legal Standard Governing Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Plaintiff's Exhaustion of Administrative Remedies

**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

### 1. Legal Principles Governing Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136

S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, ––– Fed.Appx. ––––, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

**\*4** The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to

render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/ or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can— and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

## 2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January 22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney*, 604 Fed.Appx. at 3 ("The IGP also has an expedited

Case 9:15-cv-00497-DNH-TWD   Document 113   Filed 11/13/18   Page 47 of 144

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey*, No. 11-CV-0418, 2014 WL 2807532, at *9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry*, 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. *Hayes*, 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g., Goodson v. Silver*, No. 09-CV-0494, 2012 WL 4449937, at *9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

## IV. SUMMARY AND RECOMMENDATION
Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

**\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

## All Citations

Not Reported in Fed. Supp., 2017 WL 986123

2017 WL 986123

Footnotes

1    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

2    Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

3    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

4    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

5    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

6    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

7    Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.,* Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

8    In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/Directives/0700.pdf.

9    In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

10    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3039687
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Thomas Adam Henderson, Plaintiff,
v.
Anthony Annucci, et al., Defendants.

14-CV-445A
|
Signed 03/14/2016

## REPORT, RECOMMENDATION AND ORDER

JEREMIAH J. MCCARTHY, United States Magistrate
Judge

**\*1** This case has been referred to me by Hon. Richard J.
Arcara for supervision of pretrial proceedings, including
the preparation of a Report and Recommendation
on dispositive motions. [23]. [1] Plaintiff Thomas Adam
Henderson brought this action pursuant to 42 U.S.C.
§ 1983 claiming that his civil rights were violated when
the defendants allegedly assaulted him on September 10,
2013, October 22, 2013 and May 16, 2014. Complaint [1],
pp. 11,13. Before me are defendants' motion to dismiss
[22], plaintiff's motion to amend the complaint [31], and
plaintiff's motion for appointment of counsel [32].

For the reasons stated below, I recommend that
defendants' motion to dismiss be granted in part and
denied in part, the plaintiff's motion to amend be granted
in part and denied in part, and that plaintiff's motion for
the appointment of counsel be denied.

## BACKGROUND

Plaintiff commenced this civil rights action pursuant to 42
U.S.C. § 1983 alleging that while he was incarcerated at the
Attica Correctional Facility, Correction Officer Dunford
sexually assaulted him during a frisking on September
10, 2013. He asserts that after being cut down from a
suicide attempt, Officer Dunford pulled up the waistband
of his underwear so as to give him a "wedgie", and then
swiped his fingers between plaintiff's butt cheeks "roughly

pressing" against his anus. Complaint [1], p. 11. After
complaining about this conduct, plaintiff states that he
was informed that this procedure is known as a "credit
card check", performed to determine if an inmate is hiding
weapons. Id. at 11, 13, 14, 17. Plaintiff argues that the
procedure constitutes a sexual assault.

He also asserts that the "credit card check" procedure was
performed on him twice during a pat frisk on October
22, 2013 by Corrections Officer J. Hoinski. [2] Id. at p. 13.
Finally, plaintiff alleges that Correction Officer B. Naab
performed the "credit card check" on him on May 16,
2014. Id. at pp. 16-17.

Plaintiff claims that he complained to New York State
Department of Corrections and Community Supervision
("DOCCS") Commissioner Anthony Annucci, DOCCS
Chief Inspector General Vernon J. Fonda, Attica
Correctional Facility Superintendent Mark L. Bradt, and
others about the conduct which he considered to be sexual
assaults. Id. at pp. 12, 15. He argues that these supervisory
defendants failed to properly investigate and respond to
his complaints in violation of his Eighth Amendment
rights. Id. at 12. [3]

**\*2** In his original complaint, plaintiff stated that he
did not file a grievance as to any of the incidents
because he did not believe he had to file a grievance.
Instead, he contended that he complied with DOCCS
Directive 4028A. Id. at pp. 5, 19. The defendants move
to dismiss on the grounds that plaintiff failed to exhaust
his administrative remedies. Motion to Dismiss [22-1], p.
4. Subsequently, the plaintiff sought leave to amend his
Complaint to allege that he did, in fact, file a grievance
regarding one of the three "credit card check" incidents.
Plaintiff's Motion to Amend [31], p.3. The defendants
oppose that motion.

## DISCUSSION

### A. Standard of Review
The defendants move to dismiss the claims in the
Complaint pursuant to Rule 12 of the Federal Rules
of Civil Procedure. The court accepts the material facts
alleged in the complaint as true and draws all reasonable
inferences in favor of the plaintiff and against the
defendants. See Chance v. Armstrong, 143 F.3d 698, 701
(2d Cir. 1998). However, legal conclusions, deductions or

opinions couched as factual allegations are not given a presumption of truthfulness. Albany Welfare Rights Org. Day Care Center, Inc. v. Schreck, 463 F.2d 620 (2d Cir. 1972). The court is required to read the complaint broadly and with great latitude on a motion to dismiss. Yoder v. Orthomolecular Nutrition Institute, 751 F.2d 555, 558 (2d Cir. 1985). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient". Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

The Supreme Court has clarified the pleading standard required to withstand a motion to dismiss. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense". Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (internal citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief". Id.; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 565-66 (2007) (factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)). Under Iqbal, factual allegations must be sufficient to support necessary legal conclusions. Iqbal, 556 U.S. at 680-81. "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth' ". Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). The court must then consider the factual allegations in the complaint to determine if they plausibly suggest an entitlement to relief. Iqbal, 556 U.S. at 681; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

Thus, while the pleading standard under Fed. R. Civ. P. ("Rule") 8 does not require detailed factual allegations, it demands more than unadorned, conclusory accusations. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action is not sufficient. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility requirement is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Iqbal, 556 U.S. at 681.

**B. Exhaustion of Administrative Remedies**

 **\*3** The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), states in relevant part, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted". 42 U.S.C. § 1997e(a). This administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong". Porter v. Nussle, 534 U.S. 516, 532 (2002).

"Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case". Nussle, 534 U.S. at 524-25. The act's "dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court" (id. at 528), and clarify the contours of the controversy once it is litigated. Id. at 525. In Woodford v. Ngo, 548 U.S. 81, 83-84, 90, 126 (2006), the Court held that the exhaustion requirement of the PLRA cannot be satisfied by an "untimely or otherwise procedurally defective administrative grievance or appeal", and that the PLRA requires "proper exhaustion", which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)".

Although exhaustion under the PLRA is an affirmative defense, not a jurisdictional requirement, see Jones v. Bock, 549 U.S. 199, 211 (2007), a demonstrated failure to exhaust warrants dismissal of the plaintiff's claims. Jones, 549 U.S. at 216; see also Wilson v. Yussuff, 2015 WL 77433, \*5 (E.D.N.Y. 2015) (holding that

court must dismiss action where inmate did not exhaust administrative remedies).

However, the exhaustion requirement may be excused under the following circumstances: "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedure, justify the prisoner's failure to comply with the exhaustion requirement". Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006).

**C. Available Grievance Procedure**
DOCCS maintains a three-tiered administrative review and appeals system for prisoner grievances. See N.Y. Comp. Codes R. & Regs. § 701.5. Prior to pursuing a § 1983 action in federal court, a prisoner in the DOCCS system must exhaust all three levels. See Porter, 534 U.S. at 524. First, an inmate may file an inmate grievance complaint form or a written grievance (if forms are not available) with the Inmate Grievance Resolution Committee ("IGRC"). See 7 N.Y.C.R.R. § 701.5(a). Second, if the inmate is dissatisfied with the IGRC decision, he may appeal to the prison superintendent. Id., § 701.5(c). Finally, DOCCS permits an inmate to appeal the superintendent's written decision to the Central Office Review Committee ("CORC"). Id., § 701.5(d).

On May 15, 2014, DOCCS amended Directive 4040, relating to sexual abuse and sexual harassment complaints. As revised, Directive 4040 states:

> "The Department has zero tolerance for sexual abuse and sexual harassment. Consistent with this policy and the Prison Rape Elimination Act (PREA) Standards (28 C.F.R. § 115.52(a)), an inmate is not required to file a grievance concerning an alleged incident of sexual abuse or sexual harassment to satisfy the [PLRA] exhaustion requirement (42 U.S.C. § 1997e(a)) before bringing a lawsuit regarding an allegation of sexual abuse as long as the matter was reported as set forth below."

**\*4** See DOCCS Directive 4040, Plaintiff's Opposition to Motion to Dismiss, [27], Exhibit B, p.1.

Under the revised procedure, an allegation of sexual abuse shall be deemed exhausted for purposes of the PLRA "if official documentation confirms that:

> (1) An inmate who alleges being the victim of sexual abuse or sexual harassment reported the incident to facility staff; in writing to Central Office staff; to any outside agency that the Department has identified as having agreed to receive immediately forward inmate reports of sexual abuse and sexual harassment to agency officials under the PREA Standards (28 C.F.R. § 115.51(b)); or to the Department's Office of the Inspector General; or

> (2) A third-party reported that an inmate is the victim of sexual abuse and the alleged victim confirmed the allegation upon investigation."

Id.

**D. Plaintiff's Efforts to Exhaust as to Defendants Dunford, Hoinski and Nabb**
The defendants' motion to dismiss is based entirely on the argument that plaintiff failed to exhaust his administrative remedies by filing grievances relating to the three "credit card check" incidents set forth in the complaint. Defendants' Motion to Dismiss [22]. As noted above, plaintiff's original complaint states that he did not utilize the three-tiered administrative grievance procedure to complain about the September 10, 2013, October 22, 2013 and May 16, 2014 incidents. Complaint [1], pp. 5, 19. Instead, plaintiff argued that he was not required to utilize the grievance procedure because of Directive 4028A. Id. In response to the motion to dismiss, plaintiff also points to the revised language of Directive 4040 as eliminating the need to follow the inmate grievance procedure. Plaintiff's Opposition to Motion to Dismiss [27], p. 5.

Directive 4028A addresses sexual abuse prevention and intervention (staff on inmate). The argument that Directive 4028A eliminated the need to utilize the inmate grievance procedure was asserted, but rejected, in Omaro v. Annucci, 68 F. Supp.3d. 359 (W.D.N.Y. 2014).[4] In that case, Omaro's claim that he was sexually assaulted in connection with the pat-frisk procedure was remarkably

similar to the claims asserted in this case. Id. at p. 361. In response to the defendant's motion that plaintiff failed to exhaust his administrative remedies, Omaro argued that pursuant to PREA and Directive 4028A, he was not required to utilize the grievance procedure with respect to his sexual assault claim. Id. at 364-65. The court held that nothing in the text or legislative history of PREA suggested that it was intended to abrogate the PLRA's exhaustion requirement. Id. at 364 citing Porter v. Howard, 531 Fed. Appx. 792, 793 (9th Cir. 2013) (plaintiff provides no support for his contention that he was excused from the requirement that he file an administrative grievance by operation of PREA).

Similarly, the court in Omaro determined that nothing in the text of Directive 4028A suggested that it was intended to limit or abrogate the administrative remedies available to an inmate who alleged sexual misconduct by a staff member. Omaro, 68 F. Supp. 3d at 365. The court found that Directive 4028A addressed the manner in which a complaint of staff-on-inmate sexual misconduct may be initiated and obligations of the staff following such a complaint, but did not establish or address an inmate's administrative remedies once such a complaint has been made. Id. at p. 366.[5] Thus, the court held that the plaintiff's unexhausted claims were precluded by the PLRA. Id. at p. 368.

**\*5** Unlike Omaro, however, this case involves the application of the revised language in Directive 4040, and to that extent, appears to be a case of first impression. Omaro did not discuss the revised language of Directive 4040, which was raised for the first time in this case by the plaintiff in response to the defendants' motion to dismiss. Plaintiff's Opposition to Motion to Dismiss [27], Exhibit B. Neither party has presented authority interpreting the revised language of Directive 4040. In their reply, defendants do not dispute that Directive 4040, as revised, alleviates an inmate's need to exhaust the normal grievance procedure with respect to sexual assault and sexual harassment claims. Instead, the defendants argue that the revised language of Directive 4040 does not apply here because the plaintiff's allegations are insufficient to constitute a sexual assault under PREA. Defendants Reply in support of Motion to Dismiss [28], pp. 3-4. Defendants construe plaintiff's claims as merely challenging the "pat-frisk" procedure, and argue that such a claim would have to be pursued in the inmate grievance

process through exhaustion to satisfy the PLRA. Id. at pp. 5-6.

Plaintiff's claims relating to the "credit card check" procedure as set forth in the complaint, however, are presented as sexual assault claims. For example, plaintiff alleges that "Defendant Dunford's sexual abuse cause[d] me pain, suffering and mental distress". Complaint [1], p. 11, ¶ 2. He claims that he complained to defendant Annucci and others regarding the "sexual misconduct of staff-on-inmate sexual abuse". Id. at p. 12, ¶6. Plaintiff characterizes the defendants' conduct as constituting sexual assault or sexual abuse throughout his complaint. Id. at p. 13, ¶¶10, 13, 14, 15; p. 14, ¶¶ 16, 17, 18, 19, 21; p. 15, ¶¶ 22, 23, 24, 26, 27; p. 16, ¶¶ 29, 30, 31; p. 18, ¶¶ 43, 44, 45, 46. The conduct being challenged involves corrections staff contacting plaintiff's genitals, which, depending upon the manner in which performed, could arguably fall within the scope of conduct that can be construed as "sexual" in nature.

Whether these allegations by plaintiff are sufficient to establish a "sexual assault" or "sexual harassment" under PREA (or the Fourth and Eighth Amendments) is not currently before me. The defendants' motion to dismiss raised solely the issue of whether plaintiff had exhausted the inmate grievance procedure. Defendants' Motion to Dismiss [22]. The defendants did not put plaintiff on notice that their argument in support of dismissal was based upon the fact that plaintiff's allegations were insufficient to constitute sexual conduct under PREA. In any event, while I take no position as to whether the plaintiff's allegations allege sexual conduct sufficient to state a claim under the Fourth or Eighth Amendments,[6] inasmuch as they are presented as "sexual assault" claims, the revised language of Directive 4040 applies.[7] An inmate would be placed in an untenable position if he were required to adjudicate whether his allegations of sexual assault were sufficient under PREA prior to relying upon the language in Directive 4040 alleviating the need to utilize the normal grievance procedure.[8] Here, plaintiff presented his claims as sexual assault claims. Although the sufficiency of those claims is uncertain, the language in Directive 4040 clearly states that an inmate need not utilize the grievance procedure to exhaust such claims prior to bringing a federal court action for redress.

**\*6** Directive 4040 was revised with respect to sexual assault claims on May 15, 2014. Plaintiff's Opposition to Motion to Dismiss [27], Exhibit B. Although the defendants note that the amendment has not been incorporated into the New York Code, Rules and Regulations (*see* 7 N.Y.C.R.R. 701, *et seq.*), they do not argue that the revision is not in effect. Indeed, defendants acknowledge that if the revised language of Directive 4040 applies, plaintiff's claim against defendant Nabb involving the May 16, 2014 incident has been exhausted. Defendants' Reply in Support of Motion to Dismiss [28], p. 6. Because plaintiff reported the May 16, 2014 incident involving defendant Nabb to the facility staff in a letter dated May 19, 2014 (Complaint [1], Exhibit P), this claim is deemed exhausted pursuant to Directive 4040.

Because the September 10, 2013 and October 22, 2013 incidents preceded the revision of Directive 4040, plaintiff was required to exhaust the typical inmate grievance process with respect to those incidents.[9] Plaintiff makes no attempt to argue that he exhausted the inmate grievance process with respect to his September 10, 2013 claim. That claim against defendant Dunford should be dismissed with prejudice.[10] In his motion to amend the complaint [31], plaintiff asserts that he did, in fact, exhaust the inmate grievance process with respect to his claim relating to the October 22, 2013 involving defendant Hoinski. As discussed below, the plaintiff will be allowed to amend the complaint to assert the exhaustion of that claim.

**E. Failure to Exhaust as to Defendants Annucci, Fonda, Bradt and Hughes**

Defendants also seek to dismiss the claims against defendants Annucci, Fonda, Bradt and Hughes because plaintiff has not exhausted administrative remedies by naming those defendants in any grievance relating to the "credit card check" incidents. Defendants' Reply in Support of Motion to Dismiss [28], p.8-10. These claims survived the initial screening only to the extent that they alleged that the defendants "were made aware of the sexually assaultive pat-frisks but failed to remedy them or take any corrective action". November 17, 2014 Decision & Order [7], pp. 10, 22.[11]

**\*7** The plaintiff does not argue that he has exhausted his claims against defendants Annucci, Fonda, Bradt or Hughes by naming them in any grievance. In response to the motion to dismiss, plaintiff asserts generally that, because the revisions to Directive 4040 stated that a "sexual abuse or sexual harassment complaint may be submitted at any time", he can cure any failure to exhaust by now filing a complaint under Directive 4040. Plaintiff's Opposition to Motion to Dismiss [27], p. 11. Initially, it is not clear that the revised procedure set forth in Directive 4040, which eliminates the need to follow the typical inmate grievance procedure with respect to sexual assault and sexual harassment claims, applies to claims against supervisory officials for failing to remedy or take corrective action regarding such a claim.

In any event, as noted above, plaintiff has not cited, and I have not found, any authority supporting the retroactive application of a revised DOCCS directive. Instead, although not discussed in depth, the courts in Smith and Goodson expressly applied the version of Directive 4040 which was in effect at the time of the incidents in question in those cases.

As a general rule, a new statutory provision does not apply retroactively to conduct that occurred prior to the provision's enactment. As the Supreme Court has noted, "the presumption against retroactive legislation is deeply rooted in our jurisprudence" Landgraf v. USI Film Products, 511 U.S. 244, 265, (1994). For example, the revision of § 1997e(a) which instituted the mandatory exhaustion requirement of the PLRA, was not applied retroactively. Shariff v. Coombe, 2002 WL 1392164, \*3 (S.D.N.Y. 2002).

This is not a case where the revision of Directive 4040 merely clarified ambiguous language of the prior regulation. See Leshinsky v. Telvent GIT, S.A., 873 F. Supp.2d 582 (S.D.N.Y. 2012). Instead, the revision of Directive 4040 sets forth a new procedure relating to the reporting and processing of sexual abuse and sexual harassment claims. The new procedure bypasses the previously required inmate grievance procedure altogether and institutes an expedited process for the lodging and investigation of a sexual abuse or sexual harassment claim. The revised language does not expressly or indirectly suggest that it is to be applied in a retroactive manner to incidents predating the revision. The parties have submitted no authority suggesting that DOCCS intended the revision to apply retroactively to conduct occurring years earlier.

Since the record does not reflect any intention that the revision of Directive 4040 be applied retroactively, I find that it does not apply to incidents predating the date of the revision. With respect to the post-revision "credit card check" incident of May 16, 2014, the plaintiff's letters dated May 19, 2014 and May 20, 2014 (Complaint [1], Exhibits P and Q) relating to this incident do not name or discuss the conduct of defendants Annucci, Fonda, Bradt or Hughes. Thus, even if the procedure set forth in Directive 4040, as revised, applied to claims against supervisory officials, it was not utilized by plaintiff to complain of conduct by these defendants.

Because plaintiff has failed to exhaust his administrative remedies with respect to defendants Annucci, Fonda, Bradt and Hughes, the claims against these defendants should be dismissed with prejudice.

### F. Motion to Amend Complaint

Plaintiff moves to amend his complaint, principally to modify the assertion in his original complaint that he did not exhaust his administrative remedies. Plaintiff's Motion to Amend [31], p. 3. He states that because he had been transferred between facilities and or prison cells several times since the underlying incidents, he misplaced or lost various legal documents. Id. at p. 4. Further, he asserts that because he was reprocessed at one point and provided with a new inmate number, some of the documentation related to these claims was filed under a previous inmate number. Id. Thus, plaintiff seeks to amend the complaint to assert that he has administratively exhausted the grievance process with respect to the October 22, 2013 incident and his claim against Hoinski. Id. at pp. 3-4. Attached as exhibits to plaintiff's motion are documents supporting plaintiff's utilization of the inmate grievance process with respect to the October 22, 2013 incident. Id., Exhibits A-D.

 **\*8** Plaintiff's proposed amended complaint is substantively identical to his original complaint except that he has modified his allegations regarding the exhaustion of administrative remedies and has removed some of the allegations and claims previously dismissed by Judge Arcara.[12]

Rule 15(a) provides that leave to amend should be "freely given when justice so requires". New York State National Organization for Women v. Cuomo, 182 F.R.D. 30, 36

(S.D.N.Y. 1998); *see also* Forbes & Wallace, Inc. v. Chase Manhattan Bank, 79 F.R.D. 563, 565 (S.D.N.Y. 1978). It has long been "well-established that 'outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.' " Harrison v. Enventure Capital Group, Inc., 666 F. Supp. 473, 479 (W.D.N.Y. 1987). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead". Stern v. General Electric Co., 924 F.2d 472, 477 (2d Cir. 1991). Leave to amend a pleading need not be granted, however, if it would be futile to do so. See O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 69 (2d Cir. 2002).

Defendants oppose the motion to amend on several grounds. Defendants' Opposition to Motion to Amend [34]. First, defendants argue that plaintiff's motion should be denied because he failed to attach a proposed amended complaint to the motion papers. Defendant's Opposition to Motion to Amend [34] p., 2. "A movant's failure to submit a proposed amended complaint constitutes sufficient grounds to deny a motion to amend". Murray v. New York, 604 F.Supp.2d 581, 588 (W.D.N.Y. 2009) (citing LaBarbara v. Ferran Enterprises Inc., 2009 WL 367611, \*3 (E.D.N.Y. 2009) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the court and the opposing party can understand the exact changes sought.")). Where, however, "the movant's papers adequately explain the basis for, and nature of, the proposed amendment, ... the failure to attach a proposed amended complaint to the motion is not necessarily fatal". Murray, 604 F.Supp.2d at 588.

The determination whether to deny a motion to amend based upon such a failure the subject to the discretion of the court. Id. Here, plaintiff's motion papers sufficiently articulated the basis for his motion to amend such that the defendants were able to respond to the substance of the proposed changes. Moreover, plaintiff attached a proposed amended complaint to his Memorandum of Law in reply to defendant's opposition. *See* Proposed Amended Complaint attached to Plaintiff's Reply in Support of Motion to Amend [37-1]. Under these circumstances, plaintiff's failure to attach a proposed amended complaint to his initial motion papers is not fatal to the motion.

**\*9** Defendants also argue that plaintiff's motion to amend the complaint should be denied based upon "futility, bad-faith, undue delay or undue prejudice to the opposing party". Defendants' Opposition to Motion to Amend [34], p. 3. [13] Defendants state that they made the motion to dismiss based upon plaintiff's affirmative statements in the complaint that he had not exhausted the inmate grievance process with respect to his claims. Defendants claim that they would not have filed a motion to dismiss "[h]ad plaintiff not made these affirmative statements in his complaint" and that allowing plaintiff to amend the complaint would prejudice the defendants because they would be required to bring another motion to dismiss. Id. Defendants allege that the "striking reversal" as to exhaustion by the plaintiff "suggests the possibility of bad-faith". Id.

The prejudice alleged by the defendants is insufficient to warrant denial of plaintiff's motion to amend the complaint. Initially, it should be noted that defendants had access to plaintiff's inmate grievance records, and could have checked those records prior to filing any motions regarding exhaustion in this case. The plaintiff has asserted that he had lost or misplaced much of the documentation relating to his claims due to a series of transfers between correctional facilities or jail cells. Defendants have not rebutted this contention, which plaintiff offers as his explanation as to why his original complaint contained an "erroneous statement" regarding exhaustion. Plaintiff's Motion to Amend [31], p. 3-4. Defendants have not articulated a sufficient basis to conclude that the plaintiff's allegations in the original complaint were made in bad faith. Finally, defendants' claim of prejudice is undermined by the fact that this motion to dismiss will result in my recommendation that several of plaintiff's claims be dismissed.

Defendants also argue that plaintiff's motion to amend should not be granted because plaintiff has not alleged that he has received a final decision from the Central Office Review Committee ("CORC") with respect to his grievance relating to the October 22, 2013 incident. Defendants Opposition to Motion to Amend [34], p. 4-5. This argument is also unpersuasive. Plaintiff has submitted documentation from the Director of the Inmate Grievance Program, dated January 24, 2014, stating that his grievance was still pending before CORC. Plaintiff's Motion to Amend [31], Exhibit D. This correspondence was in response to plaintiff's January 20, 2014 letter noting

that his grievance had already been pending before CORC for more than 60 days without a decision. Id., Exhibit C.

It appears by this documentation, the validity of which has not been challenged by the defendant, that plaintiff has been waiting for more than *two years* for a decision from CORC with respect to this grievance. Defendants cannot rely upon CORC's refusal to render a decision with respect to plaintiff's grievance for two years as support for an argument that plaintiff has failed to exhaust his administrative remedy because he has not been provided with a final decision. As discussed in Rossi v. Fishcer, 2015 WL 769551, \*4-5 (S.D.N.Y. 2015):

"A number of federal circuit courts have held that a failure to respond to a grievance within the time limit prescribed by the prison grievance process renders an administrative remedy unavailable for purposes of exhaustion.... While the Second Circuit has not directly addressed this issue, it has treated [cases holding that such a failure renders the administrative remedy unavailable] favorably. See [Hemphill v. New York],380 F.3d 680, 686 n. 6 (2004) (noting that when an inmate does not receive a response to a grievance there may be a question as to whether administrative remedies are available); Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004) (citing favorably to [Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998)] and [Foulk v. Carrier, 262 F.3d 687, 698 (8th Cir. 2001] with regard to availability of administrative remedies)). The Second Circuit in [Abney v. McGinnis, 380 F.3d 663, 668 (2nd Cir. 2004)] cited to Hemphill for the proposition that 'exhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance'. 380 F.3d at 667."

**\*10** See also Peoples v. Fischer, 2012 WL 1575302, \*6 (S.D.N.Y. 2012) on reconsideration in part, 898 F.Supp.2d 618 (S.D.N.Y. 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination"); Dimick v. Baruffo, 2003 WL 660826, \*4 (S.D.N.Y. 2003) (holding that plaintiff's claims were properly exhausted where CORC rendered an untimely decision and plaintiff filed his complaint almost two months after CORC had been required to respond pursuant to the prison grievance procedures). [14]

Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance relating to the October 22, 2013 incident, such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA. Plaintiff's motion to amend the complaint is granted to the extent plaintiff seeks to assert allegations that he exhausted his administrative remedies with respect to the October 22, 2013 incident involving defendant Hoinski. Plaintiff's motion to amend is denied to the extent the amended complaint seeks to reassert claims against Dale Artus (or any other defendants) which were previously dismissed by Judge Arcara.

In light of the age of this case, and to expedite further proceedings in this matter, I direct that the Clerk of the Court separately file the Proposed Amended Complaint [37-1] as the Amended Complaint in this matter. The Amended Complaint does not add any new claims or parties. All of the defendants in this case are represented by counsel. By virtue of its attachment to the plaintiff's motion papers, and by the filing directed above, the defendants will have received a copy of the Amended Complaint. The defendants shall answer, or otherwise respond, to the Amended Complaint within 30 days of the date it is filed by the Clerk of the Court as directed above.

### G. Motion for Appointment of Counsel

 **\*11** Plaintiff also moves for the appointment of counsel [32]. There is no constitutional right to appointed counsel in civil cases. However, under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.,* 865 F.2d 22, 23 (2d Cir. 1988). Assignment of counsel in this matter is clearly within the judge's discretion. In re Martin-Trigona, 737 F.2d 1254 (2d Cir. 1984).

The factors to be considered in deciding whether or not to assign counsel include the following: (1) whether the indigent's claims seem likely to be of substance; (2) whether the indigent is able to investigate the crucial facts concerning his claim; (3) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (4) whether the legal issues involved are complex; and (5) whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination. Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997).

In considering a motion for the appointment of counsel, the court may also consider the merits of the plaintiff's claim. The Second Circuit has held that "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989). Therefore, the court must first look to the "likelihood of merit" of the underlying dispute, Cooper, 877 F.2d at 174, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the ... claim are thin and his chances of prevailing are therefore poor." Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit). See also Smolen v. Corcoran, 2013 WL 4054596 (W.D.N.Y.,2013) (In deciding whether to grant a request to appoint pro bono counsel, district courts should evaluate several factors, including the merits of the claim, the factual issues and complexity of the case, plaintiff's ability to present the case, and the plaintiff's inability to obtain counsel.).

I have reviewed the facts presented herein in light of the factors required by law as discussed above. At this time, it does not appear the legal issues presented are unduly complex. Plaintiff's filings in this case reflect that he understands the issues presented and can adequately articulate his factual and legal arguments. Plaintiff's motion for appointment of counsel is denied at this time without prejudice, subject to renewal at a later date. It is plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se.* 28 U.S.C. § 1654.

### CONCLUSION

For these reasons, I recommend that defendant's motion to dismiss [22] be granted in part and denied in part as follows: the motion should be granted as to plaintiff's claim against defendant Dunford relating to the September 10, 2013 incident, and plaintiff's supervisory claims against defendants Annucci, Fonda, Bradt and Hughes, but denied as to plaintiff's claims against defendants Nabb and Hoinski. Also, plaintiff's motion [31] to amend the complaint is granted in part and denied in part such that plaintiff may amend the complaint to assert that he has exhausted administrative remedies

with respect to the October 22, 2013 incident involving defendant Hoinski, but may not reassert previously dismissed claims and is otherwise denied. Plaintiff's motion for appointment of counsel [32] is denied.

**\*12** Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by March 31, 2016 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely ... waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch

Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection ... supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3039687

Footnotes

1    Bracketed references are to the CM/ECF docket entries.

2    The allegations in the plaintiff's original complaint attribute this conduct to "John Doe Number 1". Id. at 13. John Doe Number 1 was later identified as Officer Hoinski. See Decision & Order of Hon. Elizabeth A. Wolford dated December 29, 2014 [11].

3    Plaintiff's original complaint asserted various other claims against numerous defendants which did not survive the initial screening in this case. Plaintiff's claims that defendants failed to comply with the requirements of the Prison Rape Elimination Act of 2003 ("PREA") were dismissed because PREA does not create a private right of action. Decision and Order of Hon. Richard J. Arcara filed November 17, 2014 ("November 17, 2014 Decision & Order") [7], p. 7. Also, plaintiff's claims based upon a failure to investigate, failure to intercede, harassment, retaliation, and failure to provide medical treatment against defendants Superintendent Dale Artus, Capt. Brown Lieut.Kaczmarek, Sgt.Olles, Sgt. Brown, Sgt.Diehl, Officer Higgins, Officer Andrews, Officer Sippel, and Nurse Kekich were all dismissed. Id. at pp. 11-19.

4    The plaintiff in Omaro was a Attica inmate Derrick R. Omaro, 92A0608. Omaro, 68 F. Supp. 3d. at 359. Henderson, identifies inmate Omaro as one of his witnesses in this case. Complaint [1], p. 19.

5    Plaintiff argues that because claims of sexual abuse are sensitive and should be dealt with confidentially, he should be excused from the exhaustion requirement. Plaintiff's Memorandum of Law [27], pp. 4-6. He provides no authority in support of this proposition. While the interests of confidentiality may have motivated the revision of Directive 4040, as discussed in Omaro, prior to the May 15, 2014 revision the plaintiff was required to utilize the inmate grievance process. Omaro, 68 F. Supp. 3d. at p. 367.

6    With respect to the plaintiff's pat-frisk claims, Judge Arcara dismissed the claims to the extent that they were asserted under PREA, but allowed them to proceed as asserted under the Fourth and Eighth Amendments. November 17, 2014 Decision & Order [7], p. 7. The defendants are free to file a motion to dismiss or for summary judgment challenging the sufficiency of the plaintiff's allegations with respect to any surviving Fourth and Eighth Amendment claims.

7    Although the revised language in Directive 4040 refers to PREA, assuming notice was provided as set forth in the directive, Directive 4040 states that "an inmate is not required to file a grievance concerning an alleged incident of sexual abuse or sexual harassment to satisfy [the PLRA] exhaustion requirement ... before bringing a lawsuit regarding an allegation of sexual abuse". Plaintiff's Opposition to Motion to Dismiss [27], Exhibit B. Thus, this language applies to sexual assault claims brought by an inmate under the Fourth and Eighth Amendments.

2016 WL 3039687

**8**     It is likely that by the time there was a resolution, either administrative or judicial, as to whether the plaintiff's claims qualify as a "sexual assault" under PREA, an inmate's time to commence the typical grievance process would have passed.

**9**     The plaintiff argues that the revision of Directive 4040 eliminated the deadline for reporting sexual abuse, and therefore, he can cure the failure to exhaust his claims by reporting the incidents now under the terms of the directive. Plaintiff's Opposition to Motion to Dismiss [27], p.11. As discussed more fully below, plaintiff has presented no authority suggesting that the revisions in Directive 4040 apply retroactively to incidents prior to the effective date. To the contrary, the case law suggests that Directive 4040 is applied as it was in effect at the time of the incident at issue. See Smith v. Kelly, 985 F. Supp. 2d 275, 285 (N.D.N.Y. 2013) (referring to the version of Directive 4040 that was in effect at the time in question); Goodson v. Silver, 2012 WL 4449937, *8 (N.D.N.Y. 2012) (court decision based upon the version of DOCCS' Directive 4040 in effect during the time in question).

**10**    Plaintiff asserts, generally, that his failure to exhaust any of his claims can be cured. Plaintiff's Reply in Support of Motion to Amend [37], p. 9. However, plaintiff's time to file a grievance relating to the September 10, 2013 incident has long passed. Although plaintiff cites to Bridgeforth v. Barlett, 686 F. Supp.2d 238 (W.D.N.Y. 2010) in support of his right to cure, that case actually supports the dismissal of plaintiff's claim with prejudice. Bridgeforth, 686 F. Supp.2d, at 240 ("Since the time limits for plaintiff to file an administrative appeal have long since passed, administrative remedies are no longer available to him, as a result of his own inaction. This case, then, is precisely the kind of case that the PLRA was intended to foreclose. It is therefore dismissed with prejudice").

**11**    Judge Arcara cited Colon v. Coughlin, 58 F.3d 865, 873 (2nd Cir. 1995) for the proposition that a prison official who is made aware of a violation but fails to remedy the wrong may be determined to be "personally involved" and subject to § 1983 liability. However, he noted that "[r]eceiving *post hoc* notice does not constitute personal involvement in the unconstitutional activity and cannot be said to have proximately caused the damage suffered by the inmate. Therefore, a supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it. Similarly, liability may attach when a supervisor fails to act on reports of a staff member's previous assaults on the plaintiff and the plaintiff is assaulted again by that same staff member". November 17, 2014 Decision & Order [7], p.10 *citing* Rahman v. Fisher, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009). Given the preliminary stage of the litigation, Judge Arcara allowed these claims to proceed to service. Id. at p. 11. The plaintiff's exhaustion of these claims was not addressed in that decision.

**12**    Plaintiff's proposed amended complaint is type-written, as opposed to the original hand written complaint. Proposed Amended Complaint [37-1]. Under the heading "Defendant's Information", plaintiff did not include information relating to the previously dismissed defendants with the exception of Dale Artus., Id., p.2. The proposed amended complaint eliminated ¶5 of the original complaint, making the paragraph numbers of the proposed amended complaint one off from those in the original complaint. Paragraph numbers between the two documents re-synchronized at ¶42 after plaintiff split the substance of the original ¶40 into two paragraphs (¶¶40-41) of the proposed amended complaint. Plaintiff's amended complaint identified the "John Doe" defendant as Hoinski (¶¶ 10-14, 20, 24, 29, 30, 35-36). Plaintiff's amended complaint also occasionally included expanded or enhanced allegations without changing the substance of his claims (see i.e. ¶ 30).

**13**    Although defendants mention "futility" in their opposition, they do not assert the insufficiency of the plaintiff's allegations of sexual assault as a basis to deny the proposed amended complaint. Defendants' Opposition to Motion to Amend [34].

**14**    *But see* Bennett v. Wesley, 2013 WL 1798001, *6 (S.D.N.Y. 2013) ("[T]he Court of Appeals has not adopted the position that a delay in responding to a grievance demonstrates *per se* unavailability.") (*quoting* Mateo v. O'Connor., 2012 WL 1075830, *7 (S.D.N.Y. 2012)); Rivera v. Anna M. Kross Ctr., 2012 WL 383941, *4–5 (S.D.N.Y. 2012) (asserting that the Second Circuit has declined to hold that administrative remedies are deemed unavailable when a plaintiff receives no response from prison authorities within the prescribed time limits.) Also, some courts have questioned whether the equitable exclusions from exhaustion set forth in Hemphill remain viable after the Supreme Court's decision in Woodford. The Second Circuit has declined to address this question. See Amador et al. v. Andrews et al., 655 F.3d 89, 102-03 (2nd Cir. 2011). In Woodford, plaintiff's grievance was administratively rejected because it was filed beyond the 15-day limitations period. The district court granted summary judgement on the grounds that plaintiff failed to exhaust his administrative remedies. The Ninth Circuit reversed finding that plaintiff had exhausted his remedies because no such remedies remained available to him. The Supreme Court vacated that decision, holding that "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings". Woodford, 548 U.S. at 90-91. Here, unlike Woodford, the failure to achieve complete exhaustion is due to the inaction by the prison grievance officials, not because of any failure on the part of plaintiff. In any event, I do not believe that Woodford stands for the proposition

2016 WL 3039687

that CORC can frustrate or unduly delay an inmate's ability to bring a federal claim to address an alleged constitutional violation by refusing to issue a final decision for several years so as to preclude exhaustion under the PLRA.

---

**End of Document**                                        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3736794
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Javon HIGH, Plaintiff,
v.
P.A. SWITZ, Defendant.

Civ. No. 9:17-CV-1067 (LEK/DJS)
|
Signed 07/09/2018

**Attorneys and Law Firms**

JAVON HIGH, 16-R-2525, Queensboro Correctional Facility, 47-04 Van Dam Street, Long Island City, NY 11101, pro se.

HON. BARBARA D. UNDERWOOD, Attorney General of the State of New York, OF COUNSEL: ERIK BOULE PINSONNAULT, ESQ., The Capitol, Albany, NY 12224, Attorney for Defendant.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** On September 25, 2017, *pro se* Plaintiff Javon High commenced this action pursuant to 42 U.S.C. § 1983, asserting claims arising from his confinement at both Wyoming Correctional Facility and Ulster Correctional Facility, while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl. In his Complaint, Plaintiff alleges that he suffers from chronic, severe pain, for which he was prescribed certain medications. Compl. at p. 3.[1] Plaintiff alleges that while at Ulster, he was seen by P.A. Switz, who told Plaintiff that he would not be getting the physical therapy or prescribed medications at Ulster, and that he could attempt to when he got to his designated facility, which would not be for a month or two. *Id.* at pp. 4-5. Plaintiff then went thirty-five days with severe pain. *Id.* at p. 6. Plaintiff alleges continuing issues related to his pain and treatment after he was transferred to Wyoming.[2] *Id.* at pp. 6-19. Remaining in this District are Plaintiff's claims arising out of his confinement at Ulster, which are only those against Defendant Genevieve Switz.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint on the basis that Plaintiff failed to exhaust his administrative remedies before filing this action. Dkt. No. 13, Def.'s Mot. to Dismiss. Plaintiff has opposed the Motion. Dkt. No. 17, Pl.'s Opp. Defendant has filed a reply. Dkt. No. 18, Def.'s Reply. Plaintiff has filed an additional submission in opposition.

Dkt. No. 19, Pl.'s Supp. Opp.[3]

The Court finds that Plaintiff failed to exhaust his administrative remedies, but that Plaintiff has demonstrated that the lack of exhaustion should be excused. The Court therefore recommends that Defendant's Motion be **denied**.

**I. LEGAL STANDARD**

**\*2** On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984) ).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, n.6 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged, or that the defendants have violated ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted) (citation omitted). Nonetheless, a *pro se* complaint must state a "plausible claim for relief." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c) ).

## II. EXHAUSTION

### A. Exhaustion Procedure

*3 The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116,

121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

**B. Plaintiff's Failure to Exhaust Administrative Remedies**

In this case, Plaintiff admits that the grievance procedure was not complete when he filed the Complaint because he had not received a response from CORC. Compl. at pp. 20-21. Plaintiff filed his initial grievance on January 20, 2017. Id. at p. 20. He received a response from IGRC on January 24, 2017, and forwarded his appeal to the Superintendent. *Id.* The Superintendent then issued a response on January 31, 2017. *Id.* On February 6, 2017, Plaintiff filed his appeal to CORC. *Id.* Per the regulations, CORC had thirty days to respond to the appeal. *Id.* On August 25, 2017, after not hearing from CORC, Plaintiff sent CORC a letter asserting that CORC had exceeded the timeline and that he had therefore exhausted his administrative remedies, and would be filing a claim in Court. *Id.* at pp. 20-21. When Plaintiff prepared his Complaint, on September 12, 2017, he had still not received any response from CORC. *Id.* Only after filing the Complaint did Plaintiff receive a final response from CORC. Pl.'s Supp. Opp. at p. 3 & Def.'s Reply at pp. 1-2 (indicating response from CORC was received in February 2018).

It is clear from the face of Plaintiff's Complaint that he did not exhaust his administrative remedies. The fact that his CORC appeal was decided after the filing of his Complaint is insufficient to cure Plaintiff's failure to exhaust; filing an Amended Complaint at this time would also not correct this fundamental deficiency. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 3661434, at *13 ("It is well established that [r]eceiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice.") (internal quotation marks omitted) (citations omitted).

**\*4** The Court will discuss below whether Plaintiff's contentions may state a valid excuse for his failure to exhaust his administrative remedies.

**C. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused**

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court recently stated, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

In his Complaint and opposition papers, Plaintiff's main contention is that administrative remedies were unavailable to him because he did not receive a response from CORC for over seven months, and that there are no instructions on how to proceed with a grievance if no response is received from CORC. Pl.'s Opp. at p. 9 ("DOCCS policy has no re[c]ourse, does not inform nor direct what the next step would be if CORC does not render a decision. Leaving inmates to bel[ie]ve that if they receive no decision after the (30) thirty day period allowed in th[eir] own policy then they have exhausted remedies. Fac[t]ually and evident[i]ally, DOCCS simply does not state what we are to do after the thirty day timeline has expired. Certainly they cannot just leave the door open...."); *see also* Compl. at pp. 20-21; Pl.'s Supp. Opp. Defendant contends that an inmate must receive a response from CORC before filing a suit, and that a delay in receipt of a CORC decision beyond the thirty days proscribed by statute does not excuse an inmate's failure to exhaust his administrative remedies. Def.'s Reply.

Courts within the Second Circuit are split regarding whether a failure to respond by CORC constitutes unavailability excusing a plaintiff's failure to exhaust. *Compare Ford v. Smith*, 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (finding plaintiff's failure to exhaust was not excused where CORC failed to issue a determination for six months) *and Lewis v. Hanson*, 2017 WL 4326084,

at *3 (N.D.N.Y. Sept. 28, 2017) *with Rossi v. Fishcer*, 2015 WL 769551 (S.D.N.Y. Feb. 24, 2015) (collecting cases deeming administrative remedies unavailable when officials failed to timely respond to a grievance), *Peoples v. Fisher*, 2012 WL 1575302, at *6 (S.D.N.Y. May 3, 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in Federal Court simply because the final administrative decision maker has ... neglected ... to issue a final administrative determination."), *and Rodriguez v. Reppert*, 2016 WL 6993383 (W.D.N.Y. Nov. 30, 2016).

**\*5** Here, Plaintiff filed his grievance with the IGRC; upon receiving an unfavorable determination, he appealed it to the Superintendent, and then appealed the Superintendent's determination to CORC. Compl. at pp. 20-21. The final step of the grievance procedure provides that CORC shall review the appeal and render a determination within 30 days from the time the appeal was received. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(d)(2). At the preliminary stages of the procedure, the regulations provide an avenue for a grievant to further pursue a grievance that is not timely decided: "Absent [an] extension [on a time limit], matters not decided within the time limits may be appealed to the next step." *Id.* at § 701.6(g). However, the third and final step in the grievance procedure is "appeal to the central office review committee." *Id.* at § 701.5(d). At this level, there is no instruction on what a grievant is to do if he or she has appealed to the CORC, the final step, and has not received a response. *Id.* at § 701.6(g)(1)(b)(ii). As such, these regulations "do not describe a mechanism" for appealing or advancing a grievance when a grievant does not receive a response from CORC, as there is no next step to which a grievant may appeal. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016).

In the case of *Williams v. Corr. Officer Priatno*, the plaintiff had submitted a grievance but never received a response; he then filed a lawsuit without taking any further formal action regarding his grievance, believing it had never actually been filed by the special housing unit correction officer. 829 F.3d at 120-21. The Second Circuit found the grievance procedure was unavailable under *Ross*, meaning that the "administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 123. The Court found that, even though the plaintiff could have "technically" appealed his grievance, "[t]he regulations simply do not contemplate the situation in which [the plaintiff] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Id.* at 124. As such, the Second Circuit found that, under *Ross*, "the grievance procedures that were technically available to [plaintiff] are so opaque and confusing that they were, 'practically speaking, incapable of use.' " *Id.* at 126 (quoting *Ross v. Blake*, 136 S. Ct. at 1859).

Similarly, here, while the regulations at the preliminary stages contemplate a next step for a grievant to take in the event he does not receive a response, there is no direction on any action a grievant may take if he does not receive a response from CORC. Indeed, "the regulations give no guidance whatsoever" regarding what a grievant should do in this circumstance. *Id.*

Defendant cites to *Gizewski* for the proposition that even if a grievant does not receive a response to a grievance from CORC, the failure to exhaust is not excusable. In *Gizewski*, however, there was an administrative error in filing the grievant's appeal with CORC and Plaintiff never received a receipt from filing with CORC; the regulations explicitly provide a mechanism for confirming that an appeal has been properly filed if a grievant does not receive a receipt. As such, there was specific direction in the procedures for the grievant to follow. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 3661434, (N.D.N.Y July 5, 2016). As the Court there summarized:

> Although the Court is sympathetic to the fact that it was the inmate grievance office that failed to transmit Plaintiff's appeal to CORC until five months after he had filed it, Plaintiff is also at fault for not taking any further action during this time period. More specifically, 7 N.Y.C.R.R. § 701.5(d)(3)(i) states that "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."

*Id.* at *13.

The Second Circuit Court of Appeals affirmed Chief Judge Suddaby's dismissal of Gizewski's Complaint. *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 692 Fed. Appx. 668 (2d Cir. 2017). In doing

so, however, the Circuit noted that, "even if we assume arguendo that the long delay occasioned in part by clerical error constituted constructive denial," there was no genuine issue of material fact because the issues raised on that final administrative appeal to CORC pertained to requests for items that had already been provided to the plaintiff as part of a reasonable accommodation. *Id.* at 670. Therefore, the Second Circuit did not and has not decided the precise issue raised on this Motion—a claim of failure to exhaust where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present Motion to Dismiss had been filed. In the Court's view, and under the hopefully unique facts of this case, Plaintiff's failure to exhaust aligns more with *Williams* than with *Gizewski*. "[A]fter the CORC neglected to decide [the appeal], administrative remedies were no longer available" to Plaintiff. *Rodriguez v. Reppert*, 2016 WL 6993383, at *1.

**\*6** Accordingly, for the foregoing reasons, the Court recommends that Defendant's Motion be **denied** based upon a finding that Plaintiff's failure to exhaust is excused.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion to Dismiss (Dkt. No. 13) be **denied**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) ); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Slip Copy, 2018 WL 3736794

Footnotes

1    When referring to Plaintiff's submissions, the Court will cite to the page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System because they are often unnumbered or not numbered sequentially.

2    The claims regarding Plaintiff's treatment at Wyoming were severed and transferred to the Western District of New York upon initial review of the Complaint. Dkt. No. 8.

3    In his opposition filings, Plaintiff has included allegations that were not included in his Complaint. *See* Pl.'s Opp. at pp. 5-6. Federal Rule of Civil Procedure 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court" on a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56." FED. R.CIV. P. 12(d). The Court agrees with Defendant that Plaintiff's allegations that he was prevented from filing grievances should not be considered on a motion to dismiss as they are outside the pleadings. *See* Def.'s Reply at p. 2. Because a determination as to exhaustion can be made based on the face of the Complaint, the Court declines to convert the Motion to one for summary judgment, and will exclude and not consider the extrinsic evidence submitted by the parties.

4    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R.CIV. P. 6(a)(1)(C).

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 826850
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Kiaza LOCCENITT, Plaintiff,
v.
LABRAKE, et al., Defendants.

14-CV-6703-FPG
|
Signed 02/12/2018

**Attorneys and Law Firms**

Kiaza fLoccenitt, Romulus, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office Department of Law, Rochester, NY, for Defendants.

DECISION AND ORDER

HON. FRANK P. GERACI, JR., Chief Judge

## INTRODUCTION

**\*1** *Pro se* Plaintiff Kiaza Loccenitt brought this 42 U.S.C. § 1983 action against Defendants Corrections Officers LaBrake, Vankelburg, Sagriff, Maloy, Cook, Ferguson, Sergeant Brinkerhoff, and Nurse Jones, alleging that they violated his Eighth Amendment rights. ECF No. 1. Defendants moved for summary judgment and to preclude Plaintiff from calling inmate Henry Benitez as a trial witness. ECF Nos. 37, 39. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED and this case is dismissed without prejudice because Plaintiff did not exhaust his administrative remedies. Plaintiff is directed to re-file his complaint as a new action. Defendants' Motion to Preclude is DENIED AS MOOT.

## BACKGROUND

Plaintiff alleges that Defendants Corrections Officers LaBrake, Vankelburg, Maloy, Ferguson, Sagriff, and Cook assaulted him in his SHU cell. Plaintiff claims that he lost consciousness during the attack and was choked, kicked, punched, jumped on, slammed into the ground, and had his eyes gouged. Plaintiff also alleges that he was denied medical attention for his various injuries, including vision impairment, impaired ambulation, acute chronic back pain, bruises, and swelling.

At issue, for purposes of this motion, is what date the alleged incident occurred and whether Plaintiff followed the grievance procedure before commencing this action. Plaintiff's Complaint contains conflicting dates for the incident—July 27, 2014 and August 27, 2014. ECF No. 1 at 2, 3. Plaintiff claims that he filed a grievance with the Inmate Grievance Resolution Committee ("IGRC"), which was denied, and that he appealed that decision to the Central Office Review Committee ("CORC"). *Id.* at p. 6. Plaintiff provided the same conflicting dates in his deposition testimony. Defense counsel repeatedly asked Plaintiff to confirm that the incident occurred on August 27, but counsel never pointed out that Plaintiff's Complaint contained conflicting dates.

Defendants argue that regardless of which date the alleged incident occurred, Plaintiff failed to exhaust his administrative remedies—either by failing to file an initial grievance or by prematurely filing this action before CORC issued a final decision—and that the Complaint should be dismissed. In opposition, Plaintiff asserts that the incident occurred on July 27, and that any inconsistency regarding the date of the incident is a harmless error and should be excused. *See* ECF No. 41-1 at 1-2, 5; ECF No. 41-2 at 1-2, 5-6, 16.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See id.* at 255. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. When the moving party has met this initial responsibility, the non-moving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

**\*2** Defendants argue that, regardless of whether the incident occurred on July 27 or August 27, Plaintiff failed to exhaust his administrative remedies and therefore the Complaint must be dismissed. They claim that if the incident occurred on August 27, Plaintiff cannot show that he filed a grievance or appealed it. Alternatively, if the incident occurred on July 27 and Plaintiff filed a grievance and appealed it, Plaintiff commenced this action prematurely—*i.e.* before receiving a final determination from CORC—and therefore did not exhaust his administrative remedies.

As an initial matter, the Court finds it more plausible that the incident occurred on July 27, and that Plaintiff filed a grievance and appealed its denial to CORC. While there are inconsistent dates throughout Plaintiff's filings, Plaintiff asserts that the incident occurred on July 27 in his Complaint and that he filed a grievance that was denied and appealed to CORC. ECF No. 1 at 2, 6; ECF No. 41-1 at 18-19, 31. Indeed, Defendant LaBrake filed an inmate misbehavior report for an incident that occurred in Plaintiff's SHU cell on July 27 and this report corroborates certain allegations contained in Plaintiff's Complaint, including the time and date of the incident and that force was used against Plaintiff. ECF No. 41-1 at 27-30. While Defendants dispute that Plaintiff followed the grievance procedure, even their submissions show that Plaintiff filed a grievance for "assault in retaliation" on August 11, 2014 that he appealed to CORC, which issued a final determination on December 17, 2014. *See* ECF No. 39-1 at 2; ECF No. 39-3 at 2, 6.

Plaintiff testified that the incident occurred on August 27, but only after counsel for Defendants "repeatedly asked him to confirm whether the date of the incident was in fact August 27, 2014." ECF No. 39-5 at 1; ECF No. 39-4 at 7, 10, 13. Plaintiff also testified that his Complaint "stems from [Plaintiff], basically, making complaints, grievances of incidents on CO LaBrake" and that when he filled

out his grievance he referred to LaBrake's misbehavior report, which is dated July 27. ECF No. 39-4 at 12. Plaintiff's grievance states that the incident occurred on August 27, however, IGRC stamped the grievance as received on August 11, 2014. ECF No. 41-1 at 18. Plaintiff recognized the inconsistent dates and asserts that the incident occurred July 27. *See* ECF No. 41-1.

A reading of Plaintiff's Complaint, the inmate misbehavior report, Plaintiff's grievance, and CORC's final determination all suggest that the incident likely occurred on July 27, that Plaintiff filed a grievance, and that he appealed the denial to CORC. The parties' submissions make clear, however, that Plaintiff filed his Complaint on December 11, 2014 before CORC issued its final determination on December 17, 2014. Accordingly, Plaintiff's Complaint must be dismissed without prejudice because he did not exhaust his administrative remedies. [1]

In New York, prison inmates must follow a three-tiered grievance procedure. An inmate must first file a grievance with the IGRC. *See* N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1), (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the CORC. *Id.* § 701.5(d). Here, Plaintiff filed a grievance and appealed it to CORC.

**\*3** "The Prison Litigation Reform Act of 1995 ("PLRA") mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). The Supreme Court has interpreted the PLRA to require exhaustion of administrative remedies in all circumstances as long as those remedies were actually available to the inmate. *Id.* at 1856-58. Thus, pursuant to the PLRA, the prisoner must exhaust his administrative remedies before he files a lawsuit, and it is insufficient if he completes the exhaustion process after he files the lawsuit. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). "Because failure to exhaust is an affirmative defense, defendants bear the burden of showing by a preponderance of the evidence that a plaintiff has failed to exhaust his available administrative remedies." *Casey v. Brockley*, No. 13-CV-01271 DNH/TWD, 2015 WL 8008728, at \*4 (N.D.N.Y. Nov. 9, 2015), *report and recommendation adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015).

Plaintiff instituted this action six days before CORC issued a final determination. It is well settled that "[r]eceiving a decision from CORC *after* filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice." *Neal,* 267 F.3d at 116; *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision,* No. 14-CV-0124 GTS/DJS, 2016 WL 3661434, at *13 (N.D.N.Y. July 5, 2016), *aff'd,* 692 Fed.Appx. 668 (2d Cir. 2017) (dismissing complaint filed eight months before CORC decision for failure to exhaust, even where delay in rendering decision was due to clerical error in transmitting appeal to CORC); *Burgos v. Craig,* 307 Fed.Appx. 469, 470-71 (2d Cir. 2008) (noting that "completing the exhaustion requirements only after filing suit is insufficient"); *Casey,* 2015 WL 8008728, at *5 (same); *see also Fofana v. Moss,* No. 15-CV-0188, 2016 WL 1237796, at *3 (N.D.N.Y. Mar. 4, 2016) (holding that claims in complaint received by the Clerk's office one day after CORC issued its decision were properly exhausted).

Plaintiff argues that his Complaint was properly filed after he exhausted his administrative remedies because CORC did not render a decision within 30 days in accordance with the regulations. ECF No. 41-2 at 6. However, a delay in CORC's rendering a decision on Plaintiff's appeal is not a defense to the exhaustion requirement. *Gizewski,* 2016 WL 3661434, at *13 (citing *Casey,* 2015 WL 8008728, at *6). Nor would a post-exhaustion amendment of Plaintiff's Complaint cure the exhaustion defect, which existed when the action was commenced. *Guillory v. Haywood,* No. 13-CV-01564 MAD, 2015 WL 268933, at *10 (N.D.N.Y. Jan. 21, 2015). Accordingly, Plaintiff's Complaint must be dismissed without prejudice because he did not exhaust his administrative remedies.

The Second Circuit "has recognized that failure to exhaust administrative remedies is usually a 'curable procedural flaw' that can be fixed by exhausting those remedies and then reinstituting suit." *Casey,* 2015 WL 8008728, at *6 (quoting *Neal,* 267 F.3d at 123). Indeed, Plaintiff's failure to exhaust "is merely a temporary procedural flaw." *Allah v. Annucci,* No. 16-CV-1841 KMK, 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 7, 2017) (quoting *Wagnoon v. Johnson,* No. 02-CV-10282 RCC/GWG, 2004 WL 583764, at *2 (S.D.N.Y. Mar. 23, 2004)) (dismissing plaintiff's case without prejudice so that he could reinstitute suit)). **Thus,**

**Plaintiff is instructed to immediately re-file his complaint as a new action. He must also submit an *in forma pauperis* motion and prison authorization, or pay the filing and administrative fees ($400).** The Court notes that, while the statute of limitations for Section 1983 claims is three years, federal courts borrow and apply the state's tolling rules. *Bd. Of Regents of Univ. of State of New York v. Tomanio,* 446 U.S. 478, 487-491 (1980). Indeed, New York Civil Practice Law and Rules § 205(a) "tolls the statute of limitations during the pendency of an action that has been terminated for what is usually a curable defect." *Allway v. McGinnis,* 362 F. Supp. 2d 390, 393 (W.D.N.Y. 2005) (citing *Cecere v. County of Westchester,* 814 F. Supp. 378, 381 (S.D.N.Y. 1993)); *see also Gashi v. County of Westchester,* No. 02 Civ 6934, 205 WL 195517, *9 (S.D.N.Y. Jan 27, 2005) (finding that dismissal without prejudice for failure to exhaust administrative remedies pursuant to the PLRA "is a manner of termination not listed as excluded from the protection of § 205(a)").

## CONCLUSION

**\*4**  For the reasons stated, Defendants' Motion for Summary Judgment (ECF No. 39) is GRANTED and their Motion to Preclude (ECF No. 37) is DENIED AS MOOT. The Complaint is dismissed without prejudice, and the Clerk of Court is directed to close this case. Plaintiff is instructed to immediately re-file his complaint as a new action. He must also submit an *in forma pauperis* motion and prison authorization, or pay the filing and administrative fees ($400). These items should be mailed to The United States District Court WDNY, Clerk's Office, US Courthouse, 100 State Street, NY 14614.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and that leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

2018 WL 826850

**All Citations**

Slip Copy, 2018 WL 826850

Footnotes

1    The Court notes that even if the incident occurred on August 27, summary judgment would still be appropriate because
    Plaintiff did not grieve a use of force or retaliatory incident occurring in August. *See* ECF No. 39-3 at 6.

---

**End of Document**                            © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3321430
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Stephen Stuart LOPEZ, Plaintiff,

v.

NASSAU COUNTY SHERIFFS DEPARTMENT, and
Nassau County Correctional Center, Defendants.

17-CV-3722 (DRH) (GRB)
|
Signed 07/05/2018

**Attorneys and Law Firms**

Stephen Stuart Lopez, 43-25 Hunter Street Apt 2103 W,
Long Island City, NY 11101, pro se.

Nassau County Attorney's Office, One West Street,
Mineola, NY 11501, By: Liora M. Ben-Sorek, Esq., For
Defendant.

**MEMORANDUM & ORDER**

Denis R. Hurley, United States District Judge

 **\*1** Plaintiff, Stephen Stuart Lopez ("plaintiff"),
proceeding pro se, brings this civil rights action, pursuant
to 42 U.S.C. § 1983 ("Section 1983"), and Article I,
Section 12 of the New York State Constitution, against
the Nassau County Sheriff's Department and the Nassau
County Correctional Center (the "NCCC") (collectively
"defendants"). Presently before the Court is defendants'
motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(6). For the reasons set forth below, the
Court denies defendants' motion without prejudice and
orders plaintiff to submit a supplemental affidavit on or
before September 5, 2018 specifying the basis upon which
his claims are entitled to equitable tolling.

**BACKGROUND**

The following facts are taken from the Complaint, are
assumed to be true and, for purposes of the pending
motion to dismiss, construe in a light most favorable to
the pro se plaintiff. In deciding this motion to dismiss, the
Court has taken judicial notice of public records, including

court filings as well as exhibits which are attached or
integral to the complaint. See Kramer v. Time Warner,
Inc., 937 F.2d 767, 774 (2d Cir. 1991); Sira v. Morton, 380
F.3d 57, 67 (2d Cir. 2004).

**I. The In Re Nassau County Strip Action**

This action arises from a related matter before this Court,
In re Nassau County Strip Search Case, 99-CV-02844
(DRH) ("Strip Search Class Action") of which plaintiff
was a class member. (Defs.' Mem. at 1.) The plaintiffs
in the Strip Search Class Action had been arrested on
misdemeanor charges, unrelated to weapons or drugs
and were thereafter strip searched without individualized
suspicion, at the Nassau County Correctional Center
("NCCC") in accordance with a "blanket policy" in effect
at NCCC prior to 1999. In re Nassau County Strip Search
Cases, 461 F.3d 219, 222 (2d Cir. 2006). The Strip Search
Class Action involved claims against defendants pursuant
to Section 1983 for violations of the class' Fourth, Fifth,
Eighth and Fourteenth Amendment rights and Article
I, Section 12 of the New York State Constitution. Id.
Defendants conceded liability and a judgment of liability
was eventually entered in favor of the class. Id. at 224.
By Memorandum & Order dated March 27, 2008, the
Court found that the issue of general damages due to
the asserted injury to human dignity predominated, and
concluded that there was "no reason [to believe] that
a jury ... could not determine an amount of general
damages awardable to each member of the class." (Mar.
27, 2008 Order at 7-12.) The parties waived the right to
a jury trial and submitted the issue of a general damages
determination to the Court. After an eleven-day bench
trial, the Court awarded general damages in the amount
of $500.00 per strip search. In re Nassau County Strip
Search Case, 99-CV-02844 (E.D.N.Y.), Sept. 22, 2010
Order at 65-66.) By Memorandum & Order dated October
19, 2011, the Court held that it would not extend class
certification to permit plaintiffs to pursue a class-wide
award for "garden-variety" emotional distress damages,
and concluded that emotional distress damages beyond
those which are inseparable from the injury to human
dignity may be awarded only on an individual, case-by-
case basis.

 **\*2** Prior to entry of judgment, the Supreme Court issued
its decision in Florence v. Bd. of Chosen Freeholders of
the Cnty. of Burlington, 566 U.S. 318 (2012), holding that
a blanket strip search policy for arrestees admitted into the
general population at a county jail, without reasonable

suspicion, did not violate the Fourth or Fourteenth Amendments. As a result of *Florence*, the Court vacated the portion of the January 16, 2007 Order granting summary judgment to plaintiff class as to liability on the federally-based constitutional claim. The Court held, however, that the claim brought pursuant to the New York State Constitution was unaffected by *Florence. See In re Nassau County Strip Search Cases*, 958 F. Supp. 2d 339 (E.D.N.Y. 2013), aff'd, 639 Fed.Appx. 746 (2d Cir. 2016). A final judgment was then issued on April 10, 2014, against the defendants and in favor of the plaintiff class on the state constitutional claims awarding each member of the class general damages in the amount of $500.00 per strip search. (*See* Ben-Sorek Declaration ("Ben-Sorek Decl.") Ex. B, Final Judgment, April 10, 2014 ("Final Judgment") at 2.)

In the Final Judgment the Court imposed equitable tolling of the statute of limitations to 180-days from the date of the judgment or, in the event of an appeal, from the issuance of a mandate, for class members to file a lawsuit for special damages beyond that awarded in the judgment. (*Id.*) On June 16, 2016, the Second Circuit Court of Appeals issued its mandate affirming the prior judgment. (*See* 99:CV-02844, DE 480.) As a result of the equitable toll, individuals who were strip searched anytime from May 20, 1996 to November 16, 1996 would have to file a lawsuit to recover special damages no later than December 13, 2016. The Claims Notice sent to class members informed that should they wish to file their own lawsuit for emotional distress, financial loss, or other items of damages related to their strip search they were free to so do. It further advised class members that a hold on the statute of limitations was placed by the court which continued into effect until 180 days after June 16, 2016 so that they would "have at least until December 13, 2016 to file an individual lawsuit for additional damages."

## II. The Instant Action

Plaintiff filed the Complaint in this action on June 1, 2017 alleging a Section 1983 claim for violations of his Fourth, Fifth, Eighth and Fourteenth amendment rights, and a violation of Article 1, Section 12 of the New York State Constitution. (Compl. at 3.) Specifically, plaintiff alleges that upon his arrest and admission to the NCCC on July 3, 1996 (Booking No. 1996007512), he was verbally forced "to strip off completely, fully naked and bend and turn in different positions in front of a group of officers." (Compl. at 4.) He alleges that this "bitter and embarrassing situation [ ] severely damaged [his] dignity and emotional well being." (*Id.*) Plaintiff seeks $350,000 for damage to his "human dignity, mental impairment, emotional well being and honor resulting in loss of job, psychiatric treatments for depression and anxiety and disorienting [his] life style." (*Id.* at 5.)

On September 25, 2017, defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On October 25, 2017, plaintiff filed a "Notice Requesting One Time Amendment" and a "Notice in Response to Defendant's Motion to Dismiss My Complaint." Defendants filed their reply on November 8, 2017. The Court has fully considered the submissions of the parties.

## DISCUSSION

## I. LEGAL STANDARD—MOTION TO DISMISS

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Cleveland v. Caplan Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.' " *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

**\*3** First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal, 556 U.S. at 678*. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id. at 679*. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the

plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

In adjudicating a Rule 12(b)(6) motion, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*In re Merrill Lynch & Co.*, 273 F.Supp.2d 351, 356–57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part & rev'd in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005). In accordance with the foregoing, this Court may take into consideration

the Orders entered in *In re Nassau County Strip Search*, 99-CV-2844.

Finally, where, as here, the plaintiff is proceeding pro se, courts are " 'obliged to construe his pleadings liberally.' " *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (stating that a pro se plaintiff's pleadings must be interpreted "to raise the strongest arguments that they suggest" (citation and internal quotation marks omitted) ). However, a pro se plaintiff's complaint, while liberally interpreted, still must " 'state a claim to relief that is plausible on its face.' " *Mancuso v. Hynes*, 379 Fed.Appx. 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. 662); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

## II. The Parties' Contentions

Defendants argue that plaintiff's claims are time-barred because the already tolled statute of limitations has expired. Plaintiff concedes that his Complaint was filed past the expiration of the statute of limitations but alleges that he was not at fault. As discussed below, the Court concludes that plaintiff should be given the opportunity to file a supplemental affidavit demonstrating his alleged entitlement to equitable tolling of the statute of limitations.

## III. Applicable Law—Statute of Limitations and Equitable Tolling

**\*4** The statute of limitations for claims brought under Section 1983 is governed by state law, *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) and New York applies a statute of limitations period of three years to such claims. *Gonzalez v. Bronx Cty. Hall of Justice Court Officer Mark Hirschman Shield*, 7421, 2016 WL 354913, at \*3 (S.D.N.Y. Jan. 28, 2016). However, in the instant case, given the equitable toll imposed in the Strip Search litigation, plaintiff's claim for special damages expired on December 13, 2016.

Compliance with the statute of limitations is not a jurisdictional bar to claims arising under Section 1983. "Consequently, such claims may be subject to equitable tolling." *Gonzalez v. Bronx Cty. Hall of Justice Court Officer Mark Hirschman Shield 7421*, 2016 WL 354913, at \*3 (citing *Jefferson v. Kelly*, 2008 WL 1840767 at \*4

(E.D.N.Y. Apr. 22, 2008) ) (noting in a Section 1983 action "that a statute of limitations is not jurisdictional, but rather is subject to waiver, estoppel, and equitable tolling"); *Moses v. Westchester Cty. Dep't of Corr.*, 951 F. Supp. 2d 448, 456 (S.D.N.Y. 2013) (permitting equitable tolling of claims in a Section 1983 action). "Under the doctrine of equitable tolling, a court may, under compelling circumstances, make narrow exceptions to the statute of limitations in order 'to prevent inequity.' " *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003). "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). However, the doctrine is reserved for "rare and exceptional" circumstances. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Thus, the Second Circuit "has applied the doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights, or h[as] asserted his rights in the wrong forum.' " *Johnson*, 86 F.3d at 12 (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985) ).

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal citation omitted). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling ... lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000). "[A] court must consider the equities of the excuse offered to explain the delay and may extend the limitations period if warranted." *Smith v. Chase Manhattan Bank*, 1998 WL 642930, at *3 (S.D.N.Y. Sept. 18, 1998) (finding equitable tolling appropriate when a plaintiff failed to file within the deadline because the EEOC sent his Notice of the Right to Sue to the wrong address, though the plaintiff had notified the EEOC of an address change).

"The essence of the doctrine [of equitable tolling] is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) Where equitable tolling applies, "the statute does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being appraised of sufficient facts to put him on notice" *Id.* (internal quotation marks omitted). Equitable tolling is not to be applied liberally; rather, it "applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B–J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (stating the equitable tolling doctrine is "to be applied sparingly").

**\*5** Only in a limited number of cases do extraordinary circumstances exist such that equitable tolling is warranted. *See South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect") (citation and quotation marks omitted). Such cases include those where a plaintiff's mental or physical disability prevented him from handling his legal affairs. *See, e.g.*, *Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 281–83 (S.D.N.Y. 2001); *accord Canales v. Sullivan*, 936 F.2d 755, 756 (2d Cir. 1991) ("[M]ental impairment may warrant equitable tolling of the statute of limitations under some circumstances."). However, "few medical difficulties actually qualify for equitable tolling." *Kantor–Hopkins v. Cyberzone Health Club*, 2007 WL 2687665, at * 6 (E.D.N.Y. Sept. 10, 2007). Importantly, a "plaintiff is not required to have alleged facts in the complaint that overcome defendants' affirmative defense based on the statute of limitations." *Sexton v. Franklin First Financial Ltd.*, 2009 WL 1706535, at *16 (E.D.N.Y. June 16, 2009).

## IV. The Motion to Dismiss is Denied Without Prejudice

Plaintiff concedes, that he failed to file a timely claim for special damages. Under the tolling period for in the Final Judgment plaintiff had until December 13, 2016 to initiate a lawsuit claiming special damages. This information was specified in the Claims Notice that was mailed to all class members. Plaintiff filed the instant Complaint on June 1, 2017—5 ½ months after the expiration of the tolled statute of limitations. (See Compl.) In his opposition to defendants' motion for dismissal, plaintiff asserts that he did not receive the Claims Notice until March 18, 2017 —three months after the December 13, 2016 cutoff date. (Pl.'s Opp. Mem. at 2.) Plaintiff contends that one of the reasons for his late receipt of the Claims Notice was his

"homelessness condition;" he did not have a permanent address as he was wandering around from one homeless shelter to another. (*Id.*) Although not labeled as such, it appears that this pro se plaintiff seeks equitable tolling for the statute of limitations period.

As a pro se plaintiff's pleadings must be interpreted "to raise the strongest arguments that they suggest", *McPherson*, 174 F.3d at 280, plaintiff should be given the opportunity to show that "extraordinary circumstances" prevented him from filing his claim on time. *See Johnson*, 86 F.3d at 12 (noting that this court has applied equitable tolling doctrine "as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights ...") (internal quotations omitted). Thus, in an abundance of caution, this Court will allow plaintiff to supplement his opposition to defendants' motion seeking dismissal by submitting an affidavit setting forth facts demonstrating that he acted with reasonable diligence during the time he seeks to have the statute of limitations tolled and demonstrating that the surrounding circumstances are so extraordinary to warrant application of equitable tolling.

In sum, and after careful consideration, the Court concludes that defendants' motion to dismiss on the basis that the claims are time-barred is denied without prejudice and may be renewed following plaintiff's filing of a supplemental affidavit in opposition to defendants' motion.

## CONCLUSION

For the reasons set forth herein, the Court denies defendants' motion to dismiss without prejudice. Plaintiff has to and including September 5, 2018 to file with the Court a supplemental affidavit demonstrating entitlement to equitable tolling of his claims. The Clerk of the Court is directed to mail a copy of this Order to the pro se Plaintiff.

**\*6 SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 3321430

---

End of Document                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by McDonald v. Zerniak, N.D.N.Y., November 4, 2016

2014 WL 5475293
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Charles McALLISTER also known
as Charles McCallister, Plaintiff,
v.
Harold CALL, Vocational Supervisor,
Mohawk Correctional Facility, Defendant.

No. 9:10–CV–610 (FJS/CFH).
|
Signed Oct. 28, 2014.
|
Filed Oct. 29, 2014.

**Attorneys and Law Firms**

Charles McAllister, Westbury, NY, pro se.

Hon. Eric T. Schneiderman, Office of the New York State
Attorney General, The Capitol, Keith J. Starlin, AAG, of
Counsel, Albany, NY, for Defendant.

## ORDER

SCULLIN, Senior District Judge.

 **\*1** Currently before the Court are Magistrate Judge
Hummel's October 9, 2014 Report–Recommendation and
Order, *see* Dkt. No. 81, and Plaintiffs objections thereto,
*see* Dkt. No. 83.

Plaintiff, a former inmate who was, at all relevant times, in
the custody of the New York Department of Corrections
and Community Supervision, commenced this action
pursuant to 42 U.S.C. § 1983. In his original complaint,
Plaintiff asserted claims against Brian Fischer, Lucien
J. LeClaire, Patricia LeConey, Carol Woughter, and
John and Jane Does. Defendants moved for summary
judgment. *See* Dkt. No. 49. By Report–Recommendation
and Order dated July 6, 2012, Magistrate Judge Homer
recommended that this Court dismiss all claims against
the named individuals and direct Plaintiff to join Harold
Call as a Defendant. *See* Dkt. No. 55. This Court accepted

the Report and Recommendation and Order in its entirety
and directed Plaintiff to file an amended complaint to
"include only one cause of action a procedural due process
claim in connection with his disciplinary hearing and one
Defendant hearing officer Call ." *See* Dkt. No. 58 at 4–5.

Plaintiff thereafter filed his amended complaint and
requested compensatory and punitive damages. *See* Dkt.
No. 64, Amended Complaint at 4. In this amended
complaint, Plaintiff alleged that Defendant violated
his constitutional rights under the First, Eighth and
Fourteenth Amendments. *See* Dkt. No. 64, Amended
Complaint at ¶¶ 33, 34, 43.

On May 9, 2014, Defendant filed a motion for summary
judgment pursuant to Rule 56 of the Federal Rules
of Civil Procedure. *See* Dkt. No. 74. In a Report–
Recommendation and Order dated October 9, 2014,
Magistrate Judge Hummel recommended that this Court
grant Defendant's motion in part and deny his motion in
part. *See* Dkt. No. 81 at 33. Plaintiff filed objections to
Magistrate Judge Hummel's recommendations. *See* Dkt.
No. 83.

Where a party makes specific objections to portions of a
magistrate judge's report and recommendation, the court
conducts a *de novo* review of those recommendations. *See
Trombley v. Oneill,* No. 8:11–CV–0569, 2011 WL 5881781,
\*2 (N.D.N.Y. Nov. 23, 2011) (citing Fed.R.Civ.P. 72(b)
(2); 28 U.S.C. § 636(b)(1)(C)). Where a party makes
no objections or makes only conclusory or general
objections, however, the court reviews the report and
recommendation for "clear error" only. *See Salmini v.
Astrue,* 3:06–CV–458, 2009 WL 1794741, \*1 (N.D.N.Y.
June 23, 2009) (quotation omitted). After conducting the
appropriate review, a district court may decide to accept,
reject, or modify those recommendations. *See Linares
v. Mahunik,* No. 9:05–CV–625, 2009 WL 3165660, \*10
(N.D.N.Y. Sept. 29, 2009) (quoting 28 U.S.C. § 636(b)(1)
(C)).

Although Plaintiff's objections are, in most respects,
general or conclusory, given his *pro se* status, the Court
has conducted a *de novo* review of Magistrate Judge
Hummel's Report–Recommendation and Order. Having
completed its review, the Court hereby

 **\*2 ORDERS** that Magistrate Judge Hummel's
October 9, 2014 Report–Recommendation and Order is

ACCEPTED **in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED in part** and **DENIED in part;** and the Court further

**ORDERS** that Plaintiff's First Amendment claims, his Eighth Amendment claims, and his challenge to the constitutionality of Directive 4913 are **DISMISSED;** and the Court further

**ORDERS** that, to the extent that Plaintiff has asserted claims against Defendant in his official capacity, those official-capacity claims are **DISMISSED;** and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED** with respect to Plaintiff's Fourteenth Amendment due process claims and with respect to Defendant's qualified immunity defense; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Hummel for all further pretrial matters; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**REPORT–RECOMMENDATION AND ORDER** [1]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* Charles McAllister ("McAllister"), a former inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), [2] brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant Harold Call ("Call"), Vocational Supervisor, Mohawk Correctional Facility ("Mohawk"), violated his constitutional rights under the First, Eighth and Fourteenth Amendments. Am. Compl. (Dkt. No. 64) ¶¶ 33, 34; 4. McAllister initially commenced this civil

rights action against defendants Brian Fischer, Lucien J. LeClaire, Patricia LeConey, Carol Woughter, and John and Jane Does. Defendants moved for summary judgment. Dkt. No. 49. By report and recommendation dated July 6, 2012, (1) all claims against identified defendants were dismissed; and (2) defendant was directed to join Call, who was identified in the motion papers as a John Doe defendant. Dkt. No. 55; Dkt. No. 58. The report and recommendation was accepted in its entirety, and McAllister was directed to file an amended complaint to "include only one cause of action —a procedural due process claim in connection with his disciplinary hearing—and one Defendant—hearing officer Call." Dkt. No. 58 at 4. McAllister thereafter filed his amended complaint wherein he requested punitive and compensatory damages. Am. Compl. at 4. Presently pending is Call's motion for summary judgment on the amended complaint pursuant to Fed.R.Civ.P. 56. Dkt. No. 74. McAllister did not respond. For the following reasons, it is recommended that Call's motion be granted in part and denied in part.

**I. Failure to Respond**

The Court notified McAllister of the response deadline and extended the deadline for his opposition papers on two occasions. Dkt. No. 75; Dkt. No. 77; Dkt. No. 80. Call also provided notice of the consequence of failing to respond to the motion for summary judgment in his motion papers. Dkt. No. 74–1. Despite these notices and extensions, McAllister did not respond.

**\*3** Summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). Thus, "[t]he fact that there has been no response to a summary judgment motion does not ... mean that the motion is to be granted automatically." *Id.* at 486. Even in the absence of a response, defendants are entitled to judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id.;* FED. R. CIV. P. 56(c). "A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist...." *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (internal citations omitted); *see also Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 219 (2d Cir.2004) (same). The facts set forth in defendant's

Rule 7.1 Statement of Material Facts (Dkt. No. 74–2) are accepted as true as to those facts that are not disputed in McAllister's amended complaint. N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.").

## II. Background

The facts are reviewed in the light most favorable to McAllister as the non-moving party. *See* subsection III(A) *infra.* At all relevant times, McAllister was an inmate at Mohawk. Am. Compl. ¶ 3.

On or about July 15, 2009, nonparty Correction Officer Femia, pursuant to authorization from nonparty Captain Dauphin, searched McAllister's personal property while McAllister was confined in a secure housing unit ("SHU"). [3] Dkt. No. 74–3, Exh. A, at 14; Am. Compl. ¶¶ 5–6. Femia confiscated approximately twenty documents from McAllister's locker, including five affidavits that were signed by other inmates. Dkt. No. 74–3, Exh. A, at 14. As a result of the search, Femia issued McAllister a Tier III misbehavior report, alleging violations of prison rules 113.15 [4] (unauthorized exchange) and 180.17 (unauthorized assistance). [5] *Id.;* Am. Compl. ¶ 7.

McAllister was assigned as his inmate assistant nonparty Correction Officer A. Sullivan. Am. Compl. ¶ 7; Dkt. No. 74–3, Exh. A, at 11. McAllister requested five inmate witnesses, documents, prison directives 4933 and 4982, and a facility rule book. Am. Compl. ¶ 8; Dkt. No. 74–3, Exh. A, at 11. He also asked Sullivan for permission to retrieve documents from his personal property. *Id.* The requested witnesses were those inmates whose signatures were affixed to the five confiscated affidavits. Dkt. No. 74–3, Exh. A, at 14. Sullivan retrieved the requested materials, and all inmate witnesses agreed to testify. *Id.* at 11.

On or about July 21, 2009, a Tier III disciplinary hearing was held before Call, who served as the hearing officer. Am. Compl. ¶ 10. McAllister pleaded not guilty to both alleged violations. Dkt. No. 74–3, Exh. A, at 38. McAllister objected to the misbehavior report as violative of prison directive 4932 because the copy he was given (1) provided insufficient notice of the charges against him and

(2) differed from the report that Call read into the record. *Id.* at 39–41. McAllister stated that his copy did not list the names of the inmates to whom the confiscated affidavits allegedly belonged. *Id.* Call acknowledged the difference between the reports but concluded that the misbehavior report informed McAllister of the charges against him and the bases for the charges. *Id.* at 39, 41–42. McAllister also argued that his copy of the misbehavior report referred to confiscation of twenty documents from his cell, but did not identify the papers that were taken. *Id.* at 42. He contended that the misbehavior report's general reference to "legal work" was insufficient to provide him with notice of the documents to which the report was referring because he had several volumes of legal work. *Id.* at 42, 59. In response to this objection, Call recited the body of the misbehavior report, which described the confiscated documents as "[a]rticles of paper which appear to be legal work including some signed affidavits" and asked McAllister, "[t]hat didn't ring a bell for you? How much paperwork did you have that fit that description?" *Id.* at 42. Call also expressed his belief that the affidavits qualified as legal work. *Id.* at 45, 57–58.

**\*4** McAllister next argued that he did not provide unauthorized legal assistance to another inmate in violation of rule 180.17 because the inmate affidavits were used as evidence to prove that the Division of Parole had a "practice" of "fail[ing] to respond to appeals over the last four years .... " Dkt. No. 74–3, Exh. A at 45–49, 56. These inmates were aware that their affidavits were created for, and to be used solely in support of, McAllister's case and that they were receiving no legal benefit. *Id.* at 48–49. McAllister further contended that he did not need permission from prison personnel to collect the affidavits. *Id.* at 64.

McAllister also argued that rule 113.15 is ambiguous because it does not list the specific items which, if found in an inmate's possession, would violate the rule. Dkt. No. 74–3, Exh. A, at 54. Finally, to the extent it can be determined from the hearing transcript, McAllister objected to the SHU procedures for handling his personal property. *Id.* at 70.

At the conclusion of the hearing, Call informed McAllister that he would be considering testimony from a confidential witness. Dkt. No. 73–3, Exh. A, at 13, 38, 73. McAllister objected to consideration of confidential testimony without being informed of the contents. *Id.* at

74. Finally, McAllister declined to call the inmates that he had requested as witnesses. *Id.* at 37, 71.

Call found McAllister guilty of violating prison rules 113.15 and 180.17. Dkt. No. 74–3, Exh. A, at 8–9, 76. He imposed a penalty of three months in SHU and three months loss of privileges. *Id.* at 8. Call relied upon the misbehavior report, the confidential testimony, the packet of legal work containing the other inmates' affidavits, and McAllister's testimony and statements. *Id.* at 9.

The disciplinary determination was reversed upon administrative appeal on the ground that the evidence failed to support a finding of guilt. Dkt. No. 74–3, Exh. B, at 79; Exh. C, at 81. In May 2010, McAllister commenced this action pursuant to 42 U.S.C. § 1983.

### III. Discussion [6]

McAllister argues that Call violated his rights under (1) the First Amendment, by (a) retaliating against him by finding him guilty and (b) hindering his access to the courts; (2) the Eighth Amendment, by imposing a three-month SHU assignment, plus ten additional days following reversal of the disciplinary hearing; and (3) the Fourteenth Amendment, because (a) he was given insufficient notice of the charges against him, (b) he was denied advance notice of the use of a confidential witness, (c) he was forced to spend approximately fifty-two days in SHU as a result of the misbehavior report, (d) Call failed to follow certain DOCCS directives and prison regulations, (e) Call demonstrated bias against him during the Tier III hearing and prejudged his guilt, and (f) he was denied equal protection.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

**\*5** The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

Where, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. *See Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law....

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191–92 (2d Cir.2008).

### B. Eleventh Amendment

Call argues that he is entitled to Eleventh Amendment immunity relating to McAllister's claims for money damages against him in his official capacity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984) (citing *Hans v. Louisiana,* 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Halderman,* 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan,* 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) (citing *Edelman v. Jordan,* 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Here, because McAllister seeks monetary damages against Call for acts occurring within the scope of his duties, the Eleventh Amendment bar applies.

**\*6** Accordingly, it is recommended that Call's motion on this ground be granted.

### C. Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered personally involved if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon,* 58 F.3d at 873 (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). [7] Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact. *See e.g., Brown v. Artus,* 647 F.Supp.2d 190, 200 (N.D.N.Y.2009).

As to any constitutional claims beyond those surrounding the denial of due process at the Tier III hearing, the undersigned notes that evaluation of such is unnecessary as it is outside of the scope set forth in this Court's prior order. Dkt. No. 58 at 4. However, to the extent that Call acknowledges these claims and provides additional and alternative avenues for dismissal, McAllister fails to sufficiently allege Call's personal involvement in impeding his access to the courts, in violation of the First Amendment. McAllister argues that, as a result of Call's determination that he violated rules 113.15 and 180.17, his legal paperwork was confiscated, which impaired his ability to continue to represent himself in pending state and federal court claims. Am. Compl. ¶¶ 38–40. However, McAllister does not suggest that Call was personally involved in either the search and confiscation of paperwork that led to the filing of the misbehavior report nor the subsequent reduction in his paperwork pursuant to directive 4913. To the contrary, McAllister concedes that the paperwork was reduced pursuant to the directive.

McAllister also fails to sufficiently allege Call's personal involvement in the SHU procedures for storing property or in holding him in SHU for ten additional days following the reversal of the Tier III determination. Call stated that hr had no involvment with the storage of property in SHU. Dkt. No. 74–3, at 5. Call also contended that he "was not responsible for plaintiff's being held in SHU for

additional days following the August 26, 2009 reversal of the disciplinary hearing decision of July 22, 2009." *Id.* McAllister does not allege Call's involvement in this delay. McAllister's sole reference to the ten-day delay is his claim that he "was not released from Special Housing until September 4, 2009, approximately 10 days after the reversal" Am. Compl. ¶ 43. This conclusory statement is insufficient to demonstrate Call's personal involvement in an extension of his time in SHU following the reversal of the Tier III determination. *Brown,* 647 F.Supp.2d at 200.

**\*7** Accordingly, it is recommended that Call's motion be granted insofar as McAllister alleges that Call: denied him access to the courts in violation of the First Amendment, was at all involved with the storage of his property while he was in SHU, and caused him to be held an additional ten days in SHU following administrative reversal of the Tier III determination.

### D. First Amendment

McAllister appears to argue that, in retaliation for his filing of grievances and lawsuits, Call found him guilty of the misconduct in the Tier III hearing and imposed SHU time. He suggests that his transfer to SHU, as a result of the Tier III determination, triggered enforcement of his compliance with directive 4913, which impeded his ability to proceed with active legal matters and resulted in dismissals. Am. Compl. ¶ 41. Thus, McAllister also argues that he was denied access to the courts. Am. Compl. ¶ 38. As a preliminary matter, McAllister's First Amendment retaliation and access claims are beyond the scope of the prior order of this Court directing McAllister to limit his amended complaint "include only one cause of action—a procedural due process claim in connection with his disciplinary hearing." Dkt. No. 58, at 4. Regardless, McAllister fails to plausibly allege either retaliation or denial of access to the courts.

Courts are to "approach [First Amendment] retaliation claims by prisoners with skepticism and particular care." *See e.g., Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (citing *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds by Swierkiewicz v. Sorema, NA,* 534 U.S. 506 (2002)). A retaliation claim under section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. *Ashcroft,* 556 U.S. at 678; *South Cherry St.,*

*LLC v. Hennessee Group LLC,* 573 F.3d 98, 110 (2d Cir.2009). To survive a motion to dismiss, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Taylor v. Fischer,* 841 F.Supp.2d 734, 737 (W.D.N.Y.2012). If the plaintiff meets this burden, the defendants must show, by a preponderance of the evidence, that they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." *See Barclay v. New York,* 477 F.Supp.2d 546, 588 (N.D.N.Y.2007).

**\*8** Here, McAllister baldly states that Call's disciplinary determination was imposed in retaliation for his filing of grievances and lawsuits; however, McAllister does not identify these grievances and lawsuits nor does he claim that any of these were lodged against Call. *See generally Ciaprazi v. Goord,* No. 02–CV–915, 2005 WL 3531464, at \*9 (N.D.N.Y. Dec. 22, 2005) (dismissing the plaintiff's claim of retaliation where the plaintiff could "point to no complaints lodged by him against or implicating the conduct of [the] defendant ... who issued the disputed misbehavior report."). McAllister also provides no time frame for the apparent grievance and lawsuits. Thus, it cannot be discerned whether or how these unnamed grievances and lawsuits were a "motivating factor" in Call's Tier III determination. *Doyle,* 429 U.S. at 287 (internal quotation marks and citation omitted). McAllister's unsupported, conclusory claim fails to plausibly demonstrate that Call's determination was a product of retaliatory animus.

Undoubtedly, prisoners have a constitutional right to meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817, 824 (1977); *Lewis v. Casey,* 518 U.S. 343, 350 (1996) ("The right that *Bounds* acknowledged was the (already well-established) right of access to the courts."). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents[ ] or

file them." *Lewis,* 518 U.S. at 350 (internal citations omitted). To establish a denial of access to the courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). Second, the plaintiff must demonstrate that he suffered an actual injury. *Id.; Monsky v. Moraghan,* 123 F.3d 243, 247 (2d Cir.1997) (internal citations, quotation marks, and alterations omitted) (quoting *Lewis,* 518 U.S. at 329) ("In order to establish a violation of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, *i.e.,* took or was responsible for actions that hindered a plaintiff's effort to pursue a legal claim"). Thus, a plaintiff must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim." *Davis,* 320 F.3d at 351 (internal quotation marks omitted).

Here, there is insufficient evidence to give rise to a genuine dispute of fact regarding either element of a denial of court access claim. As noted, McAllister merely states that, as a result of the property reduction pursuant to directive 4913, his "ability to continue litigation in Federal and State court caused adverse decisions by the court and dismissals." Am. Compl. ¶ 41. This claim is insufficient to demonstrate that Call was responsible for actions that hindered his legal claims. Insofar as McAllister's claim could be read to suggest that Call denied him access to the courts by confiscating his legal documents, as noted *supra,* McAllister fails to present any plausible facts to support a finding that Call was involved in the initial search of his property or in the later reduction of his property or that it was maliciously imposed by Call. As noted, the initial cell search which led to the misbehavior report was executed by Captain Dauphin and executed by Correction Officer Femia. Similarly, McAllister concedes that his property was reduced pursuant to directive 4913. Although McAllister suggests that his transfer to SHU as a result of the Tier III hearing triggered the application of directive 4913, he was transferred to SHU on July 9, six days before the initial cell search occurred. *Id.* ¶ 5. Thus, if McAllister were forced to comply with directive 4913 because of his transfer to SHU, he failed to demonstrate that the compliance arose from the SHU term ordered by Call rather than the unknown incident that resulted in his transfer to SHU on July 9. Further, McAllister failed to establish any actual injury because he did not specify which cases were allegedly dismissed as a result of the property reduction. *See Monsky,* 123 F.3d at 247.

**\*9** Accordingly, it is recommended that Call's motion for summary judgment be granted on this ground.

### E. Eighth Amendment

In his amended complaint, McAllister references the Eighth Amendment. Am. Compl. ¶ 31. However, McAllister's only reference to the Eighth Amendment is his assertion that Call's use of a confidential witness violated his Eighth Amendment right to be free from cruel and unusual punishment. However, in support of this argument, McAllister states only that this right was violated when Call stated, "[s]o, um there is a lot of stuff going on through my paperwork and I want to bring it to your attention before we move on ..." *Id.* ¶ 33; Dkt. No. 74–3, at 73. When read in context, it becomes clear that Call made this statement immediately before informing McAllister of his consideration of confidential information. Dkt. No. 73–3, at 73. Although, in referencing this portion of the hearing transcript McAllister alleges that he was subject to cruel and unusual punishment, it appears that McAllister intended to assert that the use of a confidential witness was a due process violation. Even if McAllister had intended to argue that use of a confidential witness violates the prohibition of cruel and unusual punishment, such a claim would necessarily fail because the Eighth Amendment protects an inmate's right to be free from conditions of confinement that impose an excessive risk on an inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 & 837 (1994). As McAllister makes no claim that he faced conditions of confinement imposing a risk to his health or safety and instead focuses his argument on notice of a confidential witness, giving McAllister due solicitude, his claim regarding the use of a confidential witness will be incorporated as part of the due process analysis below.

### F. Fourteenth Amendment

#### 1. Due Process

Well-settled law provides that inmates retain due process rights in prison disciplinary hearings." *Hanrahan v. Doling,* 331 F.3d 93, 97 (2d Cir.2003) (per curiam) (citing cases). However, inmates do not enjoy "the full panoply of

rights" accorded to a defendant in a criminal prosecution. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). For a plaintiff to state a claim that he was denied due process at a disciplinary hearing, the plaintiff "must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir.2004) (per curiam) (quoting *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001)). To satisfy the first prong, a plaintiff must demonstrate that the deprivation of which he complains is an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). "A liberty interest may arise from the Constitution itself, ... or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citations omitted).

### a. Denial of Liberty Interest

**\*10** In assessing whether an inmate plaintiff was denied procedural due process, the court must first decide whether the plaintiff has a protected liberty interest in freedom from SHU confinement. *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). If the plaintiff demonstrates the existence of a protected liberty interest, the court is then to determine whether the deprivation of this interest "occurred without due process of law." *Id.* at 351, citing *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460–61 (1989). Due process generally requires that a state afford an individual "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir.2003). Although not dispositive, duration of disciplinary confinement is a significant factor in determining atypicality. *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000); *Blackshear v. Woodward,* No. 13–CV–1165, 2014 WL 2967752 (N.D.N.Y. July 1, 2014).

McAllister suggests that his confinement in SHU for forty-two to fifty-two days is a sufficient deprivation that requires procedural protections. Freedom from SHU confinement may give rise to due process protections; however, the plaintiff must allege that the deprivation imposed "an atypical and significant hardship." *Sandin,* 515 U.S. at 484; *Gaston v. Coughlin,* 249 F.3d 156, 162 (2d Cir.2001) (concluding that SHU confinement does not give rise to due process protections where inmate failed to demonstrate atypical hardship while confined). Although the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard (*Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999)), it has made clear that confinement in SHU for a period of one year constitutes atypical and significant restraint on inmates, deserving due process protections. *See e.g. Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000) (holding confinement in SHU exceeding 305 days was atypical); *Sealey v. Giltner,* 197 F.3d 578, 589 (2d Cir.1999) (concluding confinement for fewer than 101 days in SHU, plus unpleasant but not atypical conditions, insufficient to raise constitutional claim). Although the Second Circuit has generally held that confinement in SHU for 101 or fewer days without additional indicia of atypical conditions generally does not confer a liberty interest (*Smart v. Goord,* 441 F.Supp.2d 631, 641 (2d Cir.2006)), it has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealey* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards,* 364 F.3d 60, 65 (2d. Cir.2004) (citing, *inter alia, Ortiz,* 323 F.3d at 195, n. 1).

The undersigned notes that it is unclear what portion of McAllister's relatively brief time in SHU is attributable to the Tier III determination, because it appears that McAllister was already in SHU when the instant disciplinary report was filed. Am. Comp. ¶ 5; Dkt. No. 74–3, Exh. A, at 14. The undersigned also notes that there is no indication that McAllister endured unusual SHU conditions. The only reference McAllister makes to his time in SHU is that, upon his transfer to SHU, several bags of his paperwork were confiscated pursuant to directive 4913. *Id.* ¶ 37. However, review of directive 4913 reveals that the personal and legal property limit set forth in directive 4913 applies to the general prison population and inmates in other forms of segregated confinement. Dkt. No. 49–2, at 5–19. Thus, the fact that McAllister was forced to comply with directive 4913 does not indicate that he was subjected to conditions more severe than the normal SHU conditions or conditions imposed on the general prison population. Dkt. No. 74–3, Exh. A, at 14.

**\*11** Although the record is largely absent of detail of the conditions McAllister faced in SHU, there is also nothing in the record comparing the time McAllister

was assigned and spent in disciplinary confinement with the deprivations endured by other prisoners "in the ordinary course of prison administration," which includes inmates in administrative segregation and the general prison population. *Welch v. Bartlett,* 196 F.3d 389, 394 (2d Cir.1999) (holding that, after *Sandin,* "the relevant comparison concerning duration is between the period of deprivation endured by the plaintiff and periods of comparable deprivation typically endured by other prisoners in the ordinary course of prison administration, including general population prisoners and those in various forms of administrative and protective custody"). Because "[t]he record does not reveal whether it is typical for inmates not being disciplined to spend similar periods of time in similar circumstances," Call's motion for summary judgment should be denied. *Id.* at 394 (citing *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997)).

Accordingly, it is recommended that defendant's motion for summary judgment on this ground be denied.

### b. **Procedural Due Process**

Assuming a liberty interest exists, it must be determined whether McAllister was denied due process at his Tier III hearing. Where disciplinary hearings can result in SHU confinement or loss of good time credit, "[i]nmates are entitled to advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004) (citing *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999)); *see also Wolff,* 418 U.S. at 556; *Sira v. Morton,* 380 F.3d 57, 59 (2d Cir.2004).

### i. **Notice**

McAllister first appears to argue that he was denied procedural due process because the misbehavior report (1) violated unnamed DOCCS rules, regulations, and procedures, and (2) failed to provide him with adequate notice of the charges against him because it did not list the five inmates whose affidavits were confiscated and, thus, impacted his ability to prepare a defense to the charges. Am. Compl. ¶¶ 11–13, 16–17. Although inmates are entitled to advance written notice of the charges, "[t]his

is not to suggest that the Constitution demands notice that painstakingly details all facts relevant to the date, place, and manner of charged inmate misconduct ...." *Sira,* 380 F.3d at 72 (2d Cir.2004) (citing *Wolff,* 418 U.S. at 564). "[T]here must be sufficient factual specificity to permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense." *Id.*

First, to the extent that McAllister's argues that the differing disciplinary reports violated unspecified DOCCS rules, regulations, and procedures (Am.Compl.¶¶ 12–13), this claim must fail. A section 1983 claim is not the "appropriate forum" in which to seek review of a violation of a prison regulation. *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulation or state law ... the allegations asserted must constitute violations of constitutional due process standards."). Next, McAllister fails to plausibly allege the existence of a question of fact whether the difference between the misbehavior reports deprived him of the ability to identify relevant evidence so that he could prepare a defense. Although McAllister's copy of the report was missing the names of the inmates whose affidavits were confiscated, it informed McAllister of the date, time, and location of the alleged violations; the rules alleged to have been violated; and a description of the documents that were confiscated. *Johnson v. Goord,* 305 Fed. Appx. 815, 817 (2d Cir.2009) (concluding where the inmate's copy of misbehavior report included details of alleged violation and charges against him, a sentence missing from the inmate's copy of report did not violate the inmate's due process rights). It is clear that the discrepancy between the misbehavior reports did not affect McAllister's ability to prepare and present a defense. Prior to the hearing, McAllister requested as witnesses the five inmates whose affidavits were found during the property search. Indeed, the record demonstrates that McAllister was able to both identify the documents referenced in the misbehavior report and address them at the hearing. Dkt. No. 74–3, Exh. A at 45, 47–48.

**\*12** Thus, because he received sufficient notice of the charges against him and was able to prepare and present a defense on his behalf, McAllister fails to raise a question of fact as to whether he was denied sufficient notice of the charges against him.

ii. **Hearing Officer Bias/Pre-determination of Guilt**

McAllister also contends that his procedural due process rights were violated because Call was biased against him and prejudged his guilt. The Fourteenth Amendment guarantees inmates the right to the appointment of an unbiased hearing officer to address a disciplinary charge. *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996). An impartial hearing officer "does not prejudge the evidence" and is not to say "how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990); *see also Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard"). However, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Russell v. Selsky,* 35 F.3d 55, 60 (2d Cir.1996). "A hearing officer may satisfy the standard of impartiality if there is 'some evidence in the record' to support the findings of the hearing." *Nelson v. Plumley,* No. 9:12–CV–422, 2014 WL 4659327, at *11 (N.D.N.Y. Sept. 17, 2014) (quoting *Allred v. Knowles,* No. 06–CV–0456, 2010 WL 3911414, at * 5 (W.D.N.Y. Oct. 5, 2010) (quoting *Waldpole v. Hill,* 472 U.S. 445, 455 (1985)). However, "the mere existence of 'some evidence' in the record to support a disciplinary determination does not resolve a prisoner's claim that he was denied due process by the presence of a biased hearing officer." *See Smith v. United States,* No. 09–CV–729, 2012 WL 4491538 at *8 (N.D.N.Y. July 5, 2012).

Prison officials serving as hearing officers "enjoy a rebuttable presumption that they are unbiased." *Allen,* 100 F.3d at 259. "Claims of a hearing officer bias are common in [inmate section] 1983 claims, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington v. Afify,* 968 F.Supp.2d 532, 541 (W.D.N.Y.2003) (citing cases). "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Johnson v. Fernandez,* No. 09–CV–626 (FJS/ATB), 2011 WL 7629513, at *11 (N.D.N.Y. Mar. 1, 2011) (citing *Francis,* 891 F.2d at 46).

McAllister first argues that Call prejudged his guilt. He supports this contention by pointing to moments during the Tier III hearing where Call expressed his belief that McAllister's possession of affidavits signed by other inmates was sufficient to support a violation of prison rules 113.15 and 180.17. Am. Compl., ¶¶ 13, 15, 23–25, 36. Here, however the challenged affidavits were not evidence that Call prejudged because he had the opportunity to review the affidavits and did so at the hearing. Although McAllister disagreed with Call's opinion that possession of such documents would be a *per se* violation of the rules, Call's assertion of belief in this matter was an opinion he reached following his personal review of this evidence. *See Johnson v. Doling,* No. 05–CV–376, 2007 WL 3046701, at * 10 (N.D.N.Y. Oct. 17, 2007) (holding that where the "[p]laintiff was provided the opportunity to testify, [and] call and question witnesses .... [d]isagreement with rulings made by a hearing officer does not constitute bias"). Thus, it does not appear that Call prejudged this evidence.

**\*13**  To support his claim that Call exhibited bias and partiality against him in the Tier III hearing, McAllister points out that, after he objected to the misbehavior report for failing to provide him sufficient notice of the documents confiscated, Call read the portion of the misbehavior report describing the documents as "[a]rticles of paper which appear to be legal work including some signed affidavits," and stated "that didn't ring a bell for you?" *Id.* ¶¶ 19, 32). When read in context, this statement does not establish bias on Call's part, rather it appears to be a genuine question. Though it may be said that Call could have couched this question in a kinder manner, this statement does not demonstrate bias. Moreover, that the Tier III determination was reversed on appeal, without more, is not evidence of bias or other due process violation. *Eng v. Therrien,* No. 04–CV–1146, 2008 WL 141794, at *2 (N.D.N.Y. Jan. 11, 2008).

Thus, McAllister fails to plausibly allege the existence of question of fact whether Call prejudged his guilt or was otherwise biased in the Tier III hearing.

iii. **Failure to Investigate**

McAllister next suggests that he was denied procedural due process because Call declined to interview the law library officer. Am. Compl. ¶ 29. Call permitted McAllister to present testimony on his behalf and afforded him the opportunity call witnesses. Had McAllister wished to hear testimony from the law library officer, he could have requested the law library officer as a witness. *Wolff,* 418 U.S. at 566 (inmates have a right to call

witnesses in their defense at disciplinary hearings). That Call found it unnecessary to independently interview the law library officer—especially where McAllister did not demonstrate that his testimony would be relevant —does not result in a denial of due process because "[t]here is no requirement ... that a hearing officer assigned to preside over a disciplinary hearing conduct an independent investigation; that is simply not the role of a hearing officer." *Robinson v. Brown,* No. 9:11–CV–0758, 2012 WL 6799725, *5 (N.D.N.Y. Nov. 1, 2012).

Accordingly, McAllister fails plausibly raise a due process violation based on Call's alleged failure to investigate.

### iv. **Confidential Witness**

To the extent it can be discerned, McAllister contends that he was denied due process because Call relied on confidential witness testimony, yet failed to provide him with advance notice of the confidential witness and refused to inform him of his or her identity or the nature of the testimony. Am. Compl. ¶¶ 30–34. The Second Circuit has held that a hearing officer must perform an independent assessment of a confidential informant's credibility for such testimony to be considered reliable evidence of an inmate's guilt. *Sira,* 380 F.3d at 78 (noting that, "when sound discretion forecloses confrontation and cross-examination, the need for the hearing officer to conduct an independent assessment of informant credibility to ensure fairness to the accused inmate is heightened.").

 **\*14** Here, the record provides no indication that Call independently assessed the credibility and reliability of the confidential witness. The confidential witness form merely states that Call "was provided confidential information relating to the misbehavior report ." Dkt. No. 74–3, at 13. Similarly, Call does not provide whether or how he performed an assessment of the witness's credibility. *Id.* at 4. Therefore, there exist questions of fact whether Call deprived McAllister of due process by relying on this testimony without an independent assessment of the witness's credibility.

To the extent that McAllister argues that he was denied due process by Call's decision to refuse to disclose the content of the confidential witness's testimony, the law in this circuit provides that where a prison official decides to keep certain witness testimony confidential, he or she "must offer a reasonable justification for their actions, if not contemporaneously, then when challenged in a court action." *Sira,* 380 F.3d at 75 (citing *Ponte v. Real,* 471 U.S. 491, 498 (1985)). Although "[c]ourts will not readily second guess the judgment of prison officials with respect to such matters ... the discretion to withhold evidence is not unreviewable...." *Id.* (citations omitted). Here, Call failed to provide his rationale for refraining to share the substance of this testimony, stating merely that McAllister could not be told the substance of the testimony because "it is by definition it is ... confidential." Dkt. No. 74–3, at 74. As Call presented no reason to justify withholding the identity or substance of the confidential witness's testimony, McAllister presents a viable due process claim based on the nondisclosure of this evidence. *Sira,* 380 F.3d at 76.

Accordingly, Call's motion for summary judgment should be denied on this ground.

### v. **Some Evidence**

"Once a court has decided that the procedural due process requirements have been met, its function is to determine whether there is some evidence which supports the decision of the [hearing officer]." *Freeman v. Rideout,* 808 F.2d 949, 954 (2d Cir.1986) (citations omitted). In considering whether a disciplinary determination is supported by some evidence of guilt, "the relevant question is whether there is any evidence in the record [before the disciplinary board] that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill,* 472 U.S. 445, 455–56 (1985) (citations omitted); *Sira,* 380 F.3d at 69. The Second Circuit has interpreted the "some evidence" standard to require "reliable evidence" of guilt. *Luna,* 356 F.3d at 488.

In making his determination, Call relied upon McAllister's testimony and statements, testimony of a confidential witness, the misbehavior report, and the legal documents confiscated during the property search. Dkt. No. 74–3, at 4. As noted, based on the record provided, Call did not perform an independent assessment of the witness's credibility. Thus, Call's reliance on confidential testimony would be insufficient to support a finding of guilt. *Taylor v. Rodriguez,* 238 F.3d 188, 194 (2d Cir.2001) (determining that reliance on confidential informant's testimony

insufficient to provide "some evidence" of guilt where there was no independent examination of indicia relevant to informant's credibility). The remaining evidence relied upon—McAllister's testimony, the misbehavior report, and the affidavits—does not constitute some evidence of guilt, as required by the Due Process clause.

**\*15** The affidavits alone do not constitute some evidence of guilt because mere possession of affidavits signed by other inmates would not violate prison rules 113.15 and 180.17 were it true that these documents were McAllister's property and drafted solely for his benefit. Similarly, although a written misbehavior report may serve as some evidence of guilt, such is the case where the misbehavior report charges the plaintiff for behavior that the author of the misbehavior report personally witnessed. *Creech v. Schoellkoph,* 688 F.Supp.2d 205, 214 (W.D.N.Y.2010) (citations omitted) (misbehavior report drafted by officer who personally observed plaintiff possess and transfer pieces of sharpened metal to another inmate constituted some evidence of guilt). In this case, where a determination of guilt would appear to turn on knowledge of the ownership of the documents and an understanding of the circumstances under which the papers were drafted, a misbehavior report which merely states that papers appearing to be legal work signed by other inmates were found in McAllister's property, it does not establish a per se violation of rules 113.15 and 180.17. *See Hayes v. Coughlin,* No. 87 CIV. 7401, 1996 WL 453071, at \*3 (S.D.N.Y. Aug. 12, 1996) ("if a misbehavior report can serve as 'some evidence' for a hearing decision and thereby insulate a hearing from review, there would be little point in having a hearing"); *see also Williams v. Dubray,* No. 09–CV–1298, 2011 WL 3236681, at \*4 (N.D.N.Y. July 13, 2011) (holding that there were questions of fact whether the determination was based upon some evidence of guilt where the hearing officer relied on misbehavior report that was based on a corrections officer's unsupported accounts, without additional evidence to support its charges). Thus, absent additional evidence that these papers belonged to other inmates or that McAllister drafted the documents for other inmates' use, the fact that the misbehavior report identified these documents as being found in McAllister's secured property does not constitute reliable evidence of guilt.

Finally, McAllister's testimony does not constitute reliable evidence of guilt. In response to the charge of violating rule 113.15, McAllister testified that the affidavits were

his property because he drafted them solely as evidence in his personal litigation against the Department of Probation. Similarly, in defense of the charge for violating rule 180.17, McAllister repeatedly testified that he did not provide legal assistance to the inmates in question because the affidavits were written solely to serve as supporting evidence in his personal action, the inmates were aware that they would receive no legal benefit as a result, and he did not receive any compensation from the inmates. Regardless whether Call considered McAllister's testimony to be credible, without some other reliable evidence, such as, perhaps, a statement from one of the other inmates claiming that he signed the affidavit under the belief that McAllister would provide him with legal assistance, McAllister's testimony denying violations of the charged prison rules would not constitute some evidence of guilt.

**\*16** Accordingly, it is recommended that Call's motion for summary judgment be denied as to McAllister's procedural due process claim.

### c. **Directive 4913**

McAllister further argues that, as a result of the SHU placement, he suffered an unconstitutional deprivation of his legal and personal property because he was required to comply with the limits set forth in directive 4913. This Court has already ruled upon this claim when it was raised at earlier stages. In deciding Call's motion for summary judgment on the McAllister's first complaint, this Court held that the directive did not violate his Fourteenth Amendment rights:

> Directive # 4913 was reasonably related to valid institutional goals given DOCCS' responsibility to provide for the health and safety of its staff and inmates and the alternatives provided to inmates in being able to seek exceptions and choose which four or five draft bags of material would remain with them. Moreover, the rules were neutral and reasonably related to the ultimate goals of the facility, security and safety.

*McAllister v. Fischer,* 2012 WL 7681635, at *12 (N.D.N.Y. July 6, 2012) (Dkt. No. 55, at 22–23), *Report and Recommendation adopted by* 2013 WL 954961 (N.D.N.Y. Mar. 12, 2013) (Dkt. No. 58), *appeal dismissed* 2d Cir. 13–111 (Jan. 13.2014). Further, the Court concluded that directive 4913 "did not violate[ ] McAllister's Fourteenth Amendment rights" and was "reasonably related to valid institutional goals." Dkt. No. 55, at 23–24; Dkt. No. 58. Thus, any such claim is barred by the law of the case. *Arizona v. California,* 460 U.S. 605, 618 (1983) (citations omitted); *see also United States v. Thorn,* 446 F.3d 378, 383 (2d Cir.2006) (internal quotation marks and citations omitted) ("The law of the case doctrine counsels against revisiting our prior rulings in subsequent stages of the same case absent cogent and compelling reasons ....")); *Arizona,* 460 U.S. at 618 (citations omitted); *Wright v. Cayan,* 817 F.2d 999, 1002 n. 3 (2d Cir.1987) (citations omitted) ("Even when cases are reassigned to a different judge, the law of the case dictates a general practice of refusing to reopen what has been decided.").

Accordingly, it is recommended that defendant's motion for summary judgment be granted on this ground.

### 2. Equal Protection

McAllister's only reference to an equal protection violation in the amended complaint is his conclusory claim that Call's reference to a confidential witness during the Tier III hearing was in violation of his right to equal protection. Am. Compl. ¶ 31. Further, in this Court's previous order, McAllister's equal protection claim was dismissed for failure to demonstrate, among other things, that he was part of a protected class or that he was treated differently from any similarly-situated inmates. Dkt. No. 58, at 4; Dkt. No. 55, at 24–25. Thus, any such claim would also be barred by the law of the case. *Thorn,* 446 F.3d at 383. Regardless, McAllister's equal protection claim must also fail for the reasons discussed *infra.*

*\*17* To establish an equal protection violation, a plaintiff must show that "he was treated differently than others similarly situated as the result of intentional or purposeful discrimination." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005). McAllister has not identified, nor does the record disclose, any basis for a reasonable fact-finder to conclude that he was treated differently from similarly-

situated individuals. Rather, plaintiffs only support for his equal protection claim is the following:

> Call, throughout the entire disciplinary hearing deprive [sic] plaintiff equal protection when he stated: "This is hearing officer Call, this is 2:21 as I was going through my paperwork I realized something that I wanted to point out to Mr. McAllister."

> Defendant Call discriminated against plaintiff when he stated: "I reviewed it this morning the 22nd when it was received again is confidential"

Am. Compl. ¶¶ 31–32. McAllister does not explain how these statements denied him equal protection. McAllister fails to plausibly suggest that he was treated differently from any similarly-situated individuals. Further, even if these statements demonstrate the existence of questions of fact regarding whether McAllister was treated differently from similarly-situated persons, he fails to identify disparity in the conditions "as a result of any purposeful discrimination directed at an identifiable suspect class." *See Dolberry v. Jakob,* No. 11–CV–1018, 2014 WL 1292225, at *12 (N.D.N.Y. Mar. 28, 2014).

Accordingly, it is recommended that defendant's motion on this ground should be granted.

### G. Qualified Immunity

Call contends that, even if McAllister's claims are substantiated, he is entitled to qualified immunity. The doctrine of qualified immunity is an affirmative defense which "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan,* 555 U.S. 223, 244 (2009). Even if a disciplinary disposition is not supported by "some evidence," prison officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Luna,* 356 F.3d at 490 (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)) (internal quotation marks omitted). This assessment is made "in light of the legal rules that were clearly established at the time it was taken." *Wilson,* 526 U.S. at 614; *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991). To determine whether a state official is entitled to qualified immunity for acts taken during the course of his or her employment, a reviewing court is to

determine: "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the [official] to believe the conduct at issue was lawful." *Phillips v. Wright,* 553 Fed. Appx. 16, 17 (2d Cir.2014) (citing *Gonzalez v. City of Schenectady,* 728 F.3d 149, 154 (2d Cir.2013)).

**\*18** First, as discussed, McAllister presented a viable due process claim that the determination was not based on some evidence of guilt because Call (1) relied on confidential witness testimony without making an independent assessment of the witness's credibility and (2) did not otherwise have sufficient reliable evidence to support his finding of guilt. McAllister has also raised issues of fact whether the remaining evidence relied upon —the misbehavior report, McAllister's testimony and statements, and the confiscated legal papers—provided reliable evidence of guilt.

Addressing the second prong of the analysis, there is a clearly-established right to procedural due process protections, including the right to have a disciplinary determination be based on some evidence of guilt. There is also a clearly-established right to an independent assessment of confidential witnesses performed where a hearing officer relies on the witness's testimony (*Vasquez v. Coughlin,* 726 F.Supp. 466, 472 (S.D.N.Y.1989) (right clearly established by 1986); see also *Sira,* 380 F.3d at 80). Further, although there is no bright-line for what suffices as "some evidence" in every prison disciplinary proceeding (*Woodard v. Shanley,* 505 Fed. Appdx. 55, 57 (2d Cir.2012)), there were questions of fact surrounding the allegedly reliable evidence demonstrating that McAllister was in possession of other inmates' legal documents or that he provided them with unauthorized legal assistance. *Cf. Turner v. Silver,* 104 F.3d 354, at \*3 (2d Cir.1996) (some evidence to support determination that the defendant violated rule against unauthorized legal assistance where documentary evidence indicated the plaintiff received payment from other inmates, author of misbehavior report testified regarding an interview with informant who implicated defendant, prison official testified that inmate told her he had been charged for law library services and inmate testified the same). Call both failed to perform an independent assessment of the confidential witness's credibility and provided no explanation for why both the identity of the witness and the substance of his or her

testimony could not be disclosed to McAllister. *Sira,* 380 F.3d at 75 (citing *Ponte,* 471 U.S. at 498).

Thus, given the state of the law regarding the rights to which an inmate is entitled in his disciplinary hearing, it was not objectively reasonable for Call to have believed that (1) he need not perform an independent assessment of the witness credibility or (2) the misbehavior report, confiscated affidavits, and McAllister's consistent testimony and statements, without more, sufficiently supported a determination that McAllister violated rules 113.15 and 180.17.

Accordingly, defendant's motion for summary judgment should be denied on this ground.

### IV. **Conclusion**

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion for summary judgment (Dkt. No. 74) be

**\*19** 1. **GRANTED** insofar as:

    a. dismissing plaintiff's First Amendment claims;

    b. dismissing plaintiff's Eighth Amendment claims;

    c. dismissing plaintiff's challenge to the constitutionality of Directive 4913;

    d. defendant's Eleventh Amendment immunity defense;

2. **DENIED** as to:

    a. plaintiff's Fourteenth Amendment procedural due process claims;

    b. defendant's qualified immunity defense.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation." N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)).

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Cir.1993); *Small v. Sec'v of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated: October 9, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5475293

Footnotes

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    McAllister is no longer incarcerated and is currently under the supervision of DOCCS.

3    SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population ...." N .Y. COMP.CODES R. & REGS. tit 7, § 300.2(b) (1999). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

4    Rule 113.15 provides that "[a]n inmate shall not purchase, sell, loan, give or exchange a personally owned article without authorization." 7 NYCRR 270.2.

5    Rule 180.17 provides that "[a]n inmate may not provide legal assistance to another inmate without prior approval of the superintendent or designee. An inmate shall not receive any form of compensation for providing legal assistance." 7 NYCRR 270.2.

6    All unpublished decisions referenced herein are appended to this report and recommendation.

7    Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. *Pearce v. Estate of Longo,* 766 F.Supp.2d 367, 376 (N.D.N.Y.2011), *rev'd in part on other grounds sub nom., Pearce v. Labella,* 473 F. App'x 16 (2d Cir.2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); *Kleehammer v. Monroe Cnty.,* 743 F.Supp.2d 175 (W.D.N .Y.2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster ...."); *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

**End of Document**                                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-00497-DNH-TWD   Document 113   Filed 11/13/18   Page 89 of 144

2016 WL 3948100
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jonathan Mena, Plaintiff,
v.
City of New York, et al., Defendants.

No. 13-cv-2430 (RJS)
|
Signed 07/19/2016

**Attorneys and Law Firms**

Jonathan Mena, Stormville, NY, pro se.

Omar Javed Siddiqi, Ryan Glenn Shaffer, New York City Law Department, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

**\*1** Plaintiff Jonathan Mena, who is currently incarcerated and proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Correction Officer Benjamin Eason ("Defendant"), alleging violations of the Eighth Amendment. Now before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Facts [1]

On September 9, 2012, while incarcerated at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, Plaintiff was placed in an intake cell in the OBCC's receiving area, which he shared with two other individuals. (56.1 Stmt. ¶¶ 2–3.) Plaintiff alleges that the cell was extremely cold, vermin-infested, and too small to accommodate three men. (*See* Doc. No. 54-1 ("Compl.") 4, 8.) Plaintiff further alleges that these conditions, coupled with the constant noise made by the two other inmates, prevented him from sleeping for the entire 60-hour period that he was held in the cell. (*See id.* at 4.) Consequently, he asked Defendant, who was on duty, to transfer him to a different cell. (56.1 Stmt. ¶¶ 7–8.) According to Plaintiff, Defendant responded that there was "nothing he could do" about the situation. (*Id.* ¶ 9; *see also* Doc. No. 54-2 ("Mena Dep.") 59:5-8.)

Plaintiff avers that he filed a grievance with the OBCC to complain about his experience in the cell. (*See* Compl. at 7.) The New York City Department of Correction ("DOC") has an administrative grievance procedure, known as the Inmate Grievance and Request Program ("IGRP"), for inmates housed at facilities such as the OBCC. The IGRP, which was available and in effect at all times relevant to this lawsuit, requires that inmates first file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within ten days of the complained-of act. (56.1 Stmt. ¶¶ 11–12; *see also* Doc. No. 54-3 ("IGRP Directive") § IV(D)(1).) The IGRC then attempts to resolve the grievance informally within five days, and if the grievance is not informally resolved, then the inmate may request a formal hearing before the IGRC. (56.1 Stmt. ¶ 12; *see also* IGRP Directive §§ IV(G)-(H).) An inmate may appeal the IGRC's decision to the commanding officer, or her designee, and subsequent appeals may be taken to the Central Office Review Committee ("CORC"). (56.1 Stmt. ¶ 13; *see also* IGRP Directive §§ IV(I)-(J).) The CORC's decision is the final and binding decision of the DOC; if an inmate disputes the decision of the CORC, he may independently appeal to the Board of Correction. (IGRP Directive at 47.) Finally, if an inmate does not receive a timely disposition at any point throughout the grievance process, he has the option of either granting an extension of time to the relevant decisionmaker (i.e., the IGRC, the commanding officer, or the CORC) or appealing and proceeding to the next level of review. (56.1 Stmt. ¶ 14; *see also* IGRP Directive §§ IV(D)(9)(b), (10).)

**\*2** As Plaintiff himself acknowledges, after submitting the grievance and receiving no response, he neither granted the DOC an extension of time nor appealed. (*See* Compl. 7–8; Opp'n 6.) In his Complaint, Plaintiff admits that he is "still waiting" for a disposition of his grievance, but does not indicate any steps he has taken to appeal any decision before the IGRC. (*See* Compl. 7.) In response to a question on the Southern District of New York Prison Complaint form asking a plaintiff to "set forth any additional information that is relevant to the exhaustion of your administrative remedies," Plaintiff repeated a

number of his substantive allegations against the OBCC staff, but did not state any information relevant to the grievance process. (*Id.* at 5.) And in his opposition brief in connection with this motion, Plaintiff again notes that he filed "several grievances about the issues in question," but he does not indicate any specific steps he took to appeal to the IGRC or to pursue any other avenue of appellate review within the IGRP. (Opp'n 6.)

### B. Procedural History

On April 11, 2013, Plaintiff commenced this action by filing a complaint against the City of New York, Correction Officer Jaquon Pickwood ("Pickwood"), Correction Officer Sauda Abdul-Malik ("Abdul-Malik"), and Defendant (collectively, "Defendants"), pursuant to Section 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Doc. No. 1.) On December 9, 2013, Defendants moved to dismiss the Complaint. (Doc. No. 18.) On September 17, 2014, the Court granted Defendants' motion to dismiss with respect to Plaintiff's claims against the City of New York, Pickwood, and Abdul-Malik, and Plaintiff's Fourteenth Amendment claims against Defendant for failure to state a claim upon which relief can be granted, but denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Officer Eason. (Doc. No. 29.) On September 11, 2015, following the completion of discovery, Defendant filed the instant motion for summary judgment, along with his brief and his 56.1 Statement, arguing that Plaintiff failed to exhaust administrative remedies, that his Eighth Amendment conditions of confinement claim failed on the merits, and that in any event, Defendant was entitled to qualified immunity. (Doc. Nos. 53–55, 57.) Defendant also filed a notice pursuant to Local Civil Rule 56.2 alerting Plaintiff of his obligation to submit a responsive statement and informing him of the consequences of not doing so. (Doc. No. 56.) In accordance with Local Rule 56.2, this notice included copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (*Id.*) On October 14, 2015, Plaintiff filed a brief opposing summary judgment and submitted several exhibits (*see* Doc. No. 58), but he failed to submit a responsive 56.1 Statement. Defendant submitted his reply on October 22, 2015. (Doc. No. 59 ("Reply").)

### II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'– that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**\*3** Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court

to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *see also Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund*, No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Even so, the Court "may in its discretion opt to conduct an assiduous review of the record where one of the parties has failed to file such a statement," *Holtz*, 258 F.3d at 73, and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Here, Plaintiff failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56 and sent copies of both rules. (Doc. No. 56). In light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record, which reveals no controverted facts. *See Holtz*, 258 F.3d at 73. In fact, as discussed below, Plaintiff's own submissions confirm the material facts contained in Defendant's Rule 56.1 Statement.

### III. DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (the "PLRA"). The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's

effort to reduce the quantity of prisoner suits" (citations and quotation marks omitted)). Accordingly, "the law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin v. Rivera*, No. 13-cv-7054 (RJS), 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015); *accord Johnson v. N.Y.C. Dep't of Corr.*, No. 13-cv-6799 (CM), 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) ("Assuming that [p]laintiff filed a timely grievance ... and received no response within five business days [,] ... [p]laintiff ... could have taken the next step and requested a hearing."); *Leacock v. N.Y.C. Health Hosp. Corp.*, No. 03-cv-5440 (RMB) (GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99-cv-966 (LMM) (THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if [p]laintiff received no response to his initial grievance, [p]laintiff could have sought the next level of review, in this case, to the prison superintendent.").

**\*4** At the OBCC, where Plaintiff was incarcerated, an inmate must exhaust several layers of review, even if the inmate does not receive a timely disposition at the initial stages. (56.1 Stmt. ¶ 12–14.) Here, as Plaintiff reveals in his own complaint and brief in opposition to the motion for summary judgment, he did not exhaust the OBCC administrative procedure. (Compl. 7–8; Opp'n 6.) Rather, he indicates that he filed a grievance but otherwise did not appeal or seek further review through the IGRP process. (Compl. 7–8 (noting that he is "still waiting" for disposition of his grievances and did not seek review at the next levels within IGRP); Opp'n 6 (noting that he filed "several grievances about the issues in question," but omitting reference to any specific steps taken to appeal)). Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement.

The Court next considers whether there is any basis for excusing Plaintiff's failure to exhaust administrative remedies at the IGRP. Last month, the Supreme Court forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *See Ross*, 136 S. Ct. at 1862 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.") In doing so, the Supreme Court expressly

Case 9:15-cv-00497-DNH-TWD  Document 113  Filed 11/13/18  Page 92 of 144
Mena v. City of New York, Not Reported in F.Supp.3d (2016)
2016 WL 3948100

rejected the Second Circuit's prior framework under *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), and, by extension, *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), which recognized a "special circumstances" exception to the PLRA's exhaustion requirement. *See Williams v. Priatno*, No. 14-4777, ___ F.3d. ___, ___, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception ... permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

Thus, post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are "available" to him. *Ross*, 136 S. Ct. at 1862; *see also* 43 U.S.C. § 1997e(a). An inmate's failure to exhaust may therefore be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Ross*, 136 S. Ct. at 1858–59. The Supreme Court described three scenarios in which administrative procedures could be "officially on the books," but "not capable of use to obtain relief," and therefore unavailable. *Id.* While not exhaustive, these illustrations nonetheless guide the Court's inquiry. *See Williams*, 2016 WL 3729383, at *4 n.2. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross*, 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.*; *see also Booth v. Churner*, 523 U.S. 731, 736, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To meet this high bar, the administrative remedy must be "essentially 'unknowable.'" *Id.* Finally, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

Here, Plaintiff has not alleged – let alone shown – that the administrative procedures at the OBCC were unavailable to him. Although Plaintiff's initial grievance received no response, this alone is insufficient to show that the IGRP acted as a mere dead end. As stated earlier, "the law is well-settled" that an inmate's "failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin*, 2015 WL 3999180, at *3 (collecting authorities). In short, the DOC's untimeliness in this case is not enough to demonstrate the unavailability of an administrative remedy. This is especially true in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of the DOC's failure to respond to a grievance. (*See* IGRP Directive § IV(D) (9)(b), (10).) Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at OBCC are "consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

**\*5** Nor has Plaintiff pointed to any evidence that the IGRP was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially unknowable." *Ross*, 136 S. Ct. at 1859. While the Second Circuit recently found that certain administrative grievance procedures at a different New York State facility met this standard, the Second Circuit's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams*, 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams* was housed in a special housing unit and segregated from the regular prison population; therefore, he gave his grievance complaint to a correction officer to file on his behalf. *Williams*, 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the District Court's dismissal for failure to exhaust. Here, by contrast the IGRP expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review. (*See* IGRP Directive §§ IV(D)(9)(b), (10).) In light of the IGRP's unambiguous directive, Plaintiff has clearly failed to show that the IGRP was "essentially unknowable." *See Ross*, 136 S. Ct. at 1859.

Finally, the Court turns to the third scenario contemplated by the Supreme Court, in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859. Plaintiff has not demonstrated, or even suggested, that prison administrators obstructed or interfered with his access to administrative remedies. *See, e.g.*, *Winston v. Woodward*, No. 05-cv-3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (concluding that plaintiff's failure to exhaust administrative remedies was not excused in light of his "failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering"). Thus, this exception to the exhaustion requirement is also clearly inapplicable.

Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGRP and has failed to offer any facts to prove that administrative remedies were not available to him. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendant's motion for summary judgment is granted. [2]

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Although Plaintiff has paid the filing fee in this action and has not applied to proceed *in forma pauperis*, the Court nevertheless certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith.

The Clerk is respectfully directed to terminate the motion pending at docket number 53, to mail a copy of this order to Plaintiff, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3948100

Footnotes

1    The following facts are drawn from Defendant's unopposed Local Civil Rule 56.1 Statement. (Doc. No. 55 ("56.1 Statement" or "56.1 Stmt.").) In deciding Defendant's motion for summary judgment, the Court has also considered Plaintiff's submission in opposition to summary judgment (Doc. No. 58 ("Opp'n")), and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d. Cir. 2001) (noting that district court "may in its discretion opt to conduct an assiduous review of the record even when" a party has failed to comply with Local Civil Rule 56.1 (citations and quotation marks omitted)).

2    Although Defendant has raised other grounds for summary judgment, including that Plaintiff has failed to establish an Eighth Amendment conditions of confinement claim, and that Defendant is entitled to qualified immunity, the Court finds it unnecessary to address these other arguments because of Plaintiff's failure to exhaust remedies.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-00497-DNH-TWD   Document 113   Filed 11/13/18   Page 94 of 144
Richardson v. Romano, Not Reported in F.Supp.2d (2003)
2003 WL 1877955

KeyCite Yellow Flag - Negative Treatment

Declined to Follow by Stevens v. Goord, S.D.N.Y., June 16, 2003

2003 WL 1877955
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Gordy RICHARDSON, Plaintiff,

v.

Frank ROMANO, Ron Ballard, William Powell,
Bowen and Wesley Iler, Correctional Officers at the
Great Meadow Correctional Facility, Defendants.

No. 00–CV–1076 (LEK/DEP).
|
March 31, 2003.

**Synopsis**
**Background:** Former state inmate brought § 1983 action
against corrections officers, alleging that, while he was
incarcerated, officers assaulted him in retaliation for
filing grievances against them and other corrections
officers. Officers moved to dismiss for failure to exhaust
administrative remedies.

**[Holding:]** Following receipt of report and
recommendation of David E. Peebles, United States
Magistrate Judge, the District Court, Kahn, J., held that
former inmate's failure to exhaust administrative remedies
necessitated dismissal without prejudice.

Motion granted.

West Headnotes (2)

[1]     **Civil Rights**
        Criminal law enforcement;prisons
        Pursuant to Prison Litigation Reform Act
        (PLRA), failure to exhaust administrative
        remedies necessitated dismissal, without
        prejudice, of complaint asserting § 1983 claims
        against state corrections officers based on
        alleged assaults against inmate when inmate

admitted bringing action before exhausting
administrative remedies that were available to
him, even though inmate had subsequently
been released from prison. Civil Rights of
Institutionalized Persons Act, § 7(a), 42
U.S.C.A. § 1997e(a).

7 Cases that cite this headnote

[2]     **Federal Civil Procedure**
        Pleading over
        Under New York law, former state inmate
        could re-file, within six months, § 1983
        action dismissed without prejudice for failure
        to comply with administrative exhaustion
        requirement imposed by Prison Litigation
        Reform Act (PLRA). 42 U.S.C.A. § 1983;
        Civil Rights of Institutionalized Persons Act,
        § 7(a), 42 U.S.C.A. § 1997e(a); McKinney's
        CPLR 205(a).

4 Cases that cite this headnote

*DECISION AND ORDER*

KAHN, J.

**\*1** This matter comes before the Court following a
Report–Recommendation filed on March 3, 2003, by the
Honorable David E. Peebles, United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of
the Northern District of New York. After ten days from
the service thereof, the Clerk has sent the entire file to
the undersigned, including the objections by Defendants,
which were filed on March 10, 2003. It is the duty of
this Court to "make a de novo determination of those
portions of the report or specified proposed findings
or recommendations to which objection is made." 28
U.S.C. § 636(b). "A judge of the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate." *Id.* This Court
has considered the objections and has undertaken a
de novo review of the record and has determined that
Defendants' motion for summary judgment should be
granted.

2003 WL 1877955

## I. Background

Plaintiff Gordy Richardson ("Richardson"), formerly an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his civil rights while he was incarcerated at Great Meadow Correctional Facility ("GMCF"). Richardson claims that Defendants, corrections officers as GMCF, assaulted him in retaliation for filing grievances against them and other corrections officers. Following the announcement of the United States Supreme Court's decision in *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), Defendants moved for summary judgment on the grounds that Richardson failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e(a). Richardson has not responded to this motion.

## II Discussion

[1] 42 U.S.C. § 1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Richardson's complaint clearly concerns prison conditions. *See Porter,* 534 U.S. at 532 ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life...."). Richardson admits that he brought the instant action before exhausting the administrative remedies that were available to him as an inmate at GMCF. Complaint ¶ 4b. Accordingly, under the plain terms of 42 U.S.C. § 1997e(a), it appears that Richardson's complaint must be dismissed for failure to exhaust his administrative remedies. However, there is some dispute as to whether the exhaustion requirement should be applied following a plaintiff's release from prison. *Compare Ahmed v. Dragovich,* 297 F.3d 201, 210 (3d Cir.2002) (holding that the PLRA's exhaustion requirement applies to suits that are filed while the plaintiff is incarcerated but which are not decided until after the plaintiff is released from prison) *with Morris v. Eversley,* 205 F.Supp.2d 234, 241 (S.D.N.Y.2002) (declining to dismiss the plaintiff's complaint for failure to exhaust because, *inter alia,* the plaintiff was released from prison after she filed the complaint).

**\*2** [2] The Magistrate Judge correctly noted that dismissal of a complaint for failure to exhaust must be without prejudice and Richardson may therefore re-file the complaint. [1] *See Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002). The Magistrate Judge also correctly stated that the exhaustion requirement does not apply to any complaints filed by Richardson since his release. *See Greig v. Goord,* 169 F.3d 165, 167 (2d Cir.1999). However, the Court disagrees with the Magistrate Judge's determination that Richardson's complaint should not be dismissed because dismissal would not further the policy considerations underlying the PLRA. In particular, the Magistrate Judge found that the PLRA's goal of eliminating the filing of complaints raising claims which can be resolved through internal processes is not implicated because Richardson may not avail himself of the administrative remedies available to prisoners. In addition, the Magistrate Judge stated that dismissal of Richardson's claim "would be a needless exercise." Report–Recommendation at 14.

Dismissing Richardson's complaint in accordance with the express terms of the PLRA may appear inefficient. However, the Second Circuit has held that a prisoner's complaint asserting unexhausted claims must be dismissed for failure to exhaust, even when the plaintiff is not required to attempt to resolve his claim through the prison's internal procedures following dismissal. *See Neal v. Goord,* 267 F.3d 116, 123 (2d Cir.2001). In *Neal,* the Second Circuit held that a court must dismiss a prisoner's action regarding prison conditions for failure to exhaust even if the prisoner exhausts his administrative remedies during the pendency of the action. *Id.* at 122. While noting that its holding might lead to inefficiencies "in an individual case," the Court determined that allowing inmates to exhaust after commencing an action "undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court." *Id.* at 123.

The Court reaches a similar result here. The PLRA's exhaustion requirement would be undermined if the Court allowed unexhausted claims asserted by a prisoner concerning prison conditions to proceed in federal court because the prisoner has been released during the pendency of the action. The plain terms of the PLRA do not allow for this exception.

Accordingly, it is hereby

ORDERED, that Defendants' motion for summary judgment is GRANTED and Plaintiff's complaint is DISMISSED without prejudice; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 1877955

---

Footnotes

1    The Court notes that it agrees with the Magistrate Judge's determination that under N.Y. C.P.L.R. § 205(a), Richardson
     may re-file his complaint within six months of the dismissal of the instant action. Section 205(a) provides:

         If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure
         to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a
         final judgment on the merits, the plaintiff ... may commence a new action upon the same transaction or occurrence ...
         within six months after the termination provided that the new action would have been timely commenced at the time
         of commencement of the prior action and that service upon defendant is effected within such six-month period.

     N.Y. C.P.L.R. § 205(a). The Second Department has held that an action dismissed for failure to exhaust administrative
     remedies may be re-filed within six months of the dismissal pursuant to N.Y. C.P.L.R. § 205(a). See *Mahony v. Bd. of
     Educ. of Mahopac Cent. Sch. Dist.,* 113 A.D.2d 942, 943, 493 N.Y.S.2d 839 (2d Dept.1985). More recently, the Fourth
     Department held that an action dismissed for failure to comply with a notice of claim statute may be re-filed within six
     months of the dismissal. See *Kretschmann v. Bd. of Educ. of Corning Painted Post Sch. Dist.,* 294 A.D.2d 39, 41–42,
     744 N.Y.S.2d 106 (4th Dept.2002). As the *Kretschmann* Court stated: "[P]laintiff's initial failure to comply with [the notice
     of claim] statute did not render the first action jurisdictionally defective, and a second action was properly commenced
     pursuant to CPLR 205(a)." *Id.* Similarly, Richardson's failure to comply with the PLRA's exhaustion requirement did
     not render the first action jurisdictionally defective. See, e.g., *Arnold v. Goetz,* No. 01 Civ. 8993, 2003 WL 256777, at
     *2 (S.D.N.Y. Feb.4, 2003). Richardson may therefore re-file his complaint within six months pursuant to N.Y. C .P.L.R.
     § 205(a).

---

**End of Document**                                © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 614360
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jesus RODRIGUEZ, Plaintiff,
v.
David ROSNER, Medical Doctor,
Watertown Correctional Facility, Defendant.

No. 9:12–CV–958.
|
Feb. 19, 2013.

**Attorneys and Law Firms**

Jesus Rodriguez, Wallkill, NY, pro se.

Christopher W. Hall, Office of Attorney General, Albany, NY, for Defendant.

***DECISION & ORDER***

THOMAS J. McAVOY, District Judge.

**\*1** This matter brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. Andrew T. Baxter, United States Magistrate Judge, for a Report–Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

No objections to the December 5, 2012 Report–Recommendation were raised by the parties. After examining the record, the Court determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice. Accordingly, the Court adopts the Report–Recommendation for the reasons stated therein.

Thus, it is ordered that: (1) Defendant's motion to dismiss be **GRANTED;** (2) Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**; and (3) Plaintiff's motion for appointment of counsel be **DENIED** as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 614360

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-00497-DNH-TWD    Document 113    Filed 11/13/18    Page 98 of 144
Rodriguez v. Rosner, Not Reported in F.Supp.2d (2012)
2012 WL 7160117

2012 WL 7160117
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jesus RODRIGUEZ, Plaintiff,
v.
David ROSNER, Medical Doctor,
Watertown Correctional Facility, Defendant.

No. 9:12–CV–958 (TJM/ATB).
|
Dec. 5, 2012.

**Attorneys and Law Firms**

Jesus Rodriguez, pro se.

Christopher W. Hall, AAG, for the Defendants.

**ORDER and REPORT–RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Thomas J. McAvoy, Senior United States District Judge.

In this civil rights complaint, plaintiff alleges that defendant Rosner denied plaintiff constitutionally adequate medical care when he refused to prescribe orthopedic boots for plaintiff. (Compl. ¶ 6; Dkt. No. 1). Plaintiff subsequently filed a substantial number of documents in support of his complaint. (Dkt. No. 13). Plaintiff seeks injunctive as well as substantial monetary relief. (Compl.¶ 8).

Presently before the court is defendant's motion to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16). Plaintiff has responded in opposition to the motion to dismiss and has filed a separate motion for appointment of counsel. (Dkt.Nos.19, 20). For the following reasons this court will recommend granting defendant's motion and dismissing this action without prejudice to plaintiff re-filing the action. The court will also order the denial of plaintiff's motion for appointment of counsel without prejudice.

**DISCUSSION**

**I. *Facts***
In his complaint, plaintiff alleges that he is a Type II diabetic, who has had skin grafts taken from the soles of his feet, leaving him with abnormally thin skin on the bottom of his feet. (Compl. Facts ¶¶ 2–3). Plaintiff states that he is in constant discomfort due to his condition, and in May of 2011, while he was incarcerated at Oneida Correctional Facility, he was referred to Dr. Baldauf, a podiatrist, who determined that plaintiff suffered from plantar fascitis. (*Id.* ¶¶ 8–9). Plaintiff states that Dr. Baldauf recommended that plaintiff be fitted for orthopedic boots. (*Id.* ¶ 11). Impressions of plaintiff's feet were taken while he was still at Oneida, and the boots were ordered in July of 2011. (*Id.* ¶ 12).

Prior to receiving his boots, plaintiff was transferred to Watertown Correctional Facility, where he was examined by defendant Dr. Rosner. (*Id.* ¶¶ 13–15). Plaintiff states that he made several requests, but was never given the boots. (*Id.* ¶ 14). Dr. Rosner, who is not a podiatrist, conducted his own examination of plaintiff's feet and determined that plaintiff did not require orthopedic boots. (*Id.* ¶ 16). Plaintiff claims that the medical records supporting Dr. Baldauf's diagnosis and prescription of orthopedic boots was missing from plaintiff's file. (*Id.* ¶ 20). Plaintiff believes that defendant Rosner has intentionally destroyed or hidden these records. (*Id.* ¶ 21).

Plaintiff states that defendant Rosner refused to locate these records, even though plaintiff filed a grievance. (*Id.* ¶ 22). Plaintiff also claims that defendant Rosner "deflects" all investigations by stating that plaintiff refused new state-issued boots, but never mentions that these "new" boots were not the orthopedic boots that plaintiff had been prescribed at Oneida. (*Id* .¶ 23).

**II. *Motion to Dismiss***

**A. Legal Standards**
**\*2** To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp., 550 U.S. at 555*). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp., 550 U.S. at 555* (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)* (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71 (2d Cir.1995)*. The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir.2005)*; *Tapia–Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir.1999)* (*per curiam* ).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)*). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp., 550 U.S. at 555*). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp., 550 U.S. at 555* (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)* (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71 (2d Cir.1995)*. The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir.2005)*; *Tapia–Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir.1999)* (*per curiam* ).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir.2000)*; *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d at 72* (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

### B. Application

**\*3** Subsequent to the filing of his complaint, plaintiff submitted documents in support of the complaint, including a substantial number of medical records, many of which address the issue of his request for special boots. (Dkt. No. 13). Among the records submitted by plaintiff are his grievance documents. (Dkt. No. 13 at 34–43). Plaintiff also included a complaint that he made to the New York State Department of Health, Office of Professional Misconduct,[1] regarding defendant's denial of orthopedic boots and a complaint to the New York State Office of the Inspector General. (Dkt. No. 13 at 44–47, 48). On October 25, 2012, plaintiff filed a letter, attaching a copy of the final response to his grievance by the Central Office Review Committee. (Dkt. No. 15). This court may consider all of the documents attached to the complaint, or submitted in conjunction with the complaint in its decision, although it need not consider all of them in order to decide this motion.

### III. *Exhaustion of Administrative Remedies*

#### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), *42 U.S.C. § 1997e(a)*, requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord, 380 F.3d 670, 675–76 (2d Cir.2004)* (citing *Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)* (exhaustion requirement applies, *inter alia,* to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint,* 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock,* 549 U.S. at 218–19 (citing *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must *complete* the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103. In *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Second Circuit specifically held that completion of the administrative review process includes receiving the decision on the final appeal of a grievance prior to filing the federal action.

**\*4** The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. Comp.Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano,* it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[2] Based on these cases, the Second Circuit developed a "three part

inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006) (citing *Hemphill,* 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies are available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Although the Second Circuit has not explicitly held that *Hemphill* remains good law after *Woodford,* it has applied the three-part inquiry in recent cases. *See, e.g., Macias v. Zenk,* 495 F.3d 37 (2d Cir.2007); *Davis v. State of New York,* 311 F. App'x 397, 399 (2d Cir.2009); *Snyder v. Whittier,* 428 F. App'x 89, 91 (2d Cir.2011).[3]

### 2. Application

Defendant argues that plaintiff has admittedly failed to exhaust his administrative remedies. In his complaint, signed on June 10, 2012, and filed on June 13, 2012, plaintiff states that he filed his grievance on April 2, 2012, received an adverse decision and appealed to the Superintendent on April 26, 2012. (Compl.

¶ 4(b)(i)). Plaintiff states that he appealed the Superintendent's decision to the CORC on May 4, 2012, but that "[n]o decision [was] rendered to date." (*Id.* ¶ 4(b)(ii)). Plaintiff specifically states that the "appeal [is] still pending at CORC in Albany." (*Id.*) Thus, at the time plaintiff filed his complaint, he had not exhausted his administrative remedies.

In the complaint, plaintiff cited no reason for failing to wait for the CORC's decision. The first two *Brownell* factors do not apply to this case. Plaintiff does not claim that the grievance procedure was not "available," nor does he claim that defendant's actions prevented plaintiff from utilizing the available procedures. Thus, the court must consider whether there are "special circumstances" justifying plaintiff's failure to exhaust. Based on the facts in this case, the inquiry will be whether there are special circumstances justifying plaintiff's failure to await the CORC decision.

**\*5** Plaintiff ultimately received a decision by the CORC, dated September 26, 2012, accepting his grievance to the extent that "a referral was submitted for a consult for

special boots for the grievant on 9/18/12." (Dkt. No. 15). Plaintiff filed the CORC decision with the court on October 25, 2012. (*Id.*) While it is true that this decision means that plaintiff has now exhausted his administrative remedies, the Second Circuit has held that a plaintiff must exhaust his remedies *before* filing his federal action, and that the court must dismiss plaintiff's complaint notwithstanding his subsequent exhaustion. 267 F.3d at 122–23.

In plaintiff's response to the motion to dismiss, he argues that he did everything he could to exhaust his remedies, and that he should be excused from obtaining the final decision of the CORC because he had already filed the appeal to the CORC when he filed his federal action, and there were "extenuating medical circumstances." (Dkt. No. 19 at 1–2). The court understands that plaintiff claims he was in pain, however, he received the CORC decision before the court even had an opportunity to rule on any of the merits of his claims. Thus, plaintiff's premature filing of this federal action did not benefit plaintiff or solve his medical problem. The CORC noted that plaintiff was referred for his medical boots in September of 2012. In fact, if plaintiff had waited, he would not have had to request injunctive relief because it appears that he will be afforded his special boots if medically appropriate.

Because plaintiff failed to exhaust his administrative remedies by failing to wait for the CORC's decision, this court is constrained to recommend dismissing this complaint without prejudice. Plaintiff may immediately re-file his action for damages because he has now exhausted his remedies. As in *Neal,* plaintiff may find that requiring him to initiate a new law suit is "judicially inefficient." 267 F.3d at 123. However, the Second Circuit specifically rejected such an argument, finding that "if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance

system at the outset." *Id.* The scenario envisioned by the court in *Neal* occurred in this case, even before the CORC accepted the grievance because plaintiff received the referral to the specialist in September of 2012. This is true, notwithstanding that plaintiff may still file a complaint for damages alone if he chooses to do so.

### IV. *Appointment of Counsel*

Because this court is recommending dismissal without prejudice at this time, plaintiff's motion for appointment of counsel (Dkt. No. 20) is denied as moot. If plaintiff re-files his action, he may request appointment of counsel at the appropriate time.

**WHEREFORE,** based on the findings above, it is

**\*6 RECOMMENDED,** that defendant's motion to dismiss (Dkt. No. 16) be **GRANTED,** and the complaint **DISMISSED WITHOUT PREJUDICE TO REFILING,** and it is further

**ORDERED,** that plaintiff's motion for appointment of counsel (Dkt. No. 20) is **DENIED AS MOOT AT THIS TIME.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 7160117

---

Footnotes

1    This set of documents includes plaintiff's complaint, the Department's response, plaintiff's letter objecting to the Department's conclusion, and the Department's review of its action. (Dkt. No. 13 at 44–47).

2    *See Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride,* 380

F.3d 649 (2d Cir.2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

3    This court also notes that, based upon the concurring opinion in *Woodford,* it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford,* Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford* ] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford,* 548 U.S. at 104 (citing *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir.2004); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)) (Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates.*" *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

---

**End of Document**                                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    5

Rossi v. Fischer, Not Reported in F.Supp.3d (2015)

2015 WL 769551

2015 WL 769551
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Randolph ROSSI, Plaintiff,
v.
Brian FISHCER, et al., Defendants.

No. 13–cv–3167 (PKC)(DF).
|
Signed Feb. 24, 2015.

*MEMORANDUM AND ORDER*

CASTEL, District Judge.

**\*1** Plaintiff Randolph Rossi, proceeding *pro se,* brings this action against officials of the New York State Department of Corrections and Community Supervision ("DOCCS"). In his Amended Complaint, plaintiff alleges that defendants violated, and continue to violate, his constitutional rights by denying him the right to freely practice his Rastafarian faith while incarcerated. He brings an action asserting violations of the First and Fourteenth Amendments and affirmatively disaffirms any claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Defendants move to dismiss the Amended Complaint for failure to exhaust claims under the Prisoner Litigation Reform Act ("PLRA"), failure to state a claim under the Free Exercise Clause, failure to meet the standards for injunctive relief, lack of personal involvement of certain defendants, and qualified immunity.

For the reasons stated below, the motion to dismiss is granted in part and denied in part. Plaintiff exhausted his administrative remedies as to certain claims and exhaustion is excused as to others. Certain allegations state a claim for relief, but plaintiff fails to plausibly allege a violation under the Free Exercise Clause, Establishment Clause, or Equal Protection Clause with regard to other claims. Defendants' motion to dismiss for lack of personal involvement fails. Finally, defendants have not demonstrated entitlement to qualified immunity at the pleading stage.

BACKGROUND

Plaintiff Rossi is a practicing Nyahbinghi Rastafarian currently incarcerated at the Woodbourne Correctional Facility, maintained by DOCCS. (*See* Amended Complaint ("Am.Compl."), ¶ 3.) He brings this action against the following employees of DOCCS: Brian Fischer, [1] Commissioner of DOCCS; Catherine Jacobsen, Acting Deputy Commissioner for Program Services; Jeff McKoy, [2] Deputy Commissioner for Program Services; Cheryl Morris, Director for Ministerial, Family, and Volunteer Services; Mark Leonard, Director of Ministerial Family and Volunteer Services; Robert Cunningham, Superintendent for the Woodbourne Correctional Facility; Moses Santiago, Coordinating Chaplain; and Dorothy Davis, Drug Counselor at Woodbourne. (*Id.* ¶ ¶ 4–11.) Plaintiff asserts that defendants Fischer, Jacobsen, McKoy, Morris, Leonard, and Cunningham "are responsible for all rules, policies, regulations, and directives governing the religious rights of prisoners under their care and custody." (*Id.* ¶ 13.) He claims that "[d]efendants have denied plaintiff his right to practice his faith in accordance with the traditions, customs, and tenets of Rastafari." (*Id.*)

First, plaintiff claims that he has been denied his right to celebrate, in a manner consistent with his faith, the holy days of April 21, May 25, August 17, and October 7. (*Id.* ¶¶ 15–18.) Specifically, plaintiff requests that these four Rastafari holy days be added to the religious calendar with designations that permit plaintiff to (a) refrain from working or attending programs, (b) attend a congregate worship service, and (c) eat a holy day meal with the Rastafarian inmate community. [3] (*Id.;* Hearing before Magistrate Judge Debra Freeman, July 8–9, 2014 ("July Tr."), pp. 82–83.) Plaintiff further requests that April 21 and August 17 be designated as "family events." [4] (Am. Compl., ¶ 16; July Tr., p. 82.) During the pendency of plaintiff's motion, DOCCS added all of the holy days at issue to its "Religious Holy Day Calendar," with varying limitations regarding how each day may be observed. (Religious Holy Day Calendar, Revised July 29, 2014 ("Revised Calendar"), p. 25 (Dkt.82–1).) The revised DOCCS calendar, which was submitted to Magistrate Judge Freeman on the preliminary injunction motion, allows members of the Rastafari faith to be exempt from work and programming, attend a worship service, and share a holy day meal on August 17 and October 7. (*Id.*) For April 21, DOCCS only permits a congregate worship

service and for May 25, DOCCS does not authorize any of these three designations. (*Id.*) The revised calendar does not designate any of the four holy days at issue as "family events." (*Id.*)

 **\*2** Second, plaintiff claims that defendants have denied him the right to add food items to the holy day meal menu, giving the "Department of Nutritional Services unfettered authority to dictate the dietary laws of the Rastafarian community for holy day celebrations." (Am.Compl., ¶ 27.) He concludes that DOCCS's "Nutritional Services is in effect acting as an ecclesiastical body for the Rastafarian community," in violation of the First and Fourteenth Amendments. (*Id.* ¶¶ 27, A.9.)

Third, plaintiff alleges that Rastafarians at Woodbourne are forced to hold congregate worship services on Wednesdays instead of Fridays, the day of worship Rastafarians traditionally observe. (*Id.* ¶ 26.) Defendant Cunningham denied plaintiff's grievance on the basis that "there was no room available for Rastafarians to conduct congregate worship on Fridays." (*Id.*)

Fourth, plaintiff claims that defendants have denied him the right to wear the Rastafarian religious turban brought to him by his wife.[5] (*Id.* ¶¶ 20–22.) After wearing the turban his wife sent him for two months, a correction sergeant told plaintiff that he was no longer permitted to wear the headgear. (*Id.* ¶ 20.) The sergeant told plaintiff that according to defendant Santiago, the Coordinating Chaplain, the only religious headgear for Rastafarians was a Tsalot Kob. (*Id.* ¶ 21.) Plaintiff asserts that the Tsalot Kob is "restricted to members of the Ba Beta Kristiyan Church of Haile Selassie I (a Christianized House or Mansion within Rastafari)," and does not apply to the Rastafari sect that plaintiff adheres to, the Nyahbinghi "mansion." (*Id.* ¶¶ 3; 20–21.) At no time did defendant Santiago speak to plaintiff to determine the religious significance of his turban. (*Id.* ¶ 22.) Plaintiff complied with the sergeant's order to mail home his turban, and subsequently filed a grievance that was denied by defendant Cunningham. (*Id.* ¶¶ 21–22.)

Fifth, plaintiff challenges Directive 4760, which requires religious groups engaging in fundraising activities to apply for Special Purpose Organization ("SPO") status. (*Id.* ¶ 23.) He explains that SPO status subjects religious groups to the same mandates as non-religious inmate organizations, including the requirement that

each organization surrender half of the funds it raises to the Inmate Occupational Therapy Fund ("IOTF") for the benefit of the general inmate population. (*Id.*) Plaintiff challenges this requirement, as it applies to Rastafarians, because he claims it has "the effect of a tax on religion" and burdens the Rastafarians' ability to purchase necessary materials for congregate services, religious classes, and holy day celebrations. (*Id.* ¶ 24.)

Sixth, plaintiff claims that defendants violated his First and Fourteenth Amendment rights when they denied his request to gain access to spiritual and religious advisers (*Id.* ¶¶ 19, A(7) .) Defendant Morris denied plaintiff's request for advisers on security grounds, and defendant McKoy upheld Morris's determination after plaintiff sent McKoy a letter seeking intervention. (*Id.* ¶ 19.) Plaintiff claims that "[o]ther religious groups are allowed to have religious and spiritual advisors without breaching security concerns." (*Id.*)

 **\*3** Finally, plaintiff claims that defendant Davis, a drug counselor at Woodbourne, falsely reported that plaintiff admitted to using marijuana for religious rituals to justify recommending him to a drug treatment program. (*Id.* ¶ 28.) Davis asked plaintiff in an interview about the "ritual use of marijuana within the Rastafarian faith." (*Id.*) "When plaintiff responded to defendant's request, defendant Davis put in her report that plaintiff admitted using marijuana for religious rituals only," despite the fact that plaintiff claims he "denied ever using substances whatsoever," including marijuana. (*Id.*)

Plaintiff seeks declaratory, injunctive, and monetary relief, including compensatory and punitive damages. (*Id.* ¶¶ A–C.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 8, 2013 (Dkt.2), and filed an Amended Complaint on November 19, 2013. (Dkt.11.) Plaintiff moved for a preliminary injunction to enjoin defendants "from continuing to enforce the policies being challenged in this proceeding." (Dkt.17.) Magistrate Judge Debra Freeman, to whom the preliminary injunction motion was referred to hear and report, bifurcated plaintiff's motion on the basis of the temporal proximity of the relief sought. Magistrate Judge Freeman issued a Report and Recommendation ("R & R") as to plaintiff's ability to celebrate April 21 as a holy day (Dkt.27), and a Supplemental R & R, reexamining some

of the issues regarding April 21 and addressing the remaining claims raised by plaintiff's motion. (Dkt.89.) The Court adopted both the R & R (Dkt.37) and the Supplemental R & R. (Dkt.103.) Plaintiff's motion was granted, to the extent that defendants were mandatorily enjoined, pending judgment on the merits, to: (1) permit plaintiff to wear a Rastafari religious turban; (2) allow plaintiff to observe all four of the Rastafari holy days at issue in his motion by (a) refraining from working or attending programs, (b) attending a congregate worship service, and (c) sharing a holy day meal with other Rastafarian inmates; and (3) provide space for Rastafari Sabbath worship services on Friday afternoons, or, at least, pending the final resolution of the case on its merits, to provide an alternative accommodation for such services on Friday evenings. (Order Adopting Supp. R & R.)

Defendants now move to dismiss plaintiff's Amended Complaint in its entirety. (Dkt.56.)

LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). " 'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' " rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 555). In considering a Rule 12(b) (6) motion to dismiss, all non-conclusory factual allegations are accepted as true, *see id.* at 678–79, and all reasonable inferences are drawn in favor of the plaintiff. *See In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (per curiam). Moreover, plaintiff's *pro se* pleadings are given a liberal and generous construction and are read "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal quotation marks omitted).

DISCUSSION

I. Exhaustion of Administrative Remedies

**\*4** The exhaustion requirement of the Prison Litigation Reform Act ("PLRA") "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle,* 534 U.S. 516, 532 (2002); 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory before an action is commenced. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), *overruled on other grounds, Porter,* 534 U.S. at 532. The Second Circuit indicated in *Neal,* that "[s]ubsequent exhaustion after suit is filed ... is insufficient" to satisfy the PLRA. *Id.*

While the PLRA's exhaustion requirement is "mandatory," *Woodford v. Ngo,* 548 U.S. 81, 85 (2006), certain caveats apply. *See Hemphill v. N.Y.,* 380 F.3d 680, 686 (2d Cir.2004). A plaintiff's failure to exhaust administrative remedies may be excused if: (1) administrative remedies were not available; (2) defendants forfeited their affirmative defense of non-exhaustion by failing to raise or preserve it or are estopped from raising non-exhaustion because their own actions inhibited the inmate from exhausting his claims; or (3) "special circumstances" have been plausibly alleged that justify the prisoner's failure to comply with the exhaustion requirements. [6] *Id.*

"A court may not dismiss for failure to exhaust administrative remedies unless it determines that such remedies are available." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004) (alterations omitted) (quoting *Snider v. Melindez,* 199 F.3d 108, 114 (2d Cir.1999)). Courts must look at the applicable set of grievance procedures when determining the availability of an administrative remedy. *Id.* Plaintiff, as an inmates of a New York State correctional facility, is subject to a three-step, administrative procedure for inmate grievances called the Inmate Grievance Program ("IGP"). *See* 7 N.Y.Codes R. & Reg. ("N.Y.C .R.R.") § 701.5. The first step in the IGP is to file a grievance with the Inmate Grievance Resolution Committee (the "IGRC"). *Id .* § 701.5(b). After receiving a response from the IGRC, an inmate has seven calendar days in which to appeal to the superintendent. *Id.* § 701.5(c). Within seven calendar days of receiving a response from the superintendent, the inmate then must appeal to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The CORC is required to render a decision on each appeal and transmit its decision within 30 calendar days from the time the appeal was received. *Id.*

A number of federal circuit courts have held that a failure to respond to a grievance within the time limit prescribed by the prison grievance process renders an administrative

remedy unavailable for purposes of exhaustion. *See Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir.2002); *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002); *Foulk v. Charrier,* 262 F.3d 687, 698 (8th Cir.2001); *Underwood v. Wilson,* 151 F.3d 292, 295 (5th Cir.1998). While the Second Circuit has not directly addressed this issue, it has treated the decision cited above favorably. *See Hemphill,* 380 F.3d at 686 n. 6 (citing to the cases above and noting that when an inmate does not receive a response to a grievance there may be a question as to whether administrative remedies were available); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004) (citing favorably to *Underwood* and *Foulk* with regard to availability of administrative remedies). The Second Circuit in *Abney* cited to *Hemphill* for the proposition that "exhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance ." 380 F.3d at 667.

**\*5** Judges in this district, including the undersigned, have also agreed with the proposition that administrative remedies may be deemed unavailable when the prison fails to timely respond to a grievance. *See Peoples v. Fischer,* 11–cv–2694 (SAS), 2012 WL 1575302, at \*6 (S.D.N.Y. May 3, 2012) *on reconsideration in part,* 898 F.Supp.2d 618 (S.D.N.Y.2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination." (alterations, internal quotation marks, and citation omitted)); *Manos v. Decker,* 03–cv–2370 (PKC), 2005 WL 545215, at \*4 (S.D.N.Y. Mar. 7, 2005) (asserting that *Abney* "held in part that administrative remedies are unavailable when prison officials fail to respond to grievances within the time period prescribed by regulation"); *Dimick v. Baruffo,* 02–cv–2151 (LMM), 2003 WL 660826, at \*4 (S.D.N.Y. Feb. 28, 2003) (holding that plaintiff's claims were properly exhausted where CORC rendered an untimely decision and plaintiff filed his complaint almost two months after CORC had been required to respond pursuant to the prison grievance procedures). *But see Bennett v. Wesley,* 11–cv–8715 (JMF), 2013 WL 1798001, at \*6 (S.D.N.Y. Apr. 29, 2013) ("[T]he Court of Appeals has not adopted the position that a delay in responding to a grievance demonstrates *per se* unavailability." (alterations omitted) (quoting *Mateo v. O'Connor,* 10–cv–8426 (LAP), 2012 WL 1075830, at \*7 (S.D.N.Y. Mar. 29, 2012)); *Rivera v. Anna M. Kross Ctr.,*

10–cv–8696 (RJH), 2012 WL 383941, at \*4–5 (S.D.N.Y. Feb. 7, 2012) (asserting that the Second Circuit has declined to hold that administrative remedies are deemed unavailable when a plaintiff receives no response from prison authorities within the prescribed time limits.)

Here, defendants argue that some of plaintiff's claims were not exhausted before plaintiff brought this action. (Def. Memo in Support of Motion to Dismiss ("Def.MTD"), pp. 46.) Defendants show that CORC's decision regarding plaintiff's appeal of his May 2013 grievance was issued after the filing of both the original Compliant and the Amended Complaint. (*Id.* at 5.) The original Complaint was filed on May 8, 2013, the Amended Complaint was filed on November 19, 2013, and CORC's decision regarding plaintiff's appeal was not issued until December 18, 2013. (*Id.*) Defendants, however, overlook two important points. First, plaintiff exhausted some of his claims through grievances filed prior to his May 2013 grievance. Second, in regard to the May 2013 grievance, the CORC failed to issue a decision within the 30 day limit set by the IGP, rendering the administrative remedies unavailable to plaintiff.

Plaintiff's original Complaint sought to enjoin defendants from (1) prohibiting the wearing of his religious turban, (2) prohibiting his celebration of certain religious holy days in a manner consistent with his beliefs, and (3) collecting half of the funds raised by the Rastafari inmate organization. Each of these claims was properly raised and exhausted through grievances filed on June 17, 2009, September 12, 2011, and March 14, 2012. (*See* Hehenberger Decl. Ex. B & D (Dkt.58.)) The CORC issued a decision regarding the June 2009 grievance on August 5, 2009, ruled on the September 2011 grievance on January 4, 2012, and rendered a decision on the March 2012 grievance on September 5, 2012. (*Id.*) The original Complaint was filed eight months after the resolution of the lattermost grievance at issue.

**\*6** Plaintiff's Amended Complaint, filed on November 19, 2013, seeks additional relief, including: (1) the addition of October 7 to the religious calendar with various designations; (2) that Rastafari congregate worship be moved to Fridays; (3) that defendants be prohibited from making the menu for holy day meals mandatory; (4) that defendants' failure to provide plaintiff with access to Rastafarian advisers be deemed a constitutional violation; and (5) for the removal of information

regarding marijuana use from plaintiff's institutional records. Plaintiff filed a grievance that included these additional claims on May 29, 2013. (*Id.* at Ex. C .) After receiving a response from both the IGRC and the superintendent, plaintiff appealed the superintendent's decision to CORC on July 26, 2013. (*Id.*) More than four months passed between the appeal and CORC's decision, issued on December 18, 2013, which is far longer than the 30 day deadline explicitly set forth in the IGP process. (*Id.*) Had the CORC provided a timely response to plaintiff's appeal, plaintiff would have received a response prior to filing the Amended Complaint. Plaintiff "should not be penalized for the CORC's failure to timely respond, especially where the eventual response denied the requested relief." [7] *Peoples,* 2012 WL 1575302, at *9 n. 125. Because prison officials failed to respond to plaintiff's grievance within the 30 day time limit set by regulation, administrative remedies were not available to the plaintiff and dismissal for failure to exhaust is not appropriate. Defendants' motion to dismiss on this ground is denied.

## II. The Free Exercise Clause

### 1. Legal Standard
"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). A prisoner's right to exercise his religion is not absolute and must be balanced against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (quoting *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990)). Accordingly, free exercise claims of prisoners are judged " 'under a 'reasonableness' test less restrictive than that ordinarily applied': a regulation that burdens a protected right passes constitutional muster if it is reasonably related to legitimate penological interests.' " *Salahuddin v. Goord,* 467 F .3d 263, 274 (2d Cir.2006) (quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987)).

Under this reasonableness test, a prisoner asserting a free exercise claim "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." [8] *Salahuddin,* 467 F.3d at 274–75. "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Id.* at 275 (alterations and internal quotation marks omitted).

**\*7** A substantial burden on religious exercise exists "where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Woodward v. Perez,* 12–cv–8671 (ER), 2014 WL 4276416, at *4 (S.D.N.Y. Aug. 29, 2014) (quoting *Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir.1996)) (alterations and internal quotation marks omitted). Plaintiff need not show that the disputed conduct impedes a religious practice mandated by his religion, but he must show that it burdens a religious practice that is "central or important" to his practice of religion. *Ford,* 352 F.3d at 593–94. "Significantly, the plaintiff's burden in demonstrating substantial burden is not a particularly onerous task." *Woodward,* 2014 WL 4276416, at *4 (internal quotation marks omitted); *see also McEachin v. McGuinnis,* 357 F.3d 197, 202 (2d Cir.2004).

Even if a challenged policy substantially burdens the plaintiff's sincerely held religious beliefs, it is nevertheless valid "if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987); *see also Ford,* 352 F.3d at 595. When evaluating whether a regulation or official action is reasonable, courts are guided by four factors: (1) "whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective;" (2) "whether prisoners have alternative means of exercising the burdened right;" (3) "the impact on guards, inmates, and prison resources of accommodating the right;" and (4) "the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests." *Salahuddin,* 467 F.3d at 274 (citing *Turner,* 482 U.S. at 89–91).

### 2. Analysis

#### A. Substantial Burden
On this motion, defendants do not challenge that plaintiff has alleged sincerely held religious beliefs; rather defendants argue that plaintiff fails to allege facts that show that his religious beliefs were substantially burdened. (Def.MTD, pp. 6, 9.) The Court concludes that plaintiff has plausibly alleged that defendants have substantially burdened his right to freely exercise his religion as to some but not all of the religious practices he wishes to engage in.

### i. Claims Involving the Religious Calendar

As noted above, DOCCS has added all of the holy days at issue to the religious calendar, but with varying limitations regarding how each day may be celebrated. (Revised Calendar, p. 25.) The requests that were accommodated are moot. The Court must address whether plaintiff states a claim with respect to those requests which have not been voluntarily accommodated, which include: (1) exemption from work and the provision of a shared meal on April 21 and May 25; (2) permission for a congregate worship service on May 25; and (3) the designation of April 21 and August 17 as "family events." Plaintiff has plausibly alleged a substantial burden on his free exercise of religion with regard to all of the contested holy day restrictions, with the exception that plaintiff cannot reach this threshold burden on his claim concerning "family events."

**\*8** Plaintiff has shown that celebrating the four holy days at issue by refraining from work and programming, attending a congregate worship service, and sharing a holy day meal is "central or important" to his faith. *See Ford,* 352 F.3d at 593–94. In the telephone conferences and hearings before Magistrate Judge Freeman, plaintiff explained why the holy days are sacred, stating that April 21 is "the day that Emperor Selassie came to Jamaica" (July Tr., p. 13), May 25 is African Liberation Day (Telephone Conference before Magistrate Judge Freeman, March 18, 2014 ("March Tr."), p. 19), August 17 is the birthday of the Rastafari prophet Marcus Mosiah Garvey, (July Tr., p. 24.) and October 7 "respects the day that Emperor Haile Selassie was named heir apparent prior to his coronation." [9] (March Tr., p. 19.) He testified that each holy day at issue should be celebrated in the same manner, by coming together with other Rastafari observers for a congregate service called a "reasoning" and a shared meal, and by refraining from work. (July Tr., pp. 13, 20, 25–26.) The Court concludes that plaintiff has plausibly alleged a substantial burden on his religious beliefs to the extent that plaintiff alleges defendants continue to deny him an exemption from work and provision of a shared meal on April 21 and May 25 and have failed to permit a congregate worship service on May 25. *See Ford,* 352 F.3d at 593–94 (asserting that being denied a holiday meal would be considered a substantial burden on the plaintiff's religious beliefs if participation in the meal was considered central or important to his

practice of religion); *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993) ("It is well established that prisoners have a constitutional right to participate in congregate religious services .").

Plaintiff fails, however, to plausibly allege that his free exercise rights are substantially burdened by the denial of his request to designate April 21 and August 17 as "family events." He asserts, "Rastafari family is the center of Rasta society," (Am. Compl., ¶ 16 n. 1) and that "[d]uring holy days' celebrations, it is necessary for the family to celebrate together, representing the unity established by Emperor Haile Selassie I, Empress Menen, and the Royal Children." (Pl. Objection to Magistrate Judge's R & R ("Pl.Objection"), p. 1.) These conclusory allegations fail to adequately explain the religious significance of the "family event." Nor does plaintiff explain why celebration with family carries religious significance for the holy days of April 21 and August 17, but not for the other holy days at issue. Plaintiff fails to show that celebration with family is "central or important" to his religious beliefs, and thus cannot state a claim under the Free Exercise Clause as to this request.

### ii. Holy Day Menus

It has long been established that "prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." *Kahane v. Carlson,* 527 F.2d 492, 495 (2d Cir.1975); *see also McEachin,* 357 F.3d at 203 ("[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights.")

**\*9** Plaintiff has failed to plausibly allege that DOCCS's policy prohibiting inmates from adding items to the holy day menu substantially burdens his religious exercise. (Am.Compl., ¶ 27.) He does not allege that the holy day meals are inconsistent with his religious beliefs nor does he explain how his ability to add certain items to the meals is "central or important" to his religion. *See Kahane,* 527 F.2d at 496 (holding that a prison was required to provide an orthodox Jewish rabbi with a diet that maintained his good health and did not violate Jewish dietary laws, but refusing to mandate any specific food item or method for fulfilling this order, as "[s]uch details are best left to the prison's management which can provide from the food supplies available within budgetary limitations"). Accordingly, plaintiff does not plausibly allege a Free

Exercise Clause claim as to the so-called "mandatory menu" provided by DOCCS for holy day meals.

### iii. Friday Worship

Plaintiff asserts that he has "been forced to have congregate worship on Wednesdays instead of the traditional Fridays." (Am.Compl., ¶ 26.) Plaintiff has plausibly alleged that this restriction substantially burdens his right to free exercise. "It is well established that prisoners have a constitutional right to participate in congregate religious services." *Salahuddin v. Coughlin,* 993 F.2d at 308; *see also Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir.1989) ("Although we recognize that great deference should be accorded to prison officials as they undertake the difficult responsibility of maintaining order in prisons, we have long held that prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible."). In *Lloyd v. City of New York,* 12–cv–03303 (CM), 2014 WL 4229936, at *5–6 (S.D.N.Y. Aug. 4, 2014), the court held that Muslim inmates plausibly alleged a substantial burden on their religious exercise where they were unable to conduct religious services in a manner that complied with their religious beliefs. The plaintiffs in *Lloyd,* for example, were forced to conduct religious services in a chapel where the pews prevented them from kneeling for prayer. *Id.* Here, plaintiff has plausibly alleged that defendants have substantially burdened his ability to participate in religious services in a manner consistent with the practices of his religion. Plaintiff alleges that he is forced to conduct services on Wednesdays, but he asserts that Friday is the traditional day of worship. (*See* Am. Compl., ¶ 26.) He explains that the appropriate day for Rastafari congregate worship is Friday because it "carries the Rastafarian Community into the Sabbath," which begins on Friday at sundown. (*Id.*) Plaintiff plausibly alleges that his inability to hold Friday Sabbath services substantially burdens his free exercise of religion.

### iv. Turban

Plaintiff has plausibly alleged that defendants substantially burden his right to free exercise by denying him the right to wear his religious turban. *See Singh v. Goord,* 520 F.Supp.2d 487, 502–03 (S.D.N.Y.2007) (holding that defendants substantially burdened plaintiff's religious exercise where plaintiff was prohibited from wearing the type of turban required by his religion); *Morgan v. City of New York.,* 12–cv–704 (WFK), 2014 WL 3407714, at *8 (E.D.N.Y. July 10, 2014) ("Plaintiff has shown that the removal of his turban substantially burdens his sincerely held religious beliefs.") Plaintiff has explained the significance of wearing a turban in the Rastafari religion, testifying that the "Nya[h]binghi Rastaman's head must be covered" and that wearing a turban represents "the complete discipline of the Rastaman in terms of a priestly life." [10] (July Tr., p. 37–39.) Plaintiff alleges that the only headgear Rastafari males are permitted to wear at Woodbourne is the Tsalot Kob, which is a type of headgear restricted to members of the Ba Beta Kristiyan Church and does not align with plaintiff's sincerely held religious beliefs. (*Id.* at 38–42; Am. Compl., ¶¶ 20–21.) Plaintiff does not provide a full explanation of the how the Rastafari sect that plaintiff adheres to, the Nyahbinghi "mansion," is distinct from the Ba Beta Kristiyan Church, nor does he elaborate on why wearing a Tsalot Kob does not comport with his religious beliefs. Nevertheless, given the special solicitude afforded to *pro se* plaintiffs, the Court concludes that plaintiff has adequately pled that defendants' prohibition on the wearing of his religious turban substantially burdens his sincerely held religious beliefs. The issue may look different at the summary judgment stage.

### v. Fundraising Proceeds

**\*10** Plaintiff challenges defendants' policy of collecting half of the Rastafari inmate organization's fundraising proceeds; however, he fails to adequately explain how this practice constitutes a substantial burden on his religious beliefs. Plaintiff explains that the collection of half of the organization's funds "creates a burden on [the Rastafari group's] ability to purchase necessary materials for congregate services, religious classes, and religious holy day celebrations." (Am.Compl., ¶ 24.) While forbidding or confiscating religious materials may in some instances support a free exercise claim, *see Breland v. Goord,* 94–cv–3696 (HB), 1997 WL 139533, at *5–6 (S.D.N.Y. Mar. 27, 1997) (holding a claim regarding the confiscation of a prisoner's religious literature survives summary judgment), plaintiff does not assert that defendants have prohibited him from obtaining religious materials. Nowhere does plaintiff claim he is restricted from either buying the religious materials he desires with the funds the Rastafari group retains or obtaining the materials from another source. Plaintiff does not show how the deprivation of half of the funds constitutes a substantial burden on his religious beliefs. As plaintiff has failed to

plausibly allege a substantial burden, his free exercise claim challenging defendants' collection of half of the funds raised by the Rastafari organization is dismissed.

### vi. Rastafarian advisers

Plaintiff alleges that defendants violated his rights when they denied his request to gain access to spiritual and religious advisers (Am.Compl., ¶ 19.) Plaintiff fails, however, to plausibly allege that defendants' actions substantially burden his free exercise of religion. He makes no showing regarding how contact with advisers is "central or important" to the practice of his faith. Thus, his free exercise claim based on lack of access to advisers is dismissed.

### vi. Reporting of Marijuana Use

Plaintiff claims that defendant Davis, a drug counselor at Woodbourne, falsely reported that plaintiff admitted to using marijuana for religious rituals to justify recommending him to a drug treatment program. (Am.Compl., ¶ 28.) He claims that defendant's false reporting was a result of "unconstitutional stereotyping of plaintiff based on his religious beliefs" and the ritual use of marijuana within the Rastafari faith. (*Id.*) Plaintiff, however, fails to explain how defendant's purported stereotyping burdened his free exercise of religion, nor does he show how being recommended for a drug treatment program has any effect on his religious practice. Thus, plaintiff does not state a claim under the Free Exercise Clause as to the alleged false reporting of marijuana use.

### B. Penological Interest

With regard to the claims for which plaintiff has plausibly alleged a substantial burden, defendants contend that they have proffered a legitimate penological interest which justifies not allowing the practice in question. (Def.MTD, p. 6.) Defendants cite "safety and security" concerns for their prohibition of plaintiff's turban and identify "spatial restrictions" as the reason for requiring Rastafari Sabbath services to be held on Wednesdays rather than Fridays. (*Id.* at 11, 13–14.) Defendants do not offer a justification for their policy regarding plaintiff's religious calendar claims. (*Id.* at 8–9.)

**\*11** Determining whether a challenged policy is reasonably related to a legitimate penological interest

is a fact-laden inquiry that is generally ill-suited for resolution on a motion to dismiss. *See Ford,* 352 F.3d at 596 (refusing to determine whether defendants' conduct was reasonably related to legitimate penological interests because "the record [was] insufficient to resolve this fact—and context—specific dispute"). On this motion to dismiss, the Court cannot assess whether there is a "valid, rational connection" between defendants' actions and their purported concerns. *See Turner,* 482 U.S. at 89. Defendants state in a conclusory manner that the ban on plaintiff's religious turban is due to safety and security concerns, but fail to explain how plaintiff's turban presents a security problem or why concerns exist with respect to plaintiff's turban but not with the other types of permitted headgear. (*See* Def. MTD, pp. 13–14.) Next, while defendants explain that there is a lack of available space for Rastafarians to conduct congregate worship on Fridays (*Id.* at 11), the Court is unable to assess, based on the limited record, the impact accommodation would have on the guards, other inmates, and prison resources and whether there is an "absence of ready alternatives." *See Turner,* 482 U.S. at 90. The Court will not, at this stage, dismiss any of plaintiff's claims based on defendants' stated penological interests. The Court acknowledges that the case may look very different at the summary judgment stage.

To recap, the following free exercise claims survive defendant's motion to dismiss: (1) the denial of plaintiff's ability to observe all four of the Rastafari holy days at issue in his motion by (a) refraining from working or attending programs, (b) attending a congregate worship service, and (c) sharing a holy day meal with other Rastafari inmates; (2) the denial of Friday Sabbath services; and (3) the prohibition on plaintiff's religious turban.

### III. The Establishment Clause and the Equal Protection Clause

While plaintiff asserts violations of the Free Exercise Clause, the Establishment Clause, and the Equal Protection Clause, the parties only briefed the claims under the Free Exercise Clause. Where plaintiff has plausibly alleged a free exercise violation, the Court need not decide at this time whether plaintiff also states a claim under the Establishment Clause or the Equal Protection Clause. Because these claims have survived, the Court can make this determination at a later stage after the parties have briefed the issues. However, where plaintiff fails to

2015 WL 769551

state a claim under the Free Exercise Clause, the Court will determine whether the claim can nevertheless survive under the Establishment Clause or the Equal Protection Clause.

Plaintiff fails to plead any facts to support a claim under the Establishment Clause with respect to: (1) the designation of April 21 and August 17 as "family events;" (2) the denial of spiritual and religious advisers; and (3) the false reporting regarding plaintiff's marijuana use. Plaintiff fails to plead any facts to support an Equal Protection Clause claim as to: (1) the designation of "family events;" (2) the policy of collecting half of the Rastafari inmate organization's fundraising proceeds; and (3) the mandatory nature of holy day menus. As such, the claim regarding "family events" is dismissed, *see Iqbal, 556 U.S. at 678,* and the Court will analyze plaintiff's holy day menu and fundraising claims under the Establishment Clause and his religious adviser and false reporting claims under the Equal Protection Clause. For reasons to be explained, the Court dismisses each of these four claims.

    1. The Establishment Clause
**\*12** The First Amendment of the Constitution provides that "Congress shall make no law respecting an establishment of religion." *U.S. Const. amend. I.* In deciding an Establishment Clause claim, courts in this Circuit continue to apply the three-prong test articulated by the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602 (1971). *See Bronx Household of Faith v. Bd. of Educ. of City of New York,* 650 F.3d 30, 40 n. 9 (2d Cir.2011) ("Although the Lemon test has been much criticized, the Supreme Court has declined to disavow it and it continues to govern the analysis of Establishment Clause claims in this Circuit."); *see also Westchester Day Sch. v. Vill. of Mamaroneck,* 504 F.3d 338, 355 (2d Cir.2007); *Kiryas Joel Alliance v. Vill. of Kiryas Joel,* 495 F. App'x 183, 190 (2d Cir.2012). Under *Lemon,* "government action which interacts with religion (1) must have a secular purpose, (2) must have a principal or primary effect that neither advances nor inhibits religion, and (3) must not foster an excessive government entanglement with religion." *Bronx Household of Faith,* 650 F.3d at 40 (alterations and internal quotation marks omitted) (citing *Lemon,* 403 U.S. at 612–13). "Because plaintiff is a prisoner challenging a Department of Corrections directive, the *Lemon* test is tempered by the test laid out by the Supreme Court in *Turner* ... which found that a prison regulation that impinges on an inmate's constitutional rights is

nevertheless valid if it is reasonably related to legitimate penological interests." *Pugh v. Goord,* 571 F.Supp.2d 477, 494 (S.D.N.Y.2008) (quoting *Salahuddin v. Perez,* 99–cv–10431 (LTS), 2006 WL 266574, at \*9 (S.D.N.Y. Feb. 2, 2006) (internal quotation marks omitted)).

First, plaintiff claims that by denying him the ability to supplement holy day meals with additional food items, defendants have given the "New York State Department of Nutritional Services unfettered authority to dictate the dietary laws of the Rastafarian community for holy day celebrations." (Am.Compl., ¶ 27.) He concludes that DOCCS's "Nutritional Services is in effect acting as an ecclesiastical body for the Rastafarian community." (*Id.*) Defendants counter that "a perfect accommodation of each inmate's preferential meal choices" would be "prohibitively expensive." (Def.MTD, p. 13.)

Plaintiff fails to state a claim under the Establishment Clause pursuant to the *Lemon* analysis. *See* 403 U.S at 612–13. First, the prison's policy has the permissible purpose of attempting to reasonably accommodate the inmates' religious dietary practices without subjecting the prison "to prohibitively expensive accommodations of religious dietary meal requests." (*Id.*) *See Benjamin v. Coughlin,* 905 F.2d 571, 579 (2d Cir.1990) (asserting that prisoners have a right to receive diets consistent with their religious beliefs but that this right may be limited where accommodation is prohibitively expensive or administratively unfeasible). Second, plaintiff has failed to allege that DOCCS's policy regarding holy day menus has the primary effect of either advancing or inhibiting religion. Plaintiff does not claim that the holy day meals are inconsistent with his religious beliefs. Finally, DOCCS's policy does not foster excessive entanglement of government with religion. "In order to permit inmates to freely exercise their religion, *some* entanglement is necessary." *Muhammad v. City of New York Dep't of Corr.,* 904 F.Supp. 161, 198 (S.D.N.Y.1995) (emphasis in original) ("[I]n the prison context, the [E]stablishment [C]lause has been interpreted in the light of the affirmative demands of the [F]ree [E]xercise [C]lause." (internal quotation marks omitted)). DOCCS developed a menu for holy day celebrations in order to accommodate inmates' free exercise right to receive a diet consistent with their religious beliefs. This does not constitute excessive government entanglement with religion. As such, plaintiff's claim regarding the holy day menus is dismissed.

**\*13** Next, plaintiff asserts that "the policy of requiring the Rastafarians to surrender 50% of their fundrais[ing proceeds] had the effect of a tax on religion." (Am.Compl., ¶ 24.) This allegation fails to plausibly allege a violation under the Establishment Clause. First, as plaintiff acknowledges, the policy has the secular purpose of providing funds to the Inmate Occupational Therapy Fund ("IOTF"), which is "for the benefit of the general population's use." (*Id.* ¶ 23.) The policy does not have the primary effect of advancing or inhibiting religion. The fundraising requirement is applied equally to religious and non-religious groups, and plaintiff does not adequately allege how the policy inhibits or burdens his religion. (*Id.*) Finally, the policy does not foster excessive government entanglement with religion. Thus, plaintiff's claim as to defendants' policy regarding fundraising proceeds is dismissed.

### 2. The Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). To state a claim for an equal protection violation, a plaintiff must plausibly allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005). Courts in the Second Circuit have emphasized that "it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently ." *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 193 (2d Cir.1994); *see also Bishop v. Best Buy, Co. Inc.,* 08–cv–8427 (LBS), 2010 WL 4159566, at \*11 (S.D.N.Y. Oct. 13, 2010) ("Well-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential component of [an equal protection] claim." (internal quotation marks omitted)). "While the *Turner* ... standard was established in the context of first amendment issues, it is also relevant to the assessment of equal protection claims in the prison setting." *Benjamin v. Coughlin,* 905 F.2d 571, 575 (2d Cir.1990). Thus, "the reasonableness of the prison rules and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to legitimate penological interests." (*Id.*)

Plaintiff's claim regarding defendant Davis's alleged false report fails to state a claim under the Equal Protection Clause because plaintiff fails to allege that he was treated differently than others. In *Bishop,* plaintiff's equal protection claim, alleging that he was discriminated against on the basis of his race, was dismissed because the plaintiff "failed 'to allege or identify a single similarly situated [individual] who was treated differently .' " 2010 WL 4159566, at \*12 (quoting *Sweeney v. City of New York,* 03–cv–4410 (JSR)(RLE), 2004 WL 744198, at \*5 (S.D.N.Y. Apr. 2, 2004) *subsequently aff'd,* 186 F. App'x 84 (2d Cir.2006)); *see also King v. New York State Div. of Parole,* 260 Fed. App'x. 375, 379–80 (2d Cir.2008) (affirming dismissal of equal protection claim where petitioner "failed to identify a single individual with whom he can be compared for Equal Protection purposes"). Here, plaintiff makes no claim regarding how others were treated during their interviews for the drug treatment program. Thus, plaintiff's equal protection claim regarding religious stereotyping with regard to the alleged false report of his marijuana use is dismissed. As this is the only claim that implicates defendant Davis, she is dismissed from this case.

**\*14** Next, plaintiff alleges that being denied spiritual advisers for security reasons violates his equal protection rights because "[o]ther religious groups are allowed to have religious and spiritual advisors without breaching security concerns." (Am.Compl., ¶ 19.) This allegation is conclusory and fails to identify any specific religious group that is being treated differently. *See Bishop,* 2010 WL 4159566, at \*11 ("Conclusory allegations of selective treatment are insufficient to state an equal protection claim."). Plaintiff's equal protection claim regarding spiritual advisers is dismissed.

### IV. Injunctive Relief

Defendants seek to dismiss plaintiff's claims for injunctive relief for lack of merit and mootness. (Def.MTD, pp. 17–20.) Defendants have not established that all of plaintiff's holy day claims are moot. Injunctive relief, however, may not be premised upon claims that this Court has dismissed.

Plaintiff asserts six claims for injunctive relief. (Am.Compl., ¶ B) First, plaintiff seeks to enjoin defendants from "continuing to deny plaintiff and other Rastafarians their holy days." (*Id.* ¶ B(1).) Second, plaintiff seeks injunctive relief to allow him to wear his turban. (*Id.* ¶ B(2).) Third, plaintiff seeks to enjoin

defendants from enforcing the policy which mandates that the Rastafarian inmate organization surrender half of the funds it raises to the IOTF. (*Id.* ¶ B(3).) Fourth, plaintiff seeks an injunction enjoining defendants from retaliating against him. (*Id.* ¶ B(4).) Fifth, plaintiff seeks to direct defendant Davis to expunge the "stereotyped information from plaintiff's institutional records." (*Id.* ¶ B(5).) Sixth, plaintiff seeks to enjoin all defendants from "continuing to deny him his right to freely practice his faith." (*Id.* ¶ B(6).)

Defendants assert that none of plaintiff's claims for injunctive relief can be sustained as a matter of law. (Def.MTD, p. 17.) "To obtain a permanent injunction, a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir.2006) (internal quotation marks omitted). Defendants reason that because "Plaintiff is unable to succeed on the merits of his claims" permanent injunctive relief is not warranted. (Def.MTD, p. 18.) At the pleading stage, defendants are correct only with respect to some of plaintiff's claims. The Court has found that plaintiff has plausibly alleged a constitutional violation with respect to his claims regarding the observance of Rastafari holy days and the wearing of his turban. Accordingly, plaintiff's claims for injunctive relief regarding these rights may not properly be dismissed. However, the Court has determined that plaintiff's claims regarding the purported false report of plaintiff's marijuana use and defendants' policy of collecting half of the Rastafari inmate organization's fundraising proceeds do not state a claim. Thus, plaintiff's claims to (1) expunge references to marijuana use from his institutional records and (2) enjoin defendants from requiring the Rastafarian organization to surrender half of their funds, are dismissed because the underlying claims upon which they are premised are dismissed.

**\*15** Plaintiff's claim that seeks to prevent future retaliation is also dismissed, as plaintiff fails to plead any facts whatsoever to show that defendants have or would retaliate against plaintiff. *See Iqbal,* 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)); *see also Reiter v. Metro. Transp. Auth. of N.Y.,* 01–cv–2762 (JGK), 2003 WL 22271223, at \*15 (S.D.N.Y. Sept. 30, 2003) (denying plaintiff's request for a permanent injunction to prevent

retaliation because there was no showing that plaintiff would be retaliated against in the future).

Next, defendants argue that injunctive relief is not appropriate concerning the religious calendar because "it is quite possible that this litigation could continue after Plaintiff's particular sect of Rastafarianism ceases to have followers that are inmates under DOCCS' supervision or custody" and "[a]s such, Plaintiff's request for injunctive relief would be moot." (Def.MTD, p. 19.) This argument lacks merit, as plaintiff brings his claims individually and he is currently an inmate at Woodbourne. "In order for a federal court to retain jurisdiction over a case, an actual controversy must exist at all stages of review, not merely at the time the complaint is filed." *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (internal quotation marks omitted). At this time, an actual controversy regarding the religious calendar exists as to the claims that defendants have not voluntarily accommodated. As such, not all of plaintiff's religious calendar claims are moot.

V. Personal Involvement

Defendants contend that plaintiff has failed to allege the personal involvement of defendants Fischer, Jacobson, and Leonard, and as such, they should be dismissed from this suit. (Def.MTD, pp. 15–17.) The Court holds that plaintiff has plausibly alleged the personal involvement of the three defendants at issue.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). Individual liability under section 1983 may not be anchored in a theory of *respondeat superior. Hemmings v. Gorczyk,* 134 F.3d 104, 109 n. 4 (2d Cir.1998) (per curiam). "The bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim." *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995). Further, "[c]onclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient." *Kee v. Hasty,* 01–cv–2123 (KMW)(DF), 2004 WL 807071, at \*12 (S.D.N.Y. Apr. 14, 2004).

In *Colon,* the Second Circuit held that the personal involvement of a supervisory defendant can be shown by evidence that:

**\*16** (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

58 F.3d at 873. The continuing vitality of the supervisory liability test established in *Colon* has come into question after the Supreme Court's 2009 decision in *Iqbal. See Reynolds v. Barrett,* 685 F.3d 193, 205 n. 14 (2d Cir.2012). There, the Supreme Court noted that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676.

The Second Circuit has not yet definitively addressed how *Iqbal* affects the *Colon* factors, nor have the district courts within this Circuit reached a clear consensus. *See Aguilar v. Immigration & Customs Enforcement Div.,* 811 F.Supp.2d 803, 814 (S.D.N.Y.2011). Despite the lack of agreement regarding the *Colon* factors, courts agree that the third factor, that defendant created a policy or custom under which unconstitutional practices occurred, has survived *Iqbal. Compare Bellamy v. Mount Vernon Hosp.,* 07–cv–1801 (SAS), 2009 WL 1835939, at \*6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal's* muster-a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."), *aff'd sub nom. Bellamy v. Mount Vernon Hosp.,* 387 F. App'x 55 (2d Cir.2010), *with Hodge v. Sidorowicz,* 10–cv–428 (PAC)(MHD), 2011 WL 6778524, at \*16 (S.D.N.Y. Dec. 20, 2011) ("[W]here the claim

does not require a showing of discriminatory intent, the personal-involvement analysis set forth in *Colon* should still apply."), *report and recommendation adopted sub nom. Hodge v. Wladyslaw,* 10–cv–428 (PAC)(MHD), 2012 WL 701150 (S.D.N.Y. Mar. 6, 2012). It is under this factor that plaintiff claims defendants Fischer, Jacobson, and Leonard were personally involved.

Plaintiff alleges that Brian Fischer, as the Commissioner of DOCCS, "has the statutory authority to promulgate rules, regulations, and policies governing the religious rights of prisoners within the department." (Am.Compl., ¶ 4.) Similarly he alleges that Catherine Jacobsen as Acting Deputy Commissioner for Program Services "had the authority to approve policies governing the religious programs in [DOCCS]," (*Id.* ¶ 5), and that Mark Leonard, as the Director of Ministerial, Family, and Volunteer Services "was responsible for the promulgation of policies affecting the religious rights of all Rastafarian prisoners within [DOCCS]." (*Id.* ¶ 8.) Plaintiff attributes DOCCS's policies on holy days and headgear to Fischer, Jacobsen, and Leonard, along with other defendants. (*Id.* ¶ A(1).) A defendant that creates a policy is considered personally involved in any unconstitutional practices that occur under the policy. *See Colon,* 58 F.3d at 873. In *Pugh v. Goord,* 571 F.Supp.2d 477, 485–86 (S.D.N.Y.2008), the plaintiff argued that certain defendants, by creating and continuing policies regarding the accommodation of Shi'ite Muslims, were personally involved in the deprivation of his right as a Shi'ite inmate to have a separate prayer service from the Sunni Muslims. The court agreed with the plaintiff and found that because plaintiff showed that defendants made "certain contributions to formulation of policy," he had adequately established personal involvement with regard to these defendants. *Id.* at 513 (internal quotation marks omitted). Similarly, plaintiff has plausibly alleged that defendants Fischer, Jacobson, and Leonard were involved in creating policies under which his right to free exercise was substantially burdened. Thus, these defendants are not properly dismissed from this suit at this juncture.

**\*17** Plaintiff also alleges that defendant Fischer is personally involved in the alleged constitutional violations because he has written letters to defendant Fischer "complaining about the unconstitutional impediments to plaintiff's ability to practice his faith," but Fischer has always referred plaintiff's complaints to subordinates. (Am.Compl., ¶ 25.) Defendants are correct in stating

2015 WL 769551

that this allegation cannot demonstrate the requisite personal involvement of Fischer. (*See* Def. MTD, p. 16.) "If the supervisor fails to respond to [a prisoner's] letter or passes the letter on to a subordinate to handle, the general rule is that the supervisor is not personally involved." *Lloyd,* 2014 WL 4229936, at *9; *see also Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (holding that the inmate failed to produce sufficient evidence to establish personal involvement of the prison commissioner, where the commissioner referred plaintiff's appeal letter to a subordinate); *Smart v. Goord,* 441 F.Supp.2d 631, 643 (S.D.N.Y.2006) *on reconsideration in part,* 04–cv–8850 (RWS), 2008 WL 591230 (S.D.N.Y. Mar. 3, 2008) (stating that defendant "cannot be held liable on the sole basis that he did not act in response to letters of protest" sent by inmate). Nevertheless, because plaintiff has plausibly alleged Fischer's personal involvement in creating policies under which unconstitutional practices have occurred, Fischer is not dismissed from this suit.

### VI. Qualified Immunity

Defendants argue that qualified immunity shields them from money damages. (Def.MTD, pp. 20–25.) On this motion to dismiss, the Court cannot conclude that defendants are entitled to qualified immunity as a matter of law. The case may look very different at the summary judgment phase.

Qualified immunity protects public officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). A government official is entitled to qualified immunity "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 250 (2d Cir.2001); *see also Luna v. Pico,* 356 F.3d 481, 490 (2d Cir.2004). In deciding whether defendants are entitled to qualified immunity, courts must look "to both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances the[n] confronting a defendant, would have understood that his actions were unlawful." *Ford v. McGinnis,* 352 F.3d 582, 59697 (2d Cir.2003) (quoting *Hanrahan v. Doling,* 331 F.3d 93, 98 (2d Cir.2003) (per curiam)) (internal quotation marks

omitted). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *Coollick v. Hughes,* 699 F.3d 211, 220 (2d Cir.2012) (alterations and citation omitted). While a defendant may assert a qualified immunity defense on a motion to dismiss, "the defense faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright,* 386 F.3d 432, 434 (2d Cir.2004).

**\*18** Defendants have failed to show that restricting plaintiff from celebrating certain holy days in a manner consistent with his religious beliefs, requiring Friday Sabbath services to be held on Wednesdays, and prohibiting him from wearing a religious turban do not violate clearly established law. An inmate has a "clearly established right to be free of unjustified burdens upon free exercise rights." *Salahuddin v. Dalsheim,* 94–cv–8730 (RWS), 1996 WL 384898, at *12 (S.D.N.Y. July 9, 1996) (citations omitted); *see also Turner v. Safley,* 482 U.S. 78, 89 (1987). In *Salahuddin v. Goord,* the Second Circuit held that because plaintiff's "free-exercise rights were substantially burdened by a joint-worship policy not justified by a legitimate penological interest," qualified immunity was not appropriate as "it was clearly established at the time of the alleged violation that prison officials may not substantially burden inmates' right to religious exercise without some justification." 467 F.3d 263, 275–76 (2d Cir.2006). Similarly here, because the Court holds that plaintiff has plausibly alleged that defendants substantially burdened his free exercise rights and, at this time, have not established a legitimate penological justification, defendants are not entitled to qualified immunity on the premise that their conduct did not violate clearly established law.

Whether defendants could have reasonably believed that they did not violate an established constitutional right depends, at this stage, "on whether, on the facts alleged in the Complaint, they had a reasonable basis to believe that that [sic] [their actions] served a legitimate penological interest." *Diggs v. Marikah,* 11–cv–6382 (PAE), 2012 WL 934523, at *5 (S.D.N.Y. Mar. 20, 2012) (denying defendants' motion to dismiss on the basis of qualified immunity, where plaintiff's religious beliefs were substantially burdened and the factual basis for whether defendants' actions were reasonably related to a legitimate penological interest was not yet developed).

At this early stage, there is inadequate information to determine whether defendants are objectively reasonable in their beliefs regarding their proffered penological interests. *See Perez v. Westchester Cnty. Dep't of Corr.,* 05–cv–8120 (RMB), 2007 WL 1288579, at *6 (S.D.N.Y. Apr. 30, 2007). This determination is more appropriate for summary judgment. *See id.* at *6 ("It is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to Rule 12(b)(6)." (alterations and citations omitted)). Thus, defendants are not entitled to qualified immunity at this stage.

CONCLUSION

For the reasons outlined above, defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims regarding (1) "family events," (2) holy day menus, (3) spiritual advisers, (4) fundraising proceeds, and (5) the reporting of plaintiff's marijuana use are dismissed in their entirety. Because the only claim plaintiff brought against defendant Davis is dismissed, Davis is also dismissed from this suit. Plaintiff's claims regarding (1) the religious calendar, excluding requests for "family events," (2) Friday worship, and (3) plaintiff's turban survive defendants' motion to dismiss.

**\*19** Counsel for defendants shall provide plaintiff with copies of all unreported decisions cited herein. This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and *in forma pauperis* status is denied. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 769551

Footnotes

1    The defendant's last name is spelled "Fishcer" on the docket in this case.

2    The defendant's last name is spelled "McCoy" on the docket and in the parties' briefs.

3    Plaintiff's Amended Complaint requests that the holy days at issue be added to the calendar with the designations of "Off Work Program (OWP), Meal Consideration (MC), and Special Consideration (SC)." (Am.Compl., ¶ 16.) In the hearings before Magistrate Judge Debra Freeman, plaintiff clarified that these designations would allow him to (1) refrain from working or attending programs, (b) attend a congregate worship service, and (c) eat a holy day meal with the Rastafarian inmate community. (July Tr., pp. 82–83.)

4    While the plaintiff in his Amended Complaint only requests that August 17 be designated as a "family event," he makes clear in the hearings before Magistrate Judge Freeman that he is asking for this designation to be added to both April 21 and August 17. (July Tr., p. 82.)

5    In the October 2014 declaration of Colonel Dennis W. Bradford, the DOCCS Director of Correction Emergency Response Team Operations, DOCCS consented to alter its policy regarding religious headgear. (Bradford Declaration (Dkt.98).) Colonel Bradford declared that plaintiff would be allowed to wear a turban that conforms to his religious beliefs as long as it complies with mandated color restrictions. (*Id.* ("[A]s long as plaintiff's turban is of an appropriate color DOCCS will accommodate his request to wear it within Woodbourne Correctional Facility.")) Thus, plaintiff's claim regarding the right to wear his turban may be moot. The Court will decide this question at a later stage after the parties have briefed the issue.

6    The Second Circuit had concluded that "special circumstances" may exist where the plaintiff reasonably misinterprets the prison's grievance regulations. *Hemphill,* 380 F.3d at 690. However, in *Woodford,* the Supreme Court held that untimely or otherwise procedurally defective grievances do not satisfy the PLRA's exhaustion requirement. 548 U.S. at 93. The Second Circuit has not yet determined whether the special circumstances exception to the exhaustion requirement survives *Woodford. See Chavis v. Goord,* 333 F. App'x 641, 643 (2d Cir.2009). The Court need not reach this issue in this case.

7    This case is distinguishable from cases where the CORC never renders a decision on the plaintiff's appeal. Under those circumstances, district courts in this Circuit have tended to hold that a motion to dismiss or for summary judgment for failure to exhaust should be granted without prejudice, allowing the inmate to refile his complaint once the CORC responds. *See Fuentes v. Furco,* 13–cv–6846 (AJN), 2014 WL 4792110, at *3 (S.D.N.Y. Sept. 25, 2014) (collecting cases). This approach "balance [s] the PLRA's goal of allowing institutions the first opportunity to address an inmate's grievances against the inmate's right to a federal forum when he has complied with all of the procedural formalities expected of him."

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    14

*Id.* This logic, however, does not extend to the case at bar because the CORC has denied plaintiff's appeal, and thus has already been given the first opportunity to consider the grievance. *See Peoples,* 2012 WL 1575302, at *9.

8    The Second Circuit has noted that "[i]t has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Holland v. Goord,* 758 F.3d 215, 220 (2d Cir.2014) (internal quotation marks omitted). However, the Second Circuit and judges in this district have continued to require such a threshold showing, particularly in cases where the parties have not argued otherwise. *See Ford,* 352 F.3d at 592 (applying the substantial burden test where the parties did not brief the issue and the plaintiff did not argue otherwise); *see also Salahuddin,* 467 F.3d at 275 n. 5 (declining to decide whether the substantial burden test applied where resolution of the issue was unnecessary for purposes of the appeal); *Woodward v. Perez,* 12–cv–8671 (ER), 2014 WL 4276416, at *3 (S.D.N.Y. Aug. 29, 2014) (applying the substantial burden test because plaintiff satisfied this threshold step). Here, the Court will apply the substantial burden test as neither party has argued against employing this standard.

9    In the Amended Complaint plaintiff identifies, but does not allege the significance of, certain holy days that defendants have denied him the right to celebrate. In the conferences and hearings before Magistrate Judge Freeman, plaintiff explained the religious significance of each holy day at issue and described how the days must be observed according to his faith. The Court deems these statements to be incorporated into plaintiff's pleadings. Considering these statements on the present motion to dismiss comports with the special solicitude afforded *pro se* litigants.

10   In the Amended Complaint plaintiff alleges that the denial of his religious turban violates his First Amendment rights, but he fails to allege the significance of the turban to his religious beliefs. In the hearings before Magistrate Judge Freeman, plaintiff explained the religious significance of wearing his turban. The Court deems these statements to be incorporated into plaintiff's pleadings.

---

**End of Document**                                   © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-00497-DNH-TWD    Document 113    Filed 11/13/18    Page 118 of 144

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

2017 WL 1187859
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eon SHEPHERD, Plaintiff,
v.
Superintendent LEMPKE, et al., Defendants.

9:10-CV-1524
|
Signed 03/30/2017

**Attorneys and Law Firms**

George H. Lowe, Upnit Kaur Bhatti, Bond, Schoeneck
Law Firm, Syracuse, NY, for Plaintiff.

Eon Shepherd, Romulus, NY, pro se.

Cathy Y. Sheehan, New York State Dept. of Corrections,
Auburn, NY, Oriana L. Carravetta, New York State
Attorney General, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District
Judge

## I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C.
§ 1983 was referred to the Hon. David E. Peebles,
Chief United States Magistrate Judge, for the purpose of
holding an evidentiary hearing and issuing a report and
recommendation addressing exhaustion of administrative
remedies. In his October 28, 2016 Report and Re
commendation, Dkt. No. 252, Magistrate Judge Peebles
provides a thorough review of the numerous claims in
this matter that are based on events occurring between
April 2008 and November 2010 at five separate prison
facilities operated by the New York State Department of
Corrections and Community Supervision ("DOCCS"), [1]
and of the procedural history of this case. [2] Magistrate
Judge Peebles also placed the claims potentially implicated
by defendants' exhaustion defense, together with the
circumstances surrounding plaintiff's efforts to exhaust
available administrative remedies, into four groupings,
"each of which includes common circumstances insofar as
exhaustion is concerned." Rep. Rec. p. 13.

Based upon the evidence adduced at the hearing,
Magistrate Judge Peebles recommends:

(1) The following claims should be deemed exhausted and
remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|-----------|-----------|-----------------|----------|---------------------|
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05, 108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05, 108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green | 107 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

| 27 | Lempke | Religious | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |
| 34 | Prebalick | Excessive Force | Five Points | 35 |
| 35 | Ramus | Due Process | Five Points | 107 |

**\*2** (2) The following claims proceed to trial based on the parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
| --- | --- | --- |
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued asHawthorne) | Medical Indifference | Clinton |

(3) The following claims should be dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 10 | Bower | Failure to Protect | Five Points | 15 |
| 11 | Bower | Retaliation | Five Points | 15 |
| 1 | Evans | ReligiousInterfer. | Five Points | |

(4) The following claims should be dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amende Complaint ¶ |
| --- | --- | --- | --- | --- |
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |

Case 9:15-cv-00497-DNH-TWD    Document 113    Filed 11/13/18    Page 120 of 144

Shepherd v. Lehpke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |
| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |
| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5) The following claims should be dismissed based upon plaintiff's failure to fully exhaust them:

| **Claim No.** | **Name** | **Nature of Claim** | **Facility** | **Amended Complaint ¶** |
| --- | --- | --- | --- | --- |
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious Interference | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious Interference | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious Interference | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |

and,

(6) The matter should be set down for trial involving the remaining claims.

Plaintiff filed objections through appointed counsel, Dkt. No. 253, and on a *pro se* basis, Dkt. No. 255; and defendants filed objections. Dkt. No. 254.

## II. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. *Farid v. Bouey*, 554 F. Supp. 2d 301, 306 n. 2 (N.D.N.Y. 2008); *see Frankel v. N.Y.C.*, 2009 WL 465645 at *2 (S.D.N.Y. Feb. 25, 2009). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

## III. DISCUSSION

### a. Plaintiff's Objections

Shepherd v. Lehpke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

### 1. Post-Commencement Exhaustion

**\*3** Plaintiff objects through counsel and on a *pro se* basis to Magistrate Judge Peebles's conclusion that plaintiff's claims that were exhausted after the action was commenced but before an amended complaint was filed ("Group Two", Claim Nos. 6, 36, 37 and 38) are nonetheless unexhausted under the holding of *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). Plaintiff argues that although the Second Circuit stated in *Neal* that "exhausting administrative remedies after a complaint is filed will not save a case from dismissal," the Circuit's decision did not specifically address situations where, as here, a claim is exhausted after commencement but prior to the filing of an amended complaint. Pl. Obj., p. 2. The Court finds no basis to reject Magistrate Judge Peebles's conclusion in this regard.

As Magistrate Judge Peebles explained:

> It is not clear from the court's decision in *Neal* that the plaintiff had included new claims in his amended complaint that were not asserted in his original complaint. In his *amicus curiae* brief to the Second Circuit, however, the New York State Attorney General explained that the plaintiff's amended complaint included newly asserted deliberate medical indifference causes of action that were not originally pleaded. Amicus Brief, *Neal v. Goord*, 267 F.3d 116 (2d Cir. 2001) (No. 99-0253), 2001 WL 34121400, at \*2-4. The Second Circuit affirmed the district court's dismissal of all of the plaintiff's claims, including the deliberate medical indifference causes of action, because none of them had been fully exhausted by the time the plaintiff filed his original complaint. *Neal*, 267 F.3d at 121-23.

Rep. Rec. p. 21, n. 16.

Thus, Magistrate Judge Peebles concluded that "[w]hile some circuits analyzing this fact pattern have permitted plaintiffs to litigate the causes of action that were newly included in an amended complaint and fully exhausted by the time the plaintiffs filed the amended complaint, the Second Circuit squarely addressed those facts in *Neal* and concluded otherwise." *Id.* p. 22 (citing *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010); *Barnes v. Briley*, 420 F.3d 673 (7th Cir. 2005)). The Court agrees with Magistrate Judge Peebles's conclusion. Moreover, the courts in this District have almost uniformly held that "a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, 2015 WL 268933, \*11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted); *see Thousand v. Corrigan*, 2017 WL 1093275, at \*3 (N.D.N.Y. Mar. 23, 2017)(quoting *Guillory*); *Reid v. Marzano*, 2017 WL 1040420, at \*2 (N.D.N.Y. Mar. 17, 2017)(quoting *Guillory*); *Kearney v. Gebo*, 2017 WL 61951, at \*2 (N.D.N.Y. Jan. 4, 2017)(quoting *Guillory*); *Toliver v. Fischer*, 2016 WL 3351974, at \*4 (N.D.N.Y. Mar. 22, 2016)(quoting *Guillory*), report and recommendation adopted *sub nom. Toliver v. Stefinik*, 2016 WL 3349316 (N.D.N.Y. June 15, 2016); *Klein v. Fischer*, 2015 WL 5174031, at \*19 (N.D.N.Y. Sept. 2, 2015) ("Furthermore, a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced.")(citing *Kasiem v. Switz*, 756 F. Supp.2d 570, 575 (S.D.N.Y. 2010) in turn citing *Neal*, 267 F.3d at 122); *see also Stimpson v. Comm'r Correction Off.*, 2017 WL 326314, at \*2 (D. Conn. Jan. 23, 2017). [3] The Court finds that under *Neal*, post-exhaustion amendment of the complaint does not cure an exhaustion defect existing at the time the action was commenced. Thus, plaintiff's objection on this ground is overruled.

### 2. Challenge to Credibility Assessment

**\*4** With respect to Groups 3 and 4, Magistrate Judge Peebles recommended dismissal of claim nos. 5, 7, 9, 12, 14, 24, 29, 30 and 33, because he did not find plaintiff's testimony relative to exhaustion of those claims to be credible. Rep. Rec. at 26, *see id.*, pp. 24-26. [4] Plaintiff argues through counsel that because the Court must conduct a *de novo* determination when objections are filed, the Court has discretion to conduct its own hearing in order to make its own assessment of credibility.

Plaintiff himself, in his *pro se* submission, also challenges Magistrate Judge Peebles's credibility determinations, arguing that all of his testimony should have been deemed credible.

**\*5** Neither plaintiff's counsel nor plaintiff himself have presented sufficient reasons for the Court to exercise its discretion and conduct its own hearing. Because Magistrate Judge Peebles was in a position to view plaintiff's testimony and assess his credibility based on his demeanor and in light of the other evidence presented in the case, *see* Rep. Rec. 24-26, and because plaintiff has not presented sufficient reasons to conclude that Magistrate Judge Peebles erred in his credibility determination, the Court adopts those determinations and overrules plaintiff's objection on this ground.

### 3. Burden of Proof

Plaintiff argues in his *pro se* submission that Magistrate Judge Peebles improperly placed the burden upon him to prove that he exhausted his administrative remedies. There is no merit to this contention. As Magistrate Judge Peebles explained, the Prison Litigation Reform Act imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, including a mandatory requirement that the inmate exhaust his administered of remedies. While exhaustion is a condition precedent to bringing suit by an inmate, Magistrate Judge Peebles indicated that "[i]n the event *a defendant establishes* that the inmate plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal." Rep. Rec., p. 8 (emphasis added). In light of this statement clearly placing the burden on the defendants to establish plaintiff's failure to comply with administrative exhaustion procedures, plaintiff's objection on the ground that he was required to prove exhaustion in the first instance is disingenuous. The objection is overruled.

### b. Defendants' Objections

### 1. Claim 4 against Artus

Claim 4 is a religious freedom claim in Group One against defendant Artus stemming from incidents spanning from October-December 2009 at Clinton Correctional Facility. Defendants argue that because plaintiff's grievance list from 2009 at Clinton Correctional Facility reveals only two grievances, neither of which asserted denial of religious freedom, plaintiff could not have exhausted his administrative remedies on this claim. Def. Mem. Law, p. 2. For the reasons that follow, the objection is overruled.

Magistrate Judge Peebles addressed defendants' contention that plaintiff failed to exhaust the available administrative remedies against defendant Artus (as well as against defendants Colvin and Lempke) on the Group One claims because plaintiff did not file any grievances that specifically identified Artus or complained of his conduct. In denying the argument, Magistrate Judge Peebles correctly recognized that "the weight of authority ... suggests that inmate-plaintiffs need not file grievances identifying particular individuals or articulating a particular theory of liability (much less specifically grieve a supervisor theory of liability)." Rep. Rec. p. 19 (citing, *inter alia*, *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)("In determining whether exhaustion has been achieved, we have drawn an analogy between the contents of an administrative grievance and notice pleading, explaining that as in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.")(interior quotation marks and alteration omitted)). However, Magistrate Judge Peebles also indicated in a footnote: "In attacking the claims falling into group one, defendants have not argued that plaintiff failed to file grievances regarding the underlying constitutional deprivations. Accordingly, I have not scoured the available record to determine whether plaintiff did, in fact, file grievances addressing those violations." Rep. Rec. p. 19, n. 15. Thus, defendants appear to be raising an issue that was not presented to Magistrate Judge Peebles.

**\*6** While the question of "[w]hether a party may raise a new legal argument ... for the first time in objections to [a magistrate judge's report and recommendation] has not yet been decided in this Circuit, ... [s]ome courts in this circuit have stated, as a general matter, that a 'party waives any arguments not presented to the magistrate judge.' *Levy v. Young Adult Institute, Inc.*, 2015 WL 1958889, at \*4 (S.D.N.Y. Apr. 30, 2015). Other courts have held that district courts should not consider belatedly

2017 WL 1187859

made arguments because doing so negates "efficiencies gained through the Magistrates Act and would permit litigants to change tactics after the issuance of [a report and recommendation]." *Amadasu v. Ngati*, 2012 WL 3930386, at *5 (E.D.N.Y. Sept. 9, 2012). District Judge D'Agostino has held that "[l]egal arguments may not be raised for the first time in an objection." *Lewyckyj v. Colvin*, 2014 WL 3534551, at *2 (N.D.N.Y. July 17, 2014)(citing *Abu–Nassar v. Elders Futures. Inc.*, 1994 WL 445638, *5 n. 2 (S.D.N.Y. Aug. 17, 1994))("If the Court were to consider ... untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments.").

The Court finds that the defendants have waived the argument that plaintiff's grievances from 2009 at Clinton Correctional Facility failed to assert the basis of a denial of religious freedom claim against Artus. Defendants could have raised the argument before Magistrate Judge Peebles who conducted an extensive review of the claims in this matter and a thorough fact-finding hearing. To allow defendants to raise the matter now would undermine the authority of Magistrate Judge Peebles, negate the judicial efficiencies gained through the report and recommendation procedure, and seemingly allow defendant to raise a new argument in a forum that does not ordinarily invite adversarial responses. Moreover, defendants failed to attach to their objections the two grievances to which they refer, nor do they point the Court to where in the record the grievances could be found. Thus, efficiency and fairness does not militate in favor of considering the matter now. Still further, the defendants fail to provide any reason why the issue was not raised before Magistrate Judge Peebles, and the Court does not find that manifest injustice will result if the new argument is not considered. Accordingly, defendants' objection in this regard is overruled.

### 2. Claims against Colvin & Lempke

Claims 16, 17, and 18 against defendant Colvin, and claims 26, 27, 28 against defendant Lempke, are for excessive use of force, denial of religious freedom, and retaliation allegedly occurring at Upstate Correctional Facility. *See* Am. Comp. ¶¶ 86, 105 and 108. Defendants argue that because (1) the Amended Complaint "generally reads in chronological order; (2) paragraph 86 is

embedded in the section entitled "Denial of Medical Care;" and, (3) paragraph 86 encompasses paragraphs 62-109, "it is clear from reading this section of the amended complaint as a whole that plaintiff is referring to a time period prior to, or at most, to June 22, 2010. This is such because the subsequent paragraph, 87, clearly begins with allegations stemming from June 22, 2010." Def. Mem. L. p. 2. Defendants further assert that "Plaintiff's movement history shows that between August 7, 2009 and June 22, 2010, he was not housed at Upstate." *Id.* From this, they argue that because "supervisors cannot be liable for the conduct, policies or procedures of staff at a different facility," *id.,* Colvin and Lempke cannot be held responsible for claims 16, 17, 18, 26, 27, and 28. *See id.* ("[I]rrespective of whether [plaintiff] filed grievances regarding the underlying claims contained in paragraph 86, plaintiff's claims against Colvin and Lempke are misplaced in their capacity as supervisors because these defendants could not have had any control over the conditions in another facility, and therefore they were not personally involved."). Thus, defendants contend that the Court should "dism iss these claims against Colvin and Lempke." *Id.*

**\*7** Defendants' argument is not addressed to Magistrate Judge Peebles's recommendation that dealt with whether plaintiff exhausted his administrative remedies, but rather to whether claims 16, 17, 18, 26, 27, and 28 are legally viable. Because this objection is not addressed to an alleged error by Magistrate Judge Peebles in recommending whether plaintiff exhausted administrative remedies, but rather appears to be an attempt to convert a 28 U.S.C. § 636(b)(1) objection into a Rule 56 summary judgment motion, the objection is overruled. Defendants can challenge the sufficiency of these claims at the time of trial.

### 3. Claims against Artus, Colvin, and Lempke

Defendants make similar arguments addressed to the legal sufficiency of claims brought against Artus, Colvin, and Lempke in paragraphs 105 and 108. For the reasons discussed above, defendants' objections in this regard are overruled. Again, defendants can challenge the sufficiency of these claims at the time of trial.

#### 4. Claims 15, 20, 23, and 32

Claims 15, 20, 23, and 32 against Defendant Prebalick, Cioffa, Evans and Jones allege excessive use of force and the failure to protect on May 6, 2010. With regard to administrative exhaustion of these claims, Magistrate Judge Peebles found:

> All of these claims relate to the same incident that allegedly occurred on May 6, 2010, and involved the use of force by defendants Prebalick, Cioffa, and Evans. Dkt. No. 45 at 5. Plaintiff also alleges that defendant Jones was present for, and failed to protect him from, the use of force. *Id.* In support of plaintiff's contention that he filed a grievance, dated May 7, 2010, regarding the excessive force and failure to protect claims asserted against defendants Prebalick, Cioffa, Evans, and Jones, plaintiff adduced, *inter alia,* a letter he addressed to Karen Bellamy, the DOCCS Director of Inmate Grievance, dated August 13, 2010, inquiring about the status of "several grievances [he had filed] in May 2010[.]" Exhs. P-E-6, P-G-6. Bellamy responded to plaintiff in a letter dated September 22, 2010, pointing out that her review of prison records demonstrated that plaintiff had filed six grievances at Five Points in May 2010. Exhs. P-E-7, P-G-7. By the time plaintiff sent his letter to Bellamy on August 17, 2010, he had received a response to five other grievances he had filed in May 2010. Exhs. D-7, D-8, D-9, D-10, D-11. It remains a mystery why some of the grievances filed by plaintiff at Five Points in May 2010 were processed but not the grievance allegedly relating to the incident involving defendants Prebalick, Cioffa, Evans, and Jones on May 6, 2010. One possible explanation is that plaintiff did not actually file a grievance. Another possibility is that, assuming plaintiff filed the grievance, prison officials interfered, intentionally or not, in a manner that resulted in plaintiff's grievance never being processed. Unlike plaintiff's testimony regarding other claims in groups three and four, his testimony regarding claims 15, 20, 23, and 32 is accompanied by his letter to Bellamy, which is stamped as having been received by Bellamy's office, and Bellamy's response to his letter. Exhs. P-E-6, P-E-7, P-G-6, P-G-7. Because the contents of those letters plausibly suggest that plaintiff's grievance related to the incident on May 6, 2010, involving defendants Prebalick, Cioffa, Evans, and Jones was submitted but never processed,

> I have credited plaintiff's testimony regarding the claims arising from that incident only. Accordingly, I recommend defendants' motion to dismiss be denied with respect to claims 15, 20, 23, and 32.

**\*8** Rep. Rec. pp. 28-29.

Defendants argue, *inter alia,* that "[a]lthough the last line of plaintiff's letter to Bellamy indicates 'please find the enclosed unanswered grievances,' and even affording plaintiff the benefit that the letters contained in [the various exhibits] are the enclosure he is referring to, plaintiff still falls short of proper exhaustion. Respectfully, [Magistrate Judge Peebles] did not address the next inquiry which is whether plaintiff appealed the non-response to the Superintendent." Def. Mem. L., p. 3.

In *Johnson v. Tedford*, 616 F. Supp. 2d 321 (N.D.N.Y 2007), the court indicated that "in light of the Second Circuit's [*Hemphill v New York*, 380 F.3d 680 (2d Cir. 2004) ] decision, several Southern District cases have recognized that when a prisoner asserts a grievance to which there is no response, and it is not recorded or assigned a grievance number, administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review." *Id.* at 326. However, and despite that the exceptional circumstance exception of *Hemphill* has recently been abrogated, [5] *Johnson* has been repeatedly distinguished by the Northern District. As Chief Judge Suddaby wrote in *Smith v. Kelly*, 985 F. Supp. 2d 275 (N.D.N.Y. 2013):

> There appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number. After carefully reviewing this case law, the Court finds that the weight of authority (and better-reasoned authority) answers this question in the affirmative. The Court notes that, if the plaintiff adequately describes, in his appeal to the superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), and the plaintiff adequately describes the failure

Case 9:15-cv-00497-DNH-TWD    Document 113    Filed 11/13/18    Page 125 of 144

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

to process the grievance, there is something for the superintendent to review.

*Id.* at 281–82 (N.D.N.Y. 2013)(collecting cases).

**\*9** Based on the weight of authority, the Court agrees with defendants that the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must itself be appealed to the next level, including the CORC, in order to properly complete the grievance process. *See Simmon v. Uhler*, 2015 WL 5655561, at *4 (N.D.N.Y. Sept. 24, 2015) ("[T]he failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal must be appealed to the next level, including the CORC, in order to properly complete the grievance process.")(citing *Pacheco v. Drown*, 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan. 11, 2010); *Smith v. Kelly*, 985 F. Supp.2d at 281–82 & n. 8 (N.D.N.Y. 2013)); *Goodson v Silver*, 2012 U.S. Dist. LEXIS 137177, at *11, 2012 WL 4449937 (N.D.N.Y. Sept. 25, 2012) (stating that "any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC, to complete the grievance process"); *Veloz v New York*, 339 F. Supp.2d 505, 516 (S.D.N.Y. 2004) (holding that an inmate in the New York State system was required to appeal even if he did not get a response to allegedly misplaced or destroyed grievances).

The law is clear that simply writing letters to supervisory officials is insufficient to exhaust administrative remedies, *Simmon*, 2015 WL 5655561, at *4 n. 5 (citing *Perez v. Blot*, 195 F. Supp.2d 539, 544-45 (S.D.N.Y. 2002) (citing cases)); *Masas v. Conte*, 2015 U.S. Dist. LEXIS 50527 (N.D.N.Y Mar. 25, 2015), so plaintiff's letter to Bellamy does not satisfy his exhaustion obligation. Moreover, there is no evidence that plaintiff, "an experienced *pro se* litigant who has filed multiple actions in this and other courts as a New York State prison inmate," Rep. Rec. 2, who undoubtedly was familiar with the grievance and appeal process, *see* Hear Tr. pp. 113:15 – 116:6, [6] 128:21-129:4, [7] Def. Post-Hearing Mem. L. p. 10, [8] appealed the non-response to his grievance addressed to the facts underlying claims 15, 20, 23, and 32 against Prebalick, Cioffa, Evans and Jones. Accordingly, these claims are dismissed for failure to exhaust administrative remedies.

## IV. CONCLUSION

For the reasons discussed above, Magistrate Judge Peebles's October 28, 2016 Report and Recommendation, Dkt. No. 252, is accepted in part and rejected in part, as follows:

(1) The following claims are deemed exhausted and remain pending for trial:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|-----------|-----------|-----------------|----------|---------------------|
| 3 | Artus | Medical Indifference | Clinton | 31, 104-05,108-09 |
| 4 | Artus | Religious Interference | Clinton | 31, 104-05,108-09 |
| 13 | Carlee | Retaliation | Five Points | 18 |
| 16 | Colvin | Excessive Force | Upstate | 86, 105, 108 |
| 17 | Colvin | Religious | Upstate | 86, 105, 108 |
| 18 | Colvin | Retaliation | Upstate | 86, 105, 108 |
| 19 | Cunningham | Due Process | Green | 107 |
| 26 | Lempke | Excessive Force | Upstate | 86, 105, 108 |
| 27 | Lempke | Religious | Upstate | 86, 105, 108 |
| 28 | Lempke | Retaliation | Upstate | 86, 105, 108-09 |

| 34 | Prebalick | Excessive Force | Five Points | 35 |
|----|-----------|-----------------|-------------|-----|
| 35 | Ramus | Due Process | Five Points | 107 |

**\*10** (2) The following claims will also proceed to trial based on the parties' failure to address them in connection with defendants' exhaustion defense:

| Defendant | Cause of Action | Prison Facility |
|-----------|-----------------|-----------------|
| Amatucci | Medical Indifference | Downstate |
| Barber | Failure to Protect | Five Points |
| N. Bezio | Due Process | DOCCS Hq. |
| Cambria | Excessive Force | Unknown |
| Chesbrough | Retaliation | Upstate |
| Holmes | Retaliation | Upstate |
| Rock | Religious Interference | Upstate |
| Lashway (formerly sued as Hawthorne) | Medical Indifference | Clinton |

(3) The following claims are dismissed based upon plaintiff's representation that they are not being asserted in this action:

| Claim No. | Defendant | Nature of Claim | Facility | Amended Complaint ¶ |
|-----------|-----------|-----------------|----------|---------------------|
| 10 | Bower | Failure to Protect | Five Points | 15 |
| 11 | Bower | Retaliation | Five Points | 15 |
| 21 | Evans | ReligiousInterfer. | Five Points | 32 |

(4) The following claims are dismissed based upon the fact that complete exhaustion occurred only after this action was filed:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
|-----------|------|-----------------|----------|---------------------|
| 6 | Belsio | Religious Interference | Upstate | 41, 42 |
| 8 | Atkinson | Retaliation | Upstate | 90, 91 |
| 25 | Lashway | Medical Indifference | Clinton | 75, 76 |
| 31 | Prebalick | Religious Interference | Five Points | 35 |
| 36 | Rowe | Failure to Protect | Upstate | 43 |
| 37 | Rozwell | Excessive Force | Upstate | 43 |

Shepherd v. Lehpke, Not Reported in Fed. Supp. (2017)
2017 WL 1187859

Case 9:15-cv-00497-DNH-TWD    Document 113    Filed 11/13/18    Page 127 of 144

| 38 | Rozwell | Religious Interference | Upstate | 43 |

(5) The following claims are dismissed based upon plaintiff's failure to fully exhaust them:

| Claim No. | Name | Nature of Claim | Facility | Amended Complaint ¶ |
| --- | --- | --- | --- | --- |
| 5 | Belsio | Excessive Force | Upstate | 41, 42 |
| 7 | Belsio | Religious | Upstate | 41, 42 |
| 9 | Bower | Excessive Force | Five Points | 15 |
| 12 | Carlee | Religious | Five Points | 34 |
| 14 | Carlee | Excessive Force | Five Points | 34 |
| 22 | Fairchild | Retaliation | Upstate | 92 |
| 24 | Jones | Medical Indifference | Five Points | 87 |
| 29 | Menard | Excessive Force | Clinton | 28 |
| 30 | Menard | Religious | Clinton | 28 |
| 33 | Prebalick | Excessive Force | Five Points | 16 |
| 15 | Cioffa | Excessive Force | Five Points | 19, 20 |
| 20 | Evans | Excessive Force | Five Points | 20 |
| 23 | Jones | Failure to Protect | Five Points | 21 |
| 32 | Prebalick | Retaliation | Five Points | 19-22 |

The Court Clerk's Office shall now schedule three trials for the remaining claims in accordance with the Court's September 22, 2015 Decision and Order, Dkt. No. 202, taking into account claims and defendants that are dismissed from the action by this Decision and Order. To aid the Court Clerk's Office in scheduling these trials, each part shall submit, within thirty (30) days, a status letter indicating the claims and defendants that remain pending and that they contend should be tried in each of the trials ordered by the Court on September 22, 2015, Dkt. No. 202.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1187859

Footnotes

1    "Generally speaking, Shepherd alleges that he was sexually and physically assaulted, and deprived of his freedom of religion, procedural due process, access to the courts, and adequate medical care." Rep. Rec. p. 3.

2    Part of this procedural history is that the Court adopted Magistrate Judge Peebles's previous recommendation to grant defendants' motion that plaintiff's claims be divided into three categories with each group being tried separately. *See*

Case 9:15-cv-00497-DNH-TWD    Document 113    Filed 11/13/18    Page 128 of 144

Shepherd v. Lempke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

Rep. Rec. p. 6; *see also* Dkt. No. 202. At the time this decision was entered, the three groups anticipated for purposes of trial were:

(1) All claims involving events at the Clinton Correctional Facility, plus a medical indifference claim against Dr. Amatucci arising from events at the Downstate Correctional Facility, and related claims against defendants Artus, Amatucci, Lashway, and Menard.

(2) All claims involving events at the Five Points Correctional Facility against defendants Barber, Bower, Carlee, Cioffa, Jones, Evans, Prebalick, and Ramus, plus plaintiff's due process claim against defendants Cunningham and Bezio arising from the events at the Green Haven Correctional Facility.

(3) All remaining claims, including those relating to events at the Upstate Correctional Facility, plus an excessive force cause of action against defendant Cambria based upon the events at an undetermined location. This third trial will include the following defendants: Belsio, Cambria, Colvin, Holmes, Fairchild, Atkinson, Chesbrough, Lempke, Rock, Rowe, and Rozwell.

*See* Rep. Rec. p. 6; *see also* Dkt. No. 202.

3 ("[P]risoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 83–85 (2006). Thus, completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement. *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001). Accordingly, I instructed Stimpson that any amended complaint must include allegations regarding any attempts by him to exhaust administrative remedies with regard to his claims prior to filing this lawsuit.")

4 In this regard, Magistrate Judge Peebles wrote:

Having reviewed the evidence and observed his demeanor, I conclude that, with limited exception, which will be discussed more below, plaintiff was not credible insofar as he testified that he submitted grievances concerning the incidents that are the basis for his claims in groups three and four. It is worth noting that, while plaintiff was able to produce alleged copies of the grievances and follow-up letters that relate to the claims in group three at the exhaustion hearing, those documents were not provided to defendants during the course of discovery. Dkt. No. 249-2 at 79. Plaintiff explained that he failed to produce those documents earlier in the litigation because he had sent copies of the grievances and letters to his family members for safekeeping but was only recently able to retrieve them. *Id.* at 83-85. Plaintiff did not offer any explanation as to why copies of some but not all of his grievances and letters were available from his family members. Moreover, his explanation concerning which of his family members possessed those grievances has been inconsistent. At the hearing, plaintiff testified that the copies were retrieved from his son, *id.* at 84, but plaintiff testified under oath during his deposition that his wife was in possession of any document that had not previously been produced during discovery. *Id.* at 85-86.

Plaintiff's credibility must be measured with his prior grievance history as a backdrop. Plaintiff is no stranger to the grievance process, and there is no evidence that, aside from the grievances related to the claims in groups three and four, plaintiff has experienced any difficulty in filing and pursuing grievances over the course of his incarceration. Indeed, according to Jeffrey Hale, the Assistant Director of the DOCCS Inmate Grievance System, as of one day prior to the start of the hearing, plaintiff had appealed 445 grievances to the CORC, with an additional nine appeals then-pending. Dkt. No. 249-2 at 128-29. The sheer number of grievances that plaintiff has pursued during his incarceration leaves no doubt that he is well-versed in the grievance process.

In my view, the evidence adduced by the parties with regard to the claims in group three and four support a recommended finding that, except with respect to claims 15, 20, 23, and 32, all of the claims are unexhausted and subject to dismissal on that basis. Although plaintiff adduced purported copies of grievances and/or letters regarding his exhaustion attempts in connection with claims 9, 12, 14, 29, 30, and 33, all of which are part of group three, there is no independent evidence to corroborate plaintiff's testimony in this regard. In addition, there is no record evidence at all to support plaintiff's hearing testimony that he filed grievances regarding claims 5, 7, and 24 in group four. Because I did not find plaintiff's testimony credible for the reasons already discussed above, I recommend the court dismiss claims 5, 7, 9, 12, 14, 24, 29, 30, and 33 as unexhausted.

5 In *Ross v. Blake*, ––– U.S. –––– 136 S. Ct. 1850 (2016), the Supreme Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstances" to justify a prisoner's failure to comply with administrative procedural requirements. *See Ross*, 136 S. Ct. at 1856-57. *Ross* has been interpreted as abrogating the special-circumstances exception set forth in *Hemphill. See Riles v. Buchanan,* 656 Fed. Appx. 577, 581 (2d Cir. 2016)("Finally, to the extent Riles relies on our decision in *Hemphill* ... to argue that special circumstances excuse his failure to exhaust available remedies, that avenue has been foreclosed.")(citing *Williams v. Priatno*, 829 F.3d 118, 123, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016))(explaining that *Ross* abrogated the special-

Case 9:15-cv-00497-DNH-TWD    Document 113    Filed 11/13/18    Page 129 of 144

Shepherd v. Lehipke, Not Reported in Fed. Supp. (2017)

2017 WL 1187859

circumstances exception and "supplant[ed] our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available").

6    Jeffrey Hale, Assistant Director of the Central Office Review Committee, testified at plaintiff's evidentiary hearing that there are safeguards in place in DOCCS' grievance process for inmates specifically for this type of situation, as plaintiff purports to be. Hear Tr. pp. 113:15 – 116:6. That is, if an inmate does not receive a response to a grievance, "[t]hey just write a simple note to the IGRC clerk or they can address it to the inmate grievance program supervisor requesting to appeal that grievance to the next level of review." Hear Tr. p. 113:15-23. Mr. Hale testified that inmates have a two week timeframe within which to file an appeal of a non-response to the Superintendent, and, in addition, inmates also have the same recourse for filing a late appeal as they would a timely appeal. *Id.* 114:9-115:25.

7    Mr. Hale testified that, at the time of plaintiff's hearing, plaintiff had successfully exhausted 445 grievances and had 6 appeals pending. Hear. Tr. pp.128:21-129:4.

8    Defendants contend that Plaintiff successfully exhausted an estimated 300 grievances at the time he filed this law suit. Def. Post-Hearing Mem. L., p. 10 (citing Hearing Ex. D-3).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3351974
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michel Toliver, Plaintiff,

v.

Brian Fischer, et al., Defendants.

No. 9:12-CV-77 (MAD/ATB)
|
Signed 03/22/2016

**Attorneys and Law Firms**

MICHEL TOLIVER, Plaintiff pro se.

CATHY Y. SHEEHAN, Ass't Att'y Gen., Attorney for
Defendants.

### REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** Currently before this court is defendants' summary
judgment motion, seeking dismissal of the surviving
claims in plaintiff's amended civil rights complaint. (Dkt.
No. 236). Plaintiff has filed a response in opposition to
the motion. (Dkt. No. 242). The motion to dismiss has
been referred to me for Report and Recommendation,
pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y.
72.3(c), by the Honorable Mae A. D'Agostino, United
States District Judge. For the reasons stated below, this
court recommends that defendants' summary judgment
motion be granted in part, and that plaintiff's amended
complaint be dismissed, in part without prejudice, and in
part with prejudice.

### I. PROCEDURAL HISTORY

On January 17, 2012, plaintiff commenced this civil
rights action, pursuant to 42 U.S.C. § 1983, alleging
that 20 employees of the New York State Department
of Correctional and Community Services ("DOCCS")
violated his constitutional rights during his confinement at
the Shawangunk Correctional Facility ("Shawangunk").
(Compl., Dkt. No. 1). By Decision and Order dated
May 3, 2012, Judge D'Agostino dismissed, *sua sponte*,
defendants Schneiderman, Bellamy, and Prack from the

action because the complaint did not state facts suggesting
their personal involvement in the alleged violations of
plaintiff's constitutional rights. (Dkt. No. 9 at 8-10).

On June 28, 2012, plaintiff filed an amended complaint
(Dkt. No. 27), which, by Decision and Order dated
December 6, 2012 (Dkt. No. 85), Judge D'Agostino
accepted for filing against 17 of the original defendants,
as well as Correction Officer ("C.O.") North. [1] Liberally
construed, plaintiff's amended complaint asserted a First
Amendment claim, based on the defendants' alleged filing
of false misbehavior reports against plaintiff, in retaliation
for his pursuit of complaints, grievances, appeals, and
Article 78 actions; an equal protection claim based on
alleged discrimination against plaintiff because of his
race, disability, and/or sexual orientation; a conspiracy
claim related to the retaliation and discrimination
claims; a Fourteenth Amendment claim alleging denial
of procedural due process in connection with various
disciplinary proceedings; and an Eighth Amendment
claim for failure to provide adequate medical attention.
(Dkt. No. 27 at 8-9, 35).

The Attorney General's Office filed a motion, pursuant
to Fed. R. Civ. P. 12(b)(6), seeking dismissal of plaintiff's
amended complaint in its entirety, on behalf of all but
one of the remaining defendants. [2] (Dkt. No. 134). Judge
D'Agostino, adopting my Report-Recommendation (Dkt.
No. 155), dismissed plaintiff's conspiracy claim, and all
claims against defendants Fischer, Maly, and LeClaire,
but otherwise denied defendants' motion to dismiss. (Dkt.
No. 169).

**\*2** As Judge D'Agostino has observed, plaintiff, in
litigating this case, has made numerous

> abusive and frivolous filings, which
> have included more than twenty
> motions for preliminary injunctive
> relief, eight motions to amend
> the amended complaint, several
> requests for sanctions, repeated
> motions to compel discovery seeking
> evidence which is clearly irrelevant
> to the matter at hand, numerous
> motions for reconsideration of
> the Court's denials of Plaintiff's
> frivolous motions, and countless
> appeals to this Court of Magistrate

Judge Baxter's denials of his frivolous requests. As the Court detailed in its April 15, 2015 Memorandum-Decision and Order, Plaintiff has filed approximately thirty lawsuits in the district courts of New York and has engaged in similar abusive tactics in many of them.

(Dkt. No. 233). Since defendants filed their summary judgment, plaintiff filed several further motions to amend or supplement his complaint (Dkt. Nos. 240, 241, 243, 245), which Judge D'Agostino denied as frivolous, vexatious, and in clear contravention of her repeated notices to plaintiff "that the Court will not permit [him] to amend the amended complaint in this now four-year old case." (Dkt. Nos. 244, 246). [3]

## II. FACTS AND CONTENTIONS

When plaintiff was transferred to Shawangunk in February of 2011, he required the assistance of a walker when inside his cell, and otherwise needed a wheelchair to ambulate, because of back problems. (Am. Compl., Dkt. No. 27 at 17). [4] He was assigned to a housing unit that was not wheelchair accessible so that he could attend a mandatory program available only in that cell block. (Dkt. No. 27 at 19). Plaintiff was told that his wheelchair had to be kept in a bin in a storage room and retrieved from that location whenever he required it to move around the facility. (Dkt. No. 27 at 17). Plaintiff alleges that he suffered substantial pain, and was injured on several occasions while attempting to store or retrieve his wheelchair, and that the defendants ignored these serious medical issues and delayed his referral to treatment. (Dkt. No. 27 at 17-18, 21-24). Plaintiff further claims that his repeated requests for inmate assistance with storing and retrieving his wheelchair were denied. (Dkt. No. 27 at 17-20).

Plaintiff alleges that, between March 2011 and May 2012, he filed a number of grievances, implicating various defendants, regarding the conditions of his confinement, including issues relating to the storage and retrieval of his wheelchair and his ability to take extended showers because of his medical issues. (Dkt. No. 27 at 11-13, 40-41, 72-81). Plaintiff claims that defendants filed numerous false misbehavior reports against him in retaliation for

pursuing grievances (Dkt. No. 27 at 24-26, 41-59), and because of his race and sexual orientation (as overtly gay) (Dkt. No. 27 at 35, 58-59). Plaintiff further alleges that he was denied due process in connection with the disciplinary hearings against him because he was found guilty by a biased hearing officer on many misbehavior reports, despite overwhelming evidence of his innocence or other mitigating circumstances. (Dkt. No. 27 at 25, 42, 49, 51-52). Defendants contend that plaintiff's action should be dismissed because it was filed **before** he exhausted his administrative remedies, by completing the DOCCS grievance process, with respect to any of his surviving claims. This court agrees that, before he initiated this lawsuit, plaintiff failed to exhaust his administrative remedies with respect to all of his remaining claims, except for the due process claims relating to disciplinary proceedings, which must be exhausted by administrative appeals of the sanctions imposed, not through the grievance process. Accordingly, plaintiff's retaliation, equal protection, and Eighth Amendment medical claims should be dismissed without prejudice to refiling, to the extent exhaustion of administrative remedies through the grievance process has now been, or may still be completed with respect to these claims.

**\*3** Defendants also argue that plaintiff's due process claims should be dismissed on the merits because the penalties served by plaintiff were not sufficiently severe to create a liberty interest that would trigger his right to due process in connection with the disciplinary hearings. The court concludes, based on the established facts in the record, that plaintiff did not have a protected liberty interest in connection with any of the disciplinary proceedings challenged in the amended complaint. Accordingly, plaintiff's due process claim may be dismissed with prejudice.

Defendant have made other arguments as to why certain of plaintiff's claims should be dismissed on the merits. Those arguments need not be addressed in light of my recommendations, summarized above, which will dispose of all remaining claims.

## III. SUMMARY JUDGMENT

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    2

["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.' " *Id., 2006 WL 1133247*, at *3 & n.11.

## IV. EXHAUSTION

### A. Applicable Law

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies **prior to bringing a federal civil rights action**. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

**\*4** The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8.

To the extent a civil rights claims must be exhausted by the grievance process, [5] completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim

may be initially filed. *See, e.g., Casey v. Brockley*, No. 9:13-CV-1271 (DNH/TWD), 2015 WL 8008728, at *5 (N.D.N.Y. Nov. 9, 2015) (Rep't-Rec.), *adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015) ("receiving a decision from CORC after commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds, Porter v. Nussle*, 534 U.S. 516 (2002)); *Guillory v. Haywood*, No. 9:13-CV-1564 (MAD/TWD), 2015 WL 268933, at *12 (N.D.N.Y. Jan. 21, 2015); *Rodriguez v. Rosner*, No. 12-CV-958 (TJM/ATB), 2012 WL 7160117, at *5 (N.D.N.Y. Dec. 5, 2012) (Rep't-Rec.), *adopted*, 2013 WL 614360 (N.D.N.Y. Feb. 19, 2013). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, 2015 WL 268933, at *11 (citing, *inter alia, Neal v. Goord*, 267 F.3d at 122)).

**\*5** When the Second Circuit decided *Giano*, it also decided four other related cases, further clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[6] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.* Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry in recent cases. *See, e.g., Amador v. Andrews*, 655 F.3d 89, 102-103 (2d Cir. 2011) (declining to reach the issue, but noting that even under "pre-*Woodford* caselaw" the plaintiff had failed to establish either that defendants were estopped from asserting the defense or whether special circumstances excused exhaustion); *Heyliger v. Gebler*, 624 Fed.Appx. 780, 782-83 (2d Cir. 2015); *Davis v. State of New York*, 311 Fed.Appx. 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 Fed.Appx. 89, 91 (2d Cir. 2011).[7]

**B. Analysis**

In their answer to the amended complaint, the defendants properly asserted the affirmative defense that the plaintiff failed to exhaust his administrative remedies. (Answer ¶ 19 (Tenth Defense), Dkt. No. 171 at 4). Plaintiff's argument that the defendants waived their right to assert an exhaustion defense by not raising it in their pre-answer motion to dismiss (Pl.'s Opposition to Defendants' Statement of Material Facts ¶ 6, Dkt. No. 242-1 at 12), is without merit.[8]

**\*6** Defendants have submitted an affidavit from Michael Cunningham, the supervisor of the Inmate Grievance Program ("IGP") at Shawangunk listing all of the grievance filed by plaintiff between February 2011 and July 2012. (Dkt. No. 236-3). Defendants also submitted a certified copy of a report from CORC showing plaintiff's appeals to CORC of grievances filed between 2011 and 2015. (Sheehan Affirm., Ex. B, Dkt. No. 236-8). The information from these two sources was collated in a spreadsheet summarizing plaintiff's grievance filings and appeals, attached as Appendix A to defendants' Memorandum of Law. (Dkt. No. 236-10 at 20-21). This data indicates that plaintiff filed only five grievances at Shawangunk before he filed his initial complaint on January 17, 2012, and that he fully exhausted only two of those grievances. The decisions of CORC with respect to the two fully appealed grievances were not rendered until late February or early March 2012, **after** plaintiff's initial complaint was filed. (Appendix A, Dkt. No. 236-10 at 21). Accordingly, defense counsel argues that plaintiff did not exhaust his administrative remedies with respect to any of his claims in this action before he filed his first complaint, requiring that the action be dismissed, presumably without prejudice.

Plaintiff responded to the defendants' presentation of his grievance history by claiming, in conclusory terms, that he submitted many more grievances than the defendants acknowledge, which the IGRC refused to file, and that he filed additional appeals to CORC, which CORC sometimes refused to accept. (Pl.'s Opposition to Defendants' Statement of Material Facts ¶¶ 2-4, Dkt. No. 242-1 at 2-3). Plaintiff's amended complaint, although it is often vague and confusing, appears to allege that he "circulated" or filed "complaints" or grievances on the following dates in 2011 that are not reflected on the defendants' spreadsheet—March 9, 22,

25 and 30. (Am. Compl., Dkt. No. 27 at 11-12). The amended complaint attaches a letter from DOCCS Dep. Commissioner Leclaire dated April 26, 2011, which responds to a letter of complaint from plaintiff and reminds plaintiff that "[a]llegations of misconduct by facility staff should be directed to facility officials through the established grievance mechanism or by writing to the Superintendent." (Dkt. No. 27 at 63). Thus, it appears that, when plaintiff now claims that he submitted grievances that were not properly filed by the IGRC, he may be referring to informal complaints that he failed to properly directed to the established grievance mechanism.

The only copy of a formal "grievance" that plaintiff has submitted in this action that does not appear to be reflected on the defendants' spreadsheet is dated March 9, 2011, and was attached to one of plaintiff's many unsuccessful motions to further amend the complaint. (Dkt. No. 243-4 at 31). In the Amended Complaint, plaintiff alleges that he "circulated" this grievance to "the above named defendants" (Dkt. No. 27 at 11), so it is unclear whether he properly submitted this grievance to the IGRC. Plaintiff has filed no documentation suggesting that he ever appealed a denial of the March 9, 2011 grievance. In any event, the substance of plaintiff's complaint in the purported March 9th grievance was covered, in much greater detail, in his grievance dated March 10th, which was filed as Grievance No. 26770-11 by the IGRC and was appealed by plaintiff. (Dkt. No. 236-5 at 3-28). The court concludes that plaintiff's vague and conclusory allegations that he filed other grievances that were not accepted by the IGRC at Shawangunk do not, in light of the documentation that the defendants have provided about plaintiff's grievance history, create a factual dispute material to the issue of whether plaintiff exhausted his administrative remedies before he filed his initial complaint. [9]

 *7 Similarly, plaintiff's claim that CORC sometimes refused to accept his appeals does not create a material issue of fact with respect to the exhaustion issue. Plaintiff has submitted two letters from CORC, dated July 11, 2011 and June 12, 2012, returning papers to him, and advising plaintiff that appeals of grievances must be submitted through the IGRC at his facility, and not sent directly to CORC. (Supplemental Docs. in support of initial Complaint, Dkt. No. 4-2 at 8-9; Dkt. No. 27 at 70). Only the 2011 letter is relevant to the exhaustion

issue in this case, because it pre-dates the filing of plaintiff's initial complaint. It is clear that the July 11, 2011 letter relates to Grievance No. 26770-11, which plaintiff ultimately appealed, in the proper manner, to CORC, notwithstanding that plaintiff's earlier attempt to appeal directly to CORC was refused. (*See* Pl.'s Opposition to Summary Judgment Motion, Dkt. No. 242 at 5-6; Dkt. No. 4-2 at 8-9). While CORC's return of plaintiff's initial inquiry relating to Grievance No. 26770-11 may have delayed CORC's decision, it did not preclude plaintiff from ultimately exhausting this grievance.

Plaintiff's primary argument as to why his failure to exhaust his administrative remedies before filing this action should be excused based upon the *Hemphill* factors, is that CORC far exceeded the time limits set by DOCCS regulations in denying his final appeal of Grievance No. 26770-11. (Pl.'s Opposition to Summary Judgment Motion, Dkt. No. 242 at 4-8). However, it is well-established in this Circuit that a plaintiff must wait for a final decision from CORC before filing an action, even if CORC's decision is untimely under DOCCS internal rules and regulations. *See, e.g., Casey v. Brockley*, 2015 WL 8008728, at *6 ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust") (collecting cases); *Guillory v. Haywood*, 2015 WL 268933, at *12 ("although regulations require CORC to respond within thirty days, its failure to do so is not a 'special circumstance' which might defeat an exhaustion defense"). Otherwise, plaintiff has not established a material issue of fact with respect to the availability of the administrative grievance remedies, or any other "special circumstances" that might justify plaintiff's failure to fully exhaust the grievance procedures before filing this action. The long list of grievances plaintiff pursued in 2011 and 2012 certainly indicate that plaintiff had access to the grievance process and was not inhibited in taking full advantage of it. (Appendix A, Dkt. No. 236-10 at 21).

Because plaintiff failed to complete the grievance process with respect to his retaliation, equal protection, and Eighth Amendment medical claims before he initiated this lawsuit, those claims should be dismissed without prejudice to refiling, [10] to the extent exhaustion of administrative remedies with respect to these claims, through the grievance process, has now been or still may be completed. While requiring plaintiff to initiate a new lawsuit now that at least some of his claims are

fully exhausted may be judicially inefficient, "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court." *Neal v. Goord*, 267 F.3d at 123 ("Moreover, ... if during the pendency of a suit, the administrative process were to produce results benefiting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset").

**\*8** As noted, plaintiff's due process claims relating to disciplinary proceedings must be exhausted by administrative appeals of the sanctions imposed, not through the grievance process. (*See* note 5, above). Defendants have not argued that plaintiff filed to fully appeal the disciplinary hearings challenged in the Amended Complaint. Accordingly, those due process claims cannot be dismissed based on failure to exhaust, and must be addressed on the merits.

## IV. DUE PROCESS

### A. Legal Standards

To begin a due process analysis relating to prison disciplinary proceedings, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in keeplock or a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000). Instead, cases in this circuit have created guidelines for use by district courts in determining

whether a prisoner's liberty interest was infringed. *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004).

A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement). "Where the plaintiff was confined for an intermediate duration– between 101 and 305 days– ... a district court must "make a fact-intensive inquiry," ... examining "the actual circumstances of SHU confinement" in the case before it ...." *Palmer v. Richards*, 364 F.3d at 64-65 (citations omitted). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest. However, "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d at 65 (citations omitted).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (*citing, inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (*citing, inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

### B. Analysis

**\*9** Defendants argue, *inter alia*, that the disciplinary proceedings that plaintiff challenges in his amended complaint did not implicate a liberty interest triggering due process protections, because they all involved Tier II hearings, for which the maximum possible confinement was 30 days of segregated housing or keeplock. (Def.s' Mem. of Law at 15, Dkt. No. 236-10 (citing N.Y. Comp. Codes R. & Regs. tit. 7 § 253.7(a)(1)(iii))).[11] Defense counsel ignores the possible significance of the fact that, during two discrete periods in 2011, plaintiff

served consecutive periods of keeplock of more than 30 days on multiple disciplinary charges, which arguably should be aggregated for the purposes of the due process analysis. However, even aggregating consecutive periods of keeplock where arguably appropriate, this court concludes that, given the absence of any allegation from plaintiff about unusually harsh conditions of keeplock, his liberty interests were not implicated by the disciplinary proceedings which are challenged in the amended complaint.

Defendants submitted a certified copy of plaintiff's Inmate Disciplinary History at Shawangunk, as well as copies of extensive records relating to some of plaintiff's disciplinary proceedings. (Sheehan Affirm., Ex. A, Dkt. Nos. 236-5, 236-6, 236-7; Ex. C., Dkt. No. 236-9 at 5-8). Plaintiff's inmate history does not list two misbehavior reports filed by defendant Budziszewski, which are included in Exhibit A to defense counsel's affirmation–a misbehavior report filed on July 25, 2011, for which plaintiff served a 15-day keeplock sentence between August 3 and 18, 2011 (Dkt. No. 236-6 at 69, 82-84); and a misbehavior report dated February 6, 2012, for which plaintiff received a suspended sentence of 30 days keeplock (Dkt. No. 236-5 at 145, 168-70).

Plaintiff's amended complaint claims that a few other misbehavior reports were filed against him in 2011 which are not reflected on the disciplinary history submitted by the defendants–a second report filed on March 10, 2011 by defendant Keys (Dkt. No. 27 at 24, 34, 44); a March 25, 2011 report filed by defendant DeGraff (Dkt. No. 27 at 11, 24, 34 –35, 48); and a December 12, 2011 report filed by defendant Budziszewski (Dkt. No. 27 at 26, 55-56). Plaintiff, however, does not provide any documentation relating to these alleged misbehavior reports. Nor does he make any specific allegation to suggest that he served punishment on disciplinary charges brought against him prior to the filing of his amended complaint on June 26, 2012 beyond that reflected in his disciplinary history or in the other disciplinary records submitted by the defendant.

Accordingly, the court concludes, based on the authority set forth above (*see* note 9), there is no material issue of fact with respect to the time served by plaintiff in keeplock [12] at Shawangunk as a result of the misbehavior reports relevant to plaintiff's due process claims in his amended complaint. Plaintiff was sentenced to a total of **59 days of consecutive keeplock served between March

14 and May 11, 2011**, on several misbehavior reports issued in March (Dkt. No. 236-9 at 7-8); **16 days of keeplock served between August 3 and 18, 2011**, on the July 25, 2011 misbehavior report included in Ex. A (Dkt. No. 236-6 at 69, 82-84), but not reflected on plaintiff's disciplinary history; a total of **64 days of consecutive keeplock served between October 14 and December 16, 2011**, on two misbehavior reports filed in October (Dkt. No. 236-9 at 7); **30 days of keeplock, suspended**, on the February 6, 2012 misbehavior report included in Ex. A (Dkt. No. 236-5 at 145, 168-70), but not reflected on plaintiff's disciplinary history; **44 days of keeplock served between March 7 and April 19, 2012** in connection with a March 7, 2012 misbehavior report (Dkt. No. 236-9 at 7); and **30 days of keeplock, suspended to August 23, 2102** on a May 9, 2012 misbehavior report (Dkt. No. 236-9 at 7). [13]

**\*10**  "Overlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated." *Reynoso v. Selsky*, 292 Fed.Appx. 120, 122 (2d Cir. 2008) (citations omitted). "Generally, it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement [that may be aggregated] when (1) they are contiguous and (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Taylor v. Artus*, No. 9:05-CV-271 (LEK/GHL), 2007 WL 4555932, at \*8 & n. 40 (N.D.N.Y. Dec. 19, 2007) (collecting cases). Because the disciplinary hearings at issue were all conducted by defendant Gardner, the 59-day period of keeplock consecutively served by plaintiff between March and May, 2011 should be aggregated for the purposes of evaluating whether plaintiff's liberty interests were infringed. Similarly, the 64-day period of keeplock consecutively served by plaintiff between October and December, 2011 should be aggregated. Otherwise plaintiff's keeplock sentences should be considered separately, for the purposes of due process analysis, because they were not served contiguously and were separated by periods of almost two months, or more. [14]

The Second Circuit has "previously held that ... a 101-day aggregated confinement in a highly-restrictive segregated housing of a New York correctional facility, without more, was not an atypical confinement"). [15] *Reynoso*

*v. Selsky*, 292 Fed.Appx. at 122-23 (citations omitted). Plaintiff has not, in his extensive filings over the past four years of litigation in this action, made any allegations that the conditions he experience while serving keeplock sentences at Shawangunk were more harsh than typical keeplock conditions. Therefore, none of the periods of keeplock confinement he served–all 64 days or less– would implicate a liberty interest triggering due process protection. *See, e.g.*, *Holland v. Goord*, 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (77 days in keeplock during which plaintiff was deprived of TV, phone, packages, and commissary, and was unable to go to Muslim services and classes, did not create a protected liberty interest); *Phillips v. Lecuyer*, 9:08-CV-878 (FJS/ ATB), 2013 U.S. Dist. LEXIS 36452, at 47-48 (N.D.N.Y. Feb. 19, 2013) (Rep't-Rec.), *adopted*, 2013 U.S. Dist. LEXIS 35267 (N.D.N.Y. Mar. 14, 2013) ("[t]he conditions which plaintiff alleged he experienced over the first 77 days of SHU confinement properly attributed to Curtis Drown's disciplinary determination were not more severe than "normal" SHU conditions as defined by *Sealey*, and did not give rise to a protected liberty interest"); *Pilgrim v. Bruce*, 9:05-CV-198 (GLS/GHL), 2008 WL 2003792, at *15 (N.D.N.Y. May 7, 2008) (plaintiff's conclusory allegations, which notably do not include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subjected to more severe conditions than in normal restrictive confinement); *Holmes v. Grant*, No. 03 CIV. 3426, 2005 WL 2839123, at *5 (S.D.N.Y. Oct. 25, 2005) (Rep't-Rec.), *adopted*, 2006 WL 851753 (S.D.N.Y. Mar. 31, 2006) (sixty days in the SHU at Shawangunk is "insufficient to constitute a deprivation of a liberty interest"). [16]

**\*11** **WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants summary judgment motion (Dkt. No. 236) be **GRANTED IN PART**, [17] as discussed above, [18] and it is further

**\*12** **RECOMMENDED**, that plaintiff's remaining retaliation, equal protection, and Eighth Amendment medical claims in plaintiff's Amended Complaint (Dkt. No. 27) should be dismissed without prejudice to refiling in a new action, to the extent exhaustion of administrative remedies through the grievance process, has now been or may still be completed with respect to these claims, and it is further

**RECOMMENDED**, that plaintiff's procedural due process claims in the Amended Complaint be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (*citing Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3351974

---

Footnotes

1    Judge D'Agostino again dismissed all claims against defendants Schneiderman, Bellamy, and Prack because the amended complaint did not adequately allege their personal involvement. (Dkt. No. 85 at 3-5).

2    C.O. North, who, by then, was no longer an active DOCCS employee (Dkt. No. 91), had not been served with the amended complaint and was not then represented in the action. C.O. North has since accepted service (Dkt. Nos. 173, 174), and is represented by the Attorney General's Office, as are the other remaining 14 defendants.

3    In opposing the summary judgment motion, plaintiff raises claims that he unsuccessfully attempted to add to this action by various motions to amend that were denied. (See Pl.'s Opposition to Summary Judgement Motion, Dkt. No. 242 at 66-67). Those claims are not properly part of this action, and need not be addressed.

4    Because the pages of the amended complaint are not all consecutively numbered, the court will refer to the pages in the header added, upon filing, by the court's CM-ECF system.

5    "Where an inmate's federal claims arise directly out of a disciplinary or administrative segregation hearing, ... (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet*

     *v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted). *See also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

6    *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

7    This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (Breyer, J. concurring) (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates*." *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

8    *See Villante v. VanDyke*, 93 Fed.Appx. 307, 309 (2d Cir. 2004) ("Federal Rule of Civil Procedure 8(c) requires only that an affirmative defense be included in a responsive pleading, such as an answer, not that it be the subject of a pretrial motion"; ... "we conclude that VanDyke and Hall, having raised the exhaustion defense in their answer, did not waive the defense by failing to include it in their first motion for summary judgment"). *See also Belgrave v. Pena*, 254 F.3d 384, 387-88 (2d Cir. 2001) (defendant did not waive its objection to former employee's failure to timely exhaust his administrative remedies by failing to assert untimely exhaustion as an affirmative defense in its original answer, where district court permitted the defendant to amend its answer to state such defense). The issue of exhaustion of administrative remedies is rarely raised successfully in a motion to dismiss. *See, e.g., Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks and citations omitted)); *Williams v. Metro. Det. Ctr.*, 418 F. Supp. 2d 96, 101 (E.D.N.Y. 2005) ("keeping in mind that failure to exhaust is an affirmative defense, and that exhaustion need not be pled to state a claim, it is more appropriate in the case of this pro se plaintiff to [consider exhaustion] under a summary judgment standard," rather than the Rule 12(b)(6) standard). The plaintiff did not move to strike the exhaustion affirmative defense stated in defendants' post-motion answer, which was filed more than a year ago, at the start of the pretrial discovery process. Under all of the circumstances here, the court concludes that the defendants did not waive the exhaustion defense by not asserting it in their initial motion to dismiss.

9    *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' ... and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account."); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case").

10    It is possible that a new action filed by plaintiff would be barred by the statute of limitations. *See, e.g., Baez v. Kahanowicz*, 278 Fed.Appx. 27, 29 (2d Cir. 2008). In *Baez*, plaintiff's civil rights complaint, filed in June 2003 and amended in August 2003 was dismissed because plaintiff did not complete the grievance process until December 2003. The Second Circuit affirmed the District Court's January 2007 dismissal of Baez's action **with prejudice** because, even if the time during which plaintiff was exhausting his administrative remedies tolled the statute of limitations, any new action would be filed more than three years after exhaustion was completed. However, the court will not recommend dismissing plaintiff Toliver's claims with prejudice, given the possibility that he could raise equitable tolling issues or other grounds to overcome a statute of limitations problem. See, e.g., *Richardson v. Romano*, No. 00-CV-1076 (LEK/DEP), 2003 WL 1877955, at *2 & n.1 (N.D.N.Y. Mar. 31, 2003) (noting New York state case law indicating that an action dismissed for failure to exhaust administrative remedies may be re-filed within six months of the dismissal pursuant to N.Y. C.P.L.R. § 205(a)).

2016 WL 3351974

11    The federal district courts in New York, applying *Sandin*, have consistently held that terms of special housing or "keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g., Brown v. Secore*, No. 9:08-CV-085, 2010 WL 980233, at *5 (N.D.N.Y. Mar. 15, 2010) (collecting cases).

12    "Shawangunk is a maximum security prison that is designed and operated to house high profile and/or long term inmates." *Vail v. Smith*, No. 9:12-CV-234 (GTS/RFT), 2015 WL 792224, at *6 (N.D.N.Y. Feb. 25, 2015). The facility has "general population" units, as well as a SHU. *Orraca v. McCreery*, No. 9:04-CV-1183 (DNH/DEP), 2008 WL 4279509, at *2, 9 (N.D.N.Y. Sept. 15, 2008). "Keeplock" is a form of disciplinary confinement where the inmate is confined to his own cell for the duration of the disciplinary sanction. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989). At Shawangunk, "keeplock" would appear to refer to conditions where inmates are confined for twenty-three hours a day in a general population housing unit cell. *Holmes v. Grant*, No. 03 CIV. 3426, 2006 WL 851753, at *2 n. 2 (S.D.N.Y. Mar. 31, 2006). Although the court need not rely on this assumption to sustain my ultimate conclusion that plaintiff has suffered no loss of a liberty interest, keeplock conditions in general population would appear to be generally less harsh than conditions in an SHU.

13    Plaintiff began serving more severe disciplinary sentences following disciplinary proceedings in July 2012, but that, and subsequent disciplinary hearings occurred after plaintiff filed his amended complaint, and are not part of this action. (Dkt. No. 236-9 at 6-7).

14    Because the court has no information to indicate that plaintiff's suspended keeplock sentences were ever served by him, they would not be significant in the due process analysis. *See Bennett v. Fischer*, No. 9:09-CV-1236 (FJS/DEP), 2012 WL 1085855, at *4 n.9 (N.D.N.Y. Jan. 9, 2012) (Rep't –Rec.), *adopted*, 2012 WL 1037948 (N.D.N.Y. Mar. 27, 2012) (if "plaintiff was sentenced to a period of sixty days of disciplinary SHU confinement and the penalty imposed was suspended and never served, then he ultimately will be unable to establish the deprivation of a cognizable liberty interest" (citing *Scott v. Albury*, 156 F.3d 283, 287-88 (2d Cir. 1998)) ("[n]o right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin* to require that we look to actual punishment in making this determination")).

15    The SHU conditions which the Second Circuit found not to create a liberty interest over 101 days included solitary confinement for 23 hours per day, one hour of exercise outside of the cell, limited showers per week, and the loss of various privileges. *Sealey v. Giltner*, 197 F.3d 578, 581 & n.1, 589 (2d Cir. 1999).

16    Second Circuit cases that have found a possible deprivation of a liberty interest in SHU confinements of less than 101 days are distinguishable because they involved substantial evidence that the inmate suffered conditions more severe than "normal" SHU restrictions. *Cf. Palmer v. Richards*, 364 F.3d at 66 (77-day SHU confinement could implicate due process rights where plaintiff alleged that he was deprived of his property, personal clothing, grooming equipment, hygienic products, reading and writing materials, communication with family, personal food and vitamin supplements, and placed in mechanical restraints during escorts); *Welch v. Bartlett*, 196 F.3d 389, 393-94 (2d Cir. 1999) (90-day SHU confinement could infringe liberty interest where plaintiff alleged that he received inadequate toilet paper, soap and cleaning supplies, a filthy mattress, and infrequent changes of clothes); *Davis v. Barrett*, 576 F.3d at 134-35 (given plaintiff's allegations that (1) his cell had no furniture, and thus all items, including his clothes and food tray, had to be kept on the floor; (2) that his mattress was "infected" with body waste; and (3) that his cell was subject to "daily" flooding, and feces and urine thrown by other inmates, an issue of fact exists as to the actual conditions of plaintiff's 55 days of SHU confinement and summary judgment should not have been granted on his due process claim).

17    On July 27, 2015, plaintiff filed a notice of an interlocutory appeal (Dkt. No. 204) of Judge D'Agostino's April 15, 2015 Memorandum-Decision and Order denying plaintiff's twentieth motion seeking preliminary injunctive relief (Dkt. No. 179). Judge D'Agostino denied plaintiff's motion because the injunctive relief sought was not related to this action or the named defendants, because it involved conclusory and speculative allegations of ongoing retaliation purportedly relating to plaintiff's filing of this action, and/or because subsequent events mooted plaintiff's demands for injunctive relief. (4/15/2015 Memorandum-Decision and Order at 8-10). The Second Circuit dismissed plaintiff's appeal on November 14, 2015, but plaintiff's motion for reconsideration before the Circuit is still pending. (See 1/28/2016 Docket Entry). "[A]n appeal from an interlocutory order granting or denying a preliminary injunction, which is appealable under 28 U.S.C. § 1292(a), does not divest the district court of jurisdiction [with respect to those matters not involved in the appeal], and the case proceeds on the merits unless otherwise ordered." *Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P.*, 55 F. Supp. 2d 231, 234 (S.D.N.Y. 1999) (citing, *inter alia*, *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989)). The grounds for Judge D'Agostino's denial of plaintiff's request for preliminary injunctive relief, technically still under consideration by the Second Circuit, have nothing to do with the merits of the remaining claims in plaintiff's Amended Complaint. Accordingly, the appeal does not, in this court's view, divest the District Court of jurisdiction to

2016 WL 3351974

resolve defendants' summary judgment motion. On February 23, 2016, plaintiff filed another notice of appeal, of Judge D'Agostino's February 8, 2016 text order which, *inter alia*, denied one of plaintiff's many motions to further amend his complaint. An interlocutory appeal from a motion to amend is clearly frivolous, and also does not divest the District Court of jurisdiction. *See, e.g.,* *Gurvey v. Cowan, Leibowitz & Latman, P.C.*, No. 06 CIV. 1202, 2015 WL 5472893, at *2 & n.1 (S.D.N.Y. Sept. 17, 2015) ("[w]here, as here, a party files a frivolous interlocutory appeal [of, *inter alia*, the denial of a motion to file a sixth amended complaint], a district court is not divested of jurisdiction") (citing *United States v. Rodgers*, 101 F.3d 247, 251-52 (2d Cir. 1996)) ("We fail to see any efficiency in allowing a party to halt district court proceedings arbitrarily by filing a plainly unauthorized notice of appeal which confers on [the appeals court] the power to do nothing but dismiss the appeal."). *See also* *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 650-51 (2d Cir. 1987) ("[a]n order denying a motion to amend a pleading is not appealable as a 'final decision' within the meaning of 28 U.S.C. § 1291 (1982) ... [and is not] an order immediately appealable under the 'collateral order' exception to the final judgment rule").

18    Defendants' arguments to dismiss plaintiff's remaining retaliation, equal protection, and Eighth Amendment medical claims, on the merits, were not addressed by the court.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 4478988
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

John H. WHITE, Plaintiff,

v.

Raymond DRAKE, Correctional Officer,
Upstate Correctional Facility, Defendant.

No. 10–CV–1034 (GTS/DRH).
|
Aug. 11, 2011.

**Attorneys and Law Firms**

John H. White, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for
the State of New York, Krista A. Rock, Esq., Assistant
Attorney General, of Counsel, Albany, NYk, for
Defendant.

**REPORT–RECOMMENDATION AND ORDER** [1]

DAVID R. HOMER, United States Magistrate Judge.

**\*1** Plaintiff pro se John H. White ("White"), an inmate
in the custody of the New York State Department of
Correctional and Community Supervision ("DOCCS"),
brings this action pursuant to 42 U.S.C. § 1983
alleging that defendant Raymond Drake ("Drake"), a
corrections officer employed by DOCCS, violated his
constitutional rights under the Eighth Amendment when
Drake subjected him to excessive force. Compl. (Dkt.
No. 1). Presently pending is Drake's motion to dismiss
pursuant to Fed.R.Civ.P. 12[b](6). Dkt. Nos. 12, 21, 40.
White initially opposed the motion, Dkt. Nos. 17, 25,
but now appears to agree that this action should be
dismissed without prejudice. Dkt. Nos. 41, 42. For the
following reasons, it is recommended that Drake's motion
be granted and that the complaint be dismissed without
prejudice.

The facts are related in the light most favorable to White
as the non-moving party. *See Ertman v. United States,* 165
F.3d 204, 206 (2d Cir.1999).

On June 27, 2010 while incarcerated at Upstate
Correctional Facility, White was notified by a corrections
officer that he had a visitor. Dkt. No. 1–1 at 1. After
waiting for approximately thirty minutes without being
summoned for the visit, White asked the other officers
why he was not being taken to his visitor. *Id.* An officer
responded that White's visit was cancelled because his
visitor was denied entrance. *Id.* Drake then approached
White's cell door and informed him that his visitor was
in possession of drugs and had been apprehended by the
local police. *Id.;* Compl. ¶ 6. Drake then walked away
from White's cell, as White voiced charges of "official
misconduct" while lying on the floor and speaking
through the open area of his cell door. Dkt. No. 1–1 at 1.
Drake then returned to the cell and "deliberately kicked
the [cell] door ... causing injury to [White's] mouth, nose,
[and] right jaw." *Id.; see also* Compl. ¶ (6). White's nose
began to bleed and he experienced immediate pain in his
jaw. Dkt. No. 1–1 at 1. White then stood up and asked
Drake why he would intentionally kick the cell door when
he knew that White was lying next to it. Dkt. No. 1–1 at 2.
Drake responded that he did so because he was aware that
White was making a record of the incident and "could do
it." *Id.*

That same day, White filed a grievance complaining that
he had been (1) treated unfairly because he was black; (2)
denied notification; (3) misled concerning the details of his
visitor; and (4) subjected to excessive force. Dkt. No. 1–
1 at 2–4. White's grievance was denied and he appealed
administratively. [2] Compl. ¶ 4(b). However, White never
received a final determination from DOCCS after his last
appeal. *Id.* ¶ 4(b)(I). White "wr [ote] to the Commissioner
concerning the delay ... no one ha[d] responded thus far
[and White felt that he was] be[ing] denied any responses."
*Id.* ¶ 4(b)(ii). On August 9, 2010, White filed the present
action. Compl. at ¶ 8. On October 7 and November 3,
12, and 20, 2010, White wrote to the undersigned to
apprise the court that he had still not received a final
determination of his grievance. Dkt. Nos. 10, 11, 13, 22. [3]

**I. Background**

**II. Discussion**

**\*2** White contends that his constitutional rights were violated when Drake harassed and subjected him to excessive force. Drake moves for dismissal because (1) White has failed to exhaust his administrative remedies, (2) there are no merits to White's constitutional claim, and (3) Drake is entitled to qualified immunity. [4]

### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). However, this "tenet ... is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* ─── U.S. ───, ───, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ... [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."); *see also Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir.2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible ....") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950–51.

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

### B. Failure to Exhaust

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Woodford v. Ngo,* 548 U.S. 81, 83, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). This exhaustion requirement applies to all prison condition claims. *Porter,* 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. *Nussle,* 534 U.S. at 524.

**\*3** While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004)).

> A plaintiff's failure to exhaust administrative remedies may be excused if: (1) administrative remedies were not actually available; (2) defendants have forfeited their affirmative defense of non-exhaustion or are estopped from raising such a defense because of their own actions; or (3) special circumstances exist, such as a reasonable misinterpretation of [DOCCS] regulations.

*Torres v. Carry,* 672 F.Supp.2d 338, 344 (S.D.N.Y.2009) (citations omitted).

Exhaustion for an inmate in DOCCS custody is generally achieved through the IGP). *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701 .1, *et seq.; see also* n. 2 *supra.* Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and

2011 WL 4478988

receive a response from CORC prior to filing a federal lawsuit. *Torres,* 672 F.Supp.2d at 344; *see also* N .Y. Comp. Codes R. & Regs. tit. 7 § 701.5(d)(2)(ii) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision ... within 30 calendar days").

In this case, the CORC did not render its decision on the final stage of White's appeal until after White had commenced this action. Thus, exhaustion was completed during the pendency, not prior to the commencement of, this action. The facts are clear that White complied with the IGP and filed a final appeal to CORC. The facts also demonstrate that, after White commenced the present action, the final determination was rendered by CORC, thus terminating the administrative process. There are no allegations that White did not know how the grievance process worked or that it was unavailable to him. Accordingly, the question presented by this motion is whether White satisfied the exhaustion requirement in these circumstances.

"The Courts of Appeals for the First, Second, Third, Seventh, Tenth, Eleventh, and D[istrict of] C[olumia] ... have held that § 1997(e) requires exhaustion before the filing of a complaint and that a prisoner does not comply with this requirement by exhausting available remedies during the course of litigation." *McKinney v. Carey,* 311 F.3d 1198, 1199 (9th Cir.2002); *see also Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("Subsequent exhaustion after suit is filed therefore is insufficient.") *abrogated in part on other grounds by Porter,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12. This is because the statutory "language clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement [and e]xhaustion subsequent to the filing of the suit will not suffice." *Medina–Claudio v. Rodriguez–Mateo,* 292 F.3d 31, 36 (1st Cir.2002) (citations omitted); *see also* 42 U.S.C. § 1997(e) ("No action shall be brought with respect to prison conditions under section 1983 ... by a prisoner ... until such administrative remedies as are available are exhausted."); *Perez v. Wisconsin Dep't of Corr.,* 182 F.3d 532, 534–35 (7th Cir.1999) (explaining that "Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit."* ).

**\*4** Where the administrative process has been started, but has yet to conclude, courts have dismissed federal claims without prejudice and granting leave to reopen when the administrative process has ceased and the result is a denial of the inmate's grievance. *Torres,* 672 F.Supp.2d at 345–46; *see also Neal,* 267 F.3d at 123 (explaining that inmates' claims which are "dismissed without prejudice, ... may simply [be] re-file[d] ... after fully complying with the exhaustion requirement."); *Chalif v. Spitzer,* No. 05–CV–1355, 2008 WL 1848650, at \*13 ("The fact that a grievance is filed, or the process is completed, subsequent to commencement of suit will not salvage an otherwise premature filing.") (citations omitted). Therefore, it is clear that the case law requires White's complaint to be dismissed without prejudice to filing a new action for a failure to fully exhaust his administrative remedies prior to filing the instant complaint.

Thus, White will be required to re-commence this action and re-serve Drake even though the exhaustion requirement has now been satisfied and where the delay in completing the administrative process was apparently caused solely by DOCCS delay at the final appeal stage. This inefficiency imposes additional burdens and costs not only on White and Drake but also on the Court. This factor has already been contemplated, and rejected, by various courts, including the Second Circuit.

> While it is true that requiring dismissal may, in some circumstances, occasion the expenditure of additional resources on the part of the parties and the court, it seems apparent that Congress has made a policy judgment that this concern is outweighed by the advantages of requiring exhaustion prior to the filing of suit ... [Therefore r]equiring dismissal without prejudice when there is no presuit exhaustion provides a strong incentive that will further these Congressional objectives; permitting exhaustion *pendente lite* will inevitably undermine attainment of them.

*McKinney,* 311 F.3d at 1200–1201; *Neal,* 267 F.3d at 123 (acknowledging that in an individual case, requiring dismissal for failure to exhaust may be judicially inefficient but ultimately concluding that exhaustion must be mandatory because a policy of generally "allowing

prisoner suits to proceed, so long as the inmate eventually fulfils the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."). Thus, arguments of judicial inefficiency or additional expense do not serve as compelling reasons for denying defendant's present motion.

Accordingly, Drake's motion to dismiss for failure to exhaust should be granted.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Drake's motion to dismiss (Dkt.

No. 12) be **GRANTED** and the complaint **DISMISSED WITHOUT PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### All Citations

Not Reported in F.Supp.2d, 2011 WL 4478988

### Footnotes

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    "The IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

3    On December 1, 2010, Drake filed a supplemental memorandum of law in this action seeking dismissal of White's claim for White's failure to exhaust his administrative remedies. Dkt. No. 21. On July 25, 2011, the present action was stayed to allow DOCCS or CORC to file a decision regarding White's pending administrative appeal. Dkt. No. 39. On August 1, 2011, Drake responded, providing the Court with a copy of CORC's denial of White's grievance, dated November 24, 2010. Dkt. No. 40.

4    It is unnecessary to address the second and third grounds of Drake's motion in light of White's acknowledged failure to exhaust administrative remedies and those grounds will not be further addressed herein.

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.